# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CHRISTINE K., individually and on behalf of G.R.K, and G.R.K., <br><br>         Plaintiffs, <br><br> vs. <br><br> BLUE CROSS & BLUE SHIELD OF RHODE ISLAND, an independent licensee of the BLUE CROSS AND BLUE SHIELD ASSOCIATION, and the BLUE CROSS & BLUE SHIELD OF RHODE ISLAND HEALTHMATE COAST-TO-COAST BE WELL MEDICAL PPO PLAN, <br><br>         Defendants. | No. 1:25-cv-00352-MSM-PAS |

## **DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................... 2

I.    The Plan Provides Coverage for Certain Enumerated Services ............................................ 2

II.   Behavioral Health Coverage is Limited to Hospitals, Licensed Residential Treatment Centers, Certain Defined Intermediate Programs, and Outpatient Therapy. ...................... 3

III.  Wilderness Programs Are Expressly Excluded from Coverage. ........................................ 5

IV.   Plaintiffs' Allegations. ......................................................................................................... 6

LEGAL STANDARD ......................................................................................................... 6

ARGUMENT ....................................................................................................................... 8

I.    PLAINTIFFS HAVE NOT PLAUSIBLY PLED ENTITLEMENT TO PLAN BENEFITS .................................................................................................................... 8

      A.    Plaintiffs Fail to State a Claim for Plan Benefits Because the Plan Does Not Cover, and Expressly Excludes, Wilderness Programs Like Aspiro. .................................... 8

      B.    Plaintiff Cannot Recover Benefits Based on a Purported Lack of a Full and Fair Review Because the Plan Does Not Cover the Services at Issue. .......................... 13

II.   PLAINTIFFS HAVE NOT PLAUSIBLY PLED A MHPAEA VIOLATION ................ 14

      A.    Not All Treatment Limitations on Mental Health Benefits Are MHPAEA Violations. ...................................................................................................... 14

      B.    Plaintiffs Fail to State a Facial MHPAEA Violation. ........................................... 16

      C.    Plaintiffs Fail to State an As-Applied MHPEA Violation. ................................... 18

      D.    Plaintiffs are Not Entitled to Relief for Any Alleged MHPAEA Violation. ........... 21

CONCLUSION .................................................................................................................. 23

# TABLE OF AUTHORITIES

**Cases**                                                                                                **Page(s)**

*A.G. by & Through N.G. v. Cmty. Ins. Co.*,
    363 F. Supp. 3d 834 (S.D. Ohio 2019) .................................................................. 21

*A.H. by & Through G.H. v. Microsoft Corp. Welfare Plan*,
    No. C17-1889, 2018 WL 2684387 (W.D. Wash. June 5, 2018).............................. 20

*Alice F. v. Health Care Serv. Corp.*,
    367 F. Supp. 3d 817 (N.D. Ill. 2019) .............................................................. 18, 21

*Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*,
    821 F.3d 353 (2d Cir. 2016).................................................................................. 16

*Amy G. v. United Healthcare*,
    No. 2:17-cv-00413-DN-DAO, 2024 WL 4165783 (D. Utah Sept. 12, 2024) ......... 13

*Anne M. v. United Behav. Health*,
    No. 2:18-CV-808 TS, 2019 WL 1989644 (D. Utah May 6, 2019).......................... 24

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................... 7, 15, 22

*Bates v. United Parcel Serv.*,
    511 F.3d 974 (9th Cir. 2007) .............................................................................. 26

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................................... 7

*Belleville v. United Food & Com. Workers Int'l Union Indus. Pension Fund*,
    620 F. Supp. 2d 277 (D.R.I. 2008)....................................................................... 9

*Black & Decker Disability Plan v. Nord*,
    538 U.S. 822 (2003)........................................................................................... 15

*Brightway Adolescent Hosp. v. Strachan, Green, Miller & Olender*,
    No. 2:99-CV-228K, 2000 WL 33363258 (D. Utah Dec. 15, 2000) ......................... 15

*Cardigan Mtn. Sch. v. N.H. Ins. Co.*,
    787 F.3d 82 (1st Cir. 2015).................................................................................. 7

*Clorox Co. P.R. v. Proctor & Gamble Com. Co.*,
    228 F.3d 24 (1st Cir. 2000).................................................................................. 8

*Coalition for Parity, Inc. v. Sebelius*,
    709 F. Supp. 2d 10 (D.D.C. 2010) ....................................................................... 16

*DM Rsch., Inc. v. Coll. of Am. Pathologists*,
   170 F.3d 53 (1st Cir. 1999) ................................................................................ 25

*Edes v. Verizon Commc'n, Inc.*,
   417 F.3d 133 (1st Cir. 2005) ................................................................................ 8

*Freeman v. Town of Hudson*,
   714 F.3d 29 (1st Cir. 2013) .................................................................................. 8

*Gagliardi v. Sullivan*,
   513 F.3d 301 (1st Cir. 2008) ................................................................................ 7

*Goplin v. WeConnect, Inc.*,
   893 F.3d 488 (7th Cir. 2018) .............................................................................. 12

*Guerra-Delgado v. Popular, Inc.*,
   774 F.3d 776 (1st Cir. 2014) .............................................................................. 11

*H.H. v. Aetna Ins. Co.*,
   342 F. Supp. 3d 1311 (S.D. Fla. 2018) .............................................................. 10

*IHC Health Servs., Inc. v. Cent. States SE & SW Areas Health & Welfare Fund*,
   No. 2:17-CV-01327-JNP-BCW, 2018 WL 3756959 (D. Utah Aug. 7, 2018) ......... 9

*J.S. v. Blue Cross Blue Shield of Illinois*,
   No. 2:22-CV-00480, 2024 WL 4308925 (D. Utah Sept. 26, 2024) ........................ 22

*James C. v. Anthem Blue Cross and Blue Shield*,
   No. 19-cv-38 (CW), 2021 WL 2532905 (D. Utah June 21, 2021) .................... 18, 19

*Joseph F. v. Sinclair Servs. Co.*,
   158 F. Supp. 3d 1239 (D. Utah 2016) ................................................................ 16

*Julian B. v. Regence Blue Cross & Blue Shield of Utah*,
   No. 2:19-cv-471-TC, 2020 WL 1955222 (D. Utah Apr. 23, 2020) ....................... 25

*L.A. v. Lyons*,
   461 U.S. 95 (1983) ............................................................................................. 26

*L.L. v. Anthem Blue Cross Life & Health Ins.*,
   661 F. Supp. 3d 1106 (D. Utah 2023) ................................................................ 23

*Lavigne v. Great Salt Bay Cmty. Sch. Bd.*,
   No. 24-1509, 2025 WL 2103993 (1st Cir. July 28, 2025) .................................... 22

*Lawrence v. Keunhold*,
   271 F. App'x 763 (10th Cir. 2008) ..................................................................... 27

*Loran K. v. Blue Cross & Blue Shield of Illinois*,
   No. 19-CV-07694-JSW, 2021 WL 4924777 (N.D. Cal. June 17, 2021) ............... 15

iii

*M.N. v. UnitedHealthcare Ins.*,
No. 2:18-cv-00710, 2020 WL 1644199 (D. Utah April 2, 2020) ............................................ 23

*Mary D. v. Anthem Blue Cross Blue Shield*,
778 F. App'x 580 (10th Cir. 2019) ........................................................................................ 12

*N.R. v. Raytheon Co.*,
24 F.4th 740 (1st Cir. 2022) .................................................................................................. 18

*Neely v. Pension Tr. Fund of Pension, Hospitalization & Benefit Plan of Elec. Indus.*,
No. 00 CV 2013 SJ, 2003 WL 21143087 (E.D.N.Y. Jan. 16, 2003) ...................................... 25

*Negley v. Breads of the World Med. Plan*,
222 F. App'x 692 (10th Cir. 2007) ........................................................................................ 27

*Newman v. Lehman Bros. Holdings Inc.*,
901 F.3d 19 (1st Cir. 2018) .................................................................................................... 8

*Peter E. v. United Healthcare Servs., Inc.*,
No. 2:17-cv-00435, 2018 WL 6068107 (D. Utah Nov. 20, 2018) .................................... 13, 19

*Peter M. v. Aetna Health & Life Ins. Co.*,
554 F. Supp. 3d 1216 (D. Utah 2021) ....................................................... 12, 13, 14, 20

*Roy C. v. Aetna Life Ins. Co.*,
No. 2:17-cv-1216, 2018 WL 4511972 (D. Utah Sept. 19, 2018) .................................... 14, 21

*Ruiz Rivera v. Pfizer Pharm., LLC*,
521 F.3d 76 (1st Cir. 2008) .................................................................................................... 7

*S.F. v. CIGNA Health & Life Ins. Co.*,
No. 2:23-CV-213, 2024 WL 1912359 (D. Utah May 1, 2024) ............................................... 20

*S.F. v. CIGNA Health & Life Ins. Co.*,
No. 24-4062, 2025 WL 1568310 (10th Cir. Feb. 10, 2025) ................................................... 20

*Sarah W. v. CIGNA Health & Life Ins. Co.*,
No. 2:19-CV-00629-DB, 2020 WL 1030716 (D. Utah Mar. 3, 2020) .............................. 23, 24

*Schmidt v. Lessard*,
414 U.S. 473 (1974) .............................................................................................................. 27

*Sequin, LLC v. Renk*,
No. CV 20-062 WES, 2021 WL 391519 (D.R.I. Feb. 4, 2021) .............................................. 22

*Sequin, LLC v. Renk*,
No. CV 20-62WES, 2021 WL 124250 (D.R.I. Jan. 13, 2021) ............................................... 22

*Sigui v. M&M Commc'ns, Inc.*,
No. CV 14-442 S, 2016 WL 1255710 (D.R.I. Mar. 30, 2016) ............................................... 22

*Sigui v. M&M Commc'ns, Inc.*,
  No. CV 14-442S, 2015 WL 13717724 (D.R.I. Oct. 20, 2015) ................................................ 22

*Teets v. Great-W. Life & Annuity Ins.*,
  921 F.3d 1200 (10th Cir. 2019) .............................................................................................. 26

*Tetreault v. Reliance Std. Life Ins. Co.*,
  769 F.3d 49 (1st Cir. 2014) ..................................................................................................... 15

*Todisco v. Verizon Commc'ns, Inc.*,
  497 F.3d 95 (1st Cir. 2007) ............................................................................................... 11, 16

*Varity Corp. v. Howe*,
  516 U.S. 489 (1996) .................................................................................................................. 25

**Statutes**

29 U.S.C. § 1132(a)(1)(B) ...................................................................................................... 1, 6, 8

29 U.S.C. § 1132(a)(3) ................................................................................................................ 2, 6

29 U.S.C. § 1132(c) ....................................................................................................................... 13

29 U.S.C. § 1185a(a)(3)(A)(ii) ..................................................................................................... 14

**Rules**

29 C.F.R. § 2590.712(a)-(c) .......................................................................................................... 14

29 C.F.R. § 2590.712(c)(2)(ii)(A) ................................................................................................ 15

29 C.F.R. § 2590.712(c)(4)(i)(A) .................................................................................................. 15

Fed. R. Civ. P. 12(b)(6) .......................................................................................................... 1, 6, 7

**Other Authorities**

*Look up Medical and Payment Policies*, BLUE CROSS BLUE SHIELD OF RHODE ISLAND,
  https://www.bcbsri.com/providers/medicalpolicies (last visited August 29, 2025) ................ 20

Preamble, Final Rules Under the Paul Wellston and Pete Domenici Mental Health Parity and
  Addiction Equity Act of 2008, 78 Fed. Reg. 68240, 68246-47 (Nov. 13, 2013) .............. 15, 17

*Wilderness Therapy Programs: A Comprehensive Guide for Parents*, ASPIRO WILDERNESS
  ADVENTURE THERAPY, https://aspiroadventure.com/wilderness-therapy-programs/ (last visited
  August 29, 2025)........................................................................................................................ 11

Defendants Blue Cross & Blue Shield of Rhode Island, an independent licensee of the Blue Cross and Blue Shield Association ("BCBSRI"), and the Blue Cross & Blue Shield of Rhode Island Healthmate Coast-To-Coast Be Well Medical PPO Plan (the "Plan") (together, "Defendants"), by and through their undersigned counsel, hereby move to dismiss Plaintiffs Christine K. and G.R.K.'s (together, "Plaintiffs") Complaint ("Complaint") (ECF No. 2), in its entirety and with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted.[1]

## **INTRODUCTION**

This healthcare coverage dispute under the Employee Retirement Income Security Act of 1974 ("ERISA") is about Plaintiffs' attempt to obtain benefits for services the Plan does not cover and, in fact, expressly excludes from its coverage provisions. Plaintiffs seek reimbursement for G.R.K.'s stay at Aspiro Adventure Therapy ("Aspiro"), which is a wilderness therapy program, even though the Plan's terms unambiguously foreclose coverage for wilderness programs. Plaintiffs' attempt to repackage their benefits claim as a claim for violation of the Mental Health Parity and Addiction Equity Act ("MHPAEA") likewise fails as a matter of law.

***First***, Plaintiffs cannot state a claim for Plan benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), because wilderness therapy is not a covered healthcare service under the Plan. The Plan covers only defined categories of behavioral health services—inpatient hospital care, residential treatment, enumerated intermediate services such as Partial Hospital Programs or Intensive Outpatient Programs, and outpatient therapy. Plaintiffs do not allege that G.R.K.'s behavioral health treatment at Aspiro falls within any of those categories. Moreover, wilderness

---

[1] Embrace Home Loans, Inc. previously was dismissed as a defendant. *See* Order Dismissing Defendant Embrace Home Loans, Inc. Without Prejudice (Dkt. 14).

programs such as Aspiro are specifically excluded from coverage under the Plan's exclusion for "[r]ecreational therapy services and programs, including wilderness programs."

*Second*, Plaintiffs fail to state a claim for violation of MHPAEA under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), pursuant to the terms of the Plan either as written or in operation. The Plan's wilderness program exclusion is facially neutral; it applies equally to medical/surgical and mental health claims. Courts have consistently rejected MHPAEA challenges to such exclusions. Plaintiffs also fail to allege any valid medical/surgical analogue to wilderness therapy. Indeed, regulators have identified residential treatment centers, skilled nursing facilities, and inpatient rehabilitation facilities as analogues for intermediate health services under MHPAEA. Because it is undisputed that the Plan covers services at residential treatment centers and analogous medical/surgical facilities at parity, Plaintiffs cannot plausibly allege a facial MHPAEA claim. Their "as-applied" claim is likewise deficient, resting only on speculation "upon information and belief" that Defendants might apply the wilderness program exclusion differently in other contexts. Such conclusory allegations cannot support a claim for an MHPAEA violation.

For the foregoing reasons, and as explained further below, Plaintiffs' Complaint should be dismissed in its entirety and with prejudice.

## FACTUAL BACKGROUND

### I.    The Plan Provides Coverage for Certain Enumerated Services.

At all relevant times, Plaintiff Christine K. was a participant in the Plan and G.R.K. was a Plan beneficiary. (Compl. ¶ 5). The Plan is an employee welfare benefit plan governed by ERISA and sponsored by Christine K.'s employer, Embrace Home Loans, Inc. (*Id.* ¶¶ 4, 5). BCBSRI serves as the Plan's Claims Administrator. (*Id.* ¶ 8).

The Plan provides coverage **only** for "covered healthcare services" that "meet **all** of the following requirements":

- *Listed as a **covered healthcare service** in this [S]ection [3]*.  The fact that a provider has prescribed or recommended a service, or that it is the only available treatment for an illness or injury does not mean it is a covered healthcare service under this plan.
- *Medically necessary*, consistent with our medical policies and related guidelines at the time the services are provided.
- ***Not listed in Exclusions Section [4].***
- Received while a *member* is enrolled in the *plan*.
- Consistent with applicable state or federal law.

(Ex. 1, p. 16) (emphases added).[2]

Plan coverage therefore requires more than medical necessity.  In order to be covered by the Plan, a service must be (1) listed in Section 3, (2) medically necessary, and (3) not excluded by Section 4.  (*See* Ex. 1, p. 16.)

## II.    Behavioral Health Coverage is Limited to Hospitals, Licensed Residential Treatment Centers, Certain Defined Intermediate Programs, and Outpatient Therapy.

The Plan provides coverage for behavioral health services, defined as "the evaluation, management, and treatment for a mental health or substance use disorder condition."  (Ex. 1, p. 18).  Behavioral health services must be "medically necessary and … rendered by a provider licensed by the State of Rhode Island or by the state in which the provider is located."  (*Id*.)  The Plan expressly "provides parity in benefits for behavioral healthcare services."  (*Id*.)

Section 3 of the Plan lists four specific categories of covered behavioral health services:[3]

*(1) Inpatient hospital care*.  Coverage applies when a member is admitted to a "general or specialty hospital."  (Ex. 1, p. 18).  A "hospital" is defined as a facility "that provides medical and surgical care for patients who have acute illnesses or injuries," and is "either listed as the American Hospital Association (AHA) or accredited by the Joint Commission on Accreditation of Healthcare

---

[2] Defendants' Exhibit "1" is a true and correct copy of the BCBSRI Healthmate Coast-to-Coast Subscriber Agreement, which sets forth the terms of the Plan applicable to Plaintiffs' claims in this action.  The Court may consider the Subscriber Agreement when deciding the Motion for the reasons set forth *infra* Section IV.

[3] The Plan also provides coverage for psychological testing and "medication assisted treatment for substance use disorders" (Ex. 1, p. 19), neither of which is relevant here.

Organizations (JCAHO)." (*Id*., p. 69). The Plan's definition of a "hospital" expressly excludes "convalescent home; rest home; nursing home; home for the aged; school and college infirmary; residential treatment facility; long-term care facility; urgent care center or freestanding ambulatory surgical center; facility providing mainly custodial, educational or rehabilitative care; or a section of a hospital used for custodial, educational or rehabilitative care." (*Id*.)

*(2) Residential treatment.* Coverage extends to "acute behavioral health residential treatment facilities, which provide: clinical treatment; medication evaluation management; and 24-hour on site availability of health professional staff, as required by licensing regulations." (Ex. 1, p. 18). A "residential treatment facility" is further defined as "a facility which provides a treatment program for behavioral health services and is established and operated in accordance with applicable state laws for residential treatment programs." (*Id*., p. 72).

*(3) Intermediate care services*. The Plan defines intermediate care services as "facility-based programs" that are "more intensive than traditional outpatient services; less intensive than 24-hour inpatient hospital or residential treatment facility services; ***and used as a step down from a higher level of care; or used as a step-up from standard care***." (Ex. 1, p. 18) (emphasis added). The Plan provides coverage for the following three intermediate care services:

> *(i) Partial Hospital Programs ("PHP")*, defined as "[s]tructured and medically supervised day, evening, or nighttime treatment programs providing individualized treatment plans." (Ex. 1, p. 19). A PHP "typically runs for five hours a day, five days per week." (*Id*.)

> *(ii) Intensive Outpatient Programs ("IOP")*, defined as programs that provide "substantial clinical support for patients who are either in transition from a higher level of care or at risk for admission to a higher level of care." (Ex. 1,

4

p. 19).  An IOP "typically runs for three hours per day, three days per week." (*Id*.)

*(iii) Home and Community-Based Adult Intensive Services ("AIS") and Child and Family Intensive Treatment ("CFIT")*, defined as programs that "offer services primarily based in the home and community for qualifying adults and children with moderate-to-severe mental health conditions."  (Ex. 1, p. 19).  These programs "consist at a minimum of ongoing emergency/crisis evaluations, psychiatric assessment, medication evaluation and management, case management, psychiatric nursing services, and individual, group, and family therapy."  (*Id*.)

*(4) Outpatient therapy*.  The Plan covers "individual psychotherapy, group psychotherapy, and family therapy" in a provider's office or a member's home.  (Ex. 1, p. 19).  The care must be rendered by "Board certified psychiatrists; Licensed clinical psychologists; Clinical social workers (licensed or certified at the independent practice level); Advance practice nurses/clinical nurse specialists; Licensed mental health counselors; [or] Licensed marriage and family therapists."  (*Id.*)

Notably absent from this list of covered behavioral health services are wilderness programs and outdoor behavioral health programs.  (*See* Ex. 1, pp. 18-19).  Section 3's exhaustive list confirms that such services are not covered under the Plan.

## III.    Wilderness Programs Are Expressly Excluded from Coverage.

The Plan's Exclusions section makes clear that certain services are not covered "even if they are prescribed or recommended by your provider."  (Ex. 1, Section 4, p. 37)

Among the specifically excluded services are: (i) "[r]ecreational therapy services and programs, including *wilderness programs*;" and (ii) "[s]ervices provided in any covered program that are recreational therapy services, including *wilderness programs*, educational services,

complimentary services, non-medical self-care, self-help programs, or non-clinical services." (Ex. 1, p. 42) (emphasis added). These exclusions apply to both medical/surgical and behavioral health benefits. (*See id*.)

The Plan further clarifies that it "does not cover programs unless specifically listed as covered." (Ex. 1, p. 72).

## IV.    Plaintiffs' Allegations.

Plaintiffs challenge the denial of coverage for G.R.K.'s mental health treatment at Aspiro, which is licensed as an outdoor youth treatment program by the State of Utah, from May 26, 2021 through August 18, 2021. (Compl. ¶¶ 13, 14).

BCBSRI denied the claim on March 23, 2022, stating: "It has been determined that Wilderness Programs are excluded from coverage under [the Plan]. Behavioral Health Services not covered per subscriber agreement: Therapeutic recreation or wilderness programs." (Compl. ¶ 29). Plaintiff appealed the denial on September 13, 2022, arguing that the services at issue are not excluded from Plan coverage because Aspiro is not a recreational therapy program. (*Id*. ¶¶ 34-38). BCBSRI upheld the denial by letter dated November 7, 2022. (*Id*. ¶ 48).

Plaintiffs' Complaint, filed on April 29, 2025, alleges two Causes of Action. The First Cause of Action, brought pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), seeks to recover Plan benefits for G.R.K.'s treatment at Aspiro. (Compl. ¶¶ 58-63). The Second Cause of Action demands relief against Defendants under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), for purported violation of MHPAEA. (*Id*. ¶¶ 64-76).

## <u>LEGAL STANDARD</u>

A complaint survives a Rule 12(b)(6) motion only if it alleges facts showing a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). Plausibility requires "factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*.

The First Circuit applies a two-step analysis. First, the Court "distinguish[es] the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." *Cardigan Mtn. Sch. v. N.H. Ins. Co*., 787 F.3d 82, 84 (1st Cir. 2015). Second, the Court asks whether the factual allegations "support the reasonable inference that the defendant is liable." *Id*. A claim is not plausible if it is merely possible or consistent with liability; it must contain "enough heft" to show entitlement to relief. *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008). Dismissal is thus required where the complaint fails to plead "factual allegations, either direct or inferential, [for] each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008).

In deciding a Rule 12(b)(6) motion, the Court may also consider certain extrinsic documents without converting the motion into one for summary judgment. *Freeman v. Town of Hudson*, 714 F.3d 29, 36 (1st Cir. 2013). Those include "documents the authenticity of which are not disputed by the parties," "official public records," "documents central to plaintiff's claim," and "documents sufficiently referred to in the complaint." *Id*. Particularly when "a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings." *Newman v. Lehman Bros. Holdings Inc.*, 901 F.3d 19, 25 (1st Cir. 2018). Where such a document contradicts the allegations of the complaint, the document "trumps the allegations." *Clorox Co. P.R. v. Proctor & Gamble Com. Co*., 228 F.3d 24, 32 (1st Cir. 2000). Courts regularly consider plan documents when deciding ERISA claims. *See, e.g.*, *Edes v. Verizon Commc'n, Inc*., 417 F.3d 133, 137–38 (1st Cir. 2005) (affirming dismissal of ERISA § 502(a)(1)(B) claim where the "complaint

allege[d], and the plan documents . . . confirm[ed], that [the] ERISA plans explicitly exclude[d]" the claims).  Because the Complaint repeatedly refers to the Subscriber Agreement and the Plan's terms are central to Plaintiffs' claims, the Court should consider the Subscriber Agreement when deciding the Motion.

## **ARGUMENT**

## I.  **PLAINTIFFS HAVE NOT PLAUSIBLY PLED ENTITLEMENT TO PLAN BENEFITS**

### A.  **Plaintiffs Fail to State a Claim for Plan Benefits Because the Plan Does Not Cover, and Expressly Excludes, Wilderness Programs Like Aspiro.**

Section 1132 of ERISA provides a civil cause of action for a participant or beneficiary "to recover benefits due to him under the terms of his plan."  29 U.S.C. § 1132(a)(1)(B).  Accordingly, "to claim recovery of plan benefits under ERISA, the plaintiff's complaint must identify specific terms of the plan that give rise to the alleged benefits due."  *IHC Health Servs., Inc. v. Cent. States SE & SW Areas Health & Welfare Fund*, No. 2:17-CV-01327-JNP-BCW, 2018 WL 3756959, at *2, n.1 (D. Utah Aug. 7, 2018) (collecting cases from various jurisdictions); *see also Belleville v. United Food & Com. Workers Int'l Union Indus. Pension Fund*, 620 F. Supp. 2d 277, 281 (D.R.I. 2008) ("[O]nly benefits specified in the plan can be recovered in a suit under Section 502(a)(1)(B).").

Here, Plaintiffs do not, and cannot, identify any Plan provision that provides coverage for G.R.K.'s wilderness treatment at Aspiro.  The Plan is clear: wilderness programs are not included in the list of "covered healthcare services" ***and*** are expressly excluded from Plan coverage.  (*See* Ex. 1, pp. 18–19, 42).  Accordingly, Plaintiffs' First Cause of Action for Plan benefits under ERISA § 502(a)(1)(B) must be dismissed with prejudice.

(1)    Wilderness Therapy is Not a Covered Healthcare Service Under the Plan.

The Plan *only* provides coverage for services that are: (1) listed in Section 3, (2) medically necessary, and (3) not excluded by Section 4.  (Ex. 1, p. 16).  As to behavioral health services, Section 3 limits coverage to four defined settings: (1) inpatient care "at a general or specialty hospital"; (2) acute residential treatment facilities meeting specific clinical and licensure requirements; (3) enumerated "intermediate care services" (*i.e.*, PHP, IOP, and home- and community-based AIS/CFIT); and (4) outpatient therapy at a provider's office or member's home. (Ex. 1, pp. 18–19).

The Complaint does not allege that Aspiro falls into any of these categories of covered services.  Plaintiffs do not allege that Aspiro is a "hospital" or an "acute behavioral health residential treatment facility" under the Plan's terms.  Nor could Plaintiffs do so.  Indeed, courts addressing claims for benefits relating to treatment at Aspiro have specifically held that Aspiro is *not* a residential treatment facility.  *See, e.g., H.H. v. Aetna Ins. Co.*, 342 F. Supp. 3d 1311, 1318 (S.D. Fla. 2018) ("Plaintiffs do not sufficiently allege that Aspiro qualifies as a residential treatment service because, in the Complaint, Plaintiffs allege that Aspiro is licensed under Utah law as an outdoor youth treatment program, rather than as a residential treatment program.").

Nor do Plaintiffs allege that Aspiro is one of the Plan's enumerated intermediate care services.  Plaintiffs plead no facts that Aspiro provided PHP or IOP-type programming, AIS/CFIT services, or that it functioned as a step-up or step-down from another covered level of care, as Section 3 requires for intermediate services.  (*See* Ex. 1, p. 18).

Plaintiffs' allegation that Aspiro qualifies as a "provider" under the Plan (Compl. ¶ 32), does not save their denial of benefits claim.  The Plan's definition of "provider" governs who may

furnish covered services;[4] it does not expand the scope of what services the Plan covers.  In other words, the fact that Aspiro may qualify as a "provider" does not transform Aspiro's wilderness therapy services—which are not listed in Section 3—into covered benefits.  Therefore, Plaintiffs' reliance on the "provider" definition is misplaced and underscores the absence of any plausible basis for benefits under ERISA § 502(a)(1)(B).  *See Guerra-Delgado v. Popular, Inc.*, 774 F.3d 776, 781 (1st Cir. 2014) ("[T]he relief Guerra seeks does not flow from the terms of the Plan. He consequently cannot recover under § 502(a)(1).");  *Todisco v. Verizon Commc'ns, Inc.*, 497 F.3d 95, 101 (1st Cir. 2007) ("Section 502(a)(1)(B) allows a plaintiff to sue only for benefits 'due to him *under the terms of his plan.*'  Here, the plan unambiguously stated that Mr. Todisco was ineligible to add supplemental life insurance without submitting a statement of health form.  Since it is undisputed that he never submitted this form, Mrs. Todisco's claim for benefits is plainly not a suit for benefits *under the terms of the plan.* Instead, she expressly seeks benefits *not* authorized by the plan's terms.") (emphasis in the original).

    In sum, because wilderness therapy is not listed in Section 3 of the Plan, the Plan does not provide coverage for this service.

(2)    <u>Wilderness Therapy is Expressly Excluded from Plan Coverage.</u>

    Moreover, wilderness therapy is expressly ***excluded*** from the coverage available under the Plan.  Section 4 of the Plan provides that "[r]ecreational therapy services and programs, including wilderness programs" are among the "services or categories of services that are not covered (excluded) under this plan."  (Ex. 1, pp. 37, 42).

---

[4] The Plan defines "provider" as "an individual or entity licensed under the laws of the State of Rhode Island or another state to furnish healthcare services."  (Ex. 1, p. 72).  The definition includes "midwives; certified registered nurse  practitioners; psychiatric and behavioral health nurse clinical specialists practicing in collaboration with or in the employ of a physician; counselors in behavioral health; and therapists in marriage and family practice."  (*Id.*)

Aspiro publicly calls itself a "Wilderness Adventure Therapy Program" on its website and provides a "Comprehensive Guide for Parents" on "Wilderness Therapy Programs."[5]  *See Wilderness Therapy Programs: A Comprehensive Guide for Parents*, Aspiro Wilderness Adventure Therapy, https://aspiroadventure.com/wilderness-therapy-programs/ (last visited August 29, 2025).  Courts have consistently recognized that Aspiro is a wilderness program.  *See Mary D. v. Anthem Blue Cross Blue Shield*, 778 F. App'x 580, 584, n. 3 (10th Cir. 2019) ("The Plan's terms specify that 'wilderness programs' like Aspiro 'are not considered residential treatment programs.'"); *Peter M. v. Aetna Health & Life Ins. Co.*, 554 F. Supp. 3d 1216, 1225-26 (D. Utah 2021) ("Defendants' interpretation that Aspiro is a wilderness treatment program is entirely reasonable.  Aspiro defines itself as a wilderness therapy program and as the pioneer of wilderness adventure therapy.  At Aspiro, students receive mental health treatment in a wilderness setting."); *Peter E. v. United Healthcare Servs., Inc.*, No. 2:17-cv-00435, 2018 WL 6068107, at *1 (D. Utah Nov. 20, 2018) (noting that the claims at issue "relate to … treatment at the Aspiro wilderness program").  The wilderness therapy services provided by Aspiro accordingly are excluded from coverage under the Plan.

Plaintiffs' claim that the "outdoor behavioral health treatment" that G.R.K. received at Aspiro is not excluded under the Plan's terms (Compl. ¶¶ 22-24, 35-38), is unpersuasive.  As a threshold matter, there is no distinction between outdoor behavioral health programs and wilderness therapy programs.  *See Peter M.*, 554 F. Supp. 3d at 1226 ("[T]he Tenth Circuit and other courts in this district have identified Aspiro as a wilderness program, not as an 'outdoor

---

[5] The Court may take judicial notice of Aspiro's own public statements.  *See, e.g., Goplin v. WeConnect, Inc.*, 893 F.3d 488, 491 (7th Cir. 2018) ("[T]he district court did not violate the rules of judicial notice by reviewing WeConnect's website [cited in Goplin's briefing] . . . We note too that the statements at issue are WeConnect's own assertions, not potentially unfamiliar information posted on third-party websites.").

youth treatment facility.'"). As a result, courts have held that plans have properly denied claims for benefits for treatment at Aspiro where the plans excluded coverage for wilderness programs. *See, e.g.*, *id.* In any event, Plaintiffs' effort to relabel Aspiro as an "outdoor behavioral health program" is a distinction without a difference; research literature recognizes "wilderness therapy" and "outdoor behavioral healthcare" as synonymous. *See Amy G. v. United Healthcare*, No. 2:17-cv-00413-DN-DAO, 2024 WL 4165783, at *5 (D. Utah Sept. 12, 2024) ("Wilderness Therapy may be identified by other terms in the research literature, including: 'Wilderness Treatment', 'behavior management through adventure', 'residential wilderness', 'Adventure Therapy', 'Nature-Assisted Therapy', 'Nature-Based Therapy', 'Adventure-Based Counseling', 'Wilderness Adventure Therapy', and 'Outdoor Behavioral Healthcare.'").

Moreover, Plaintiffs' allegation that the treatment G.R.K. received at Aspiro was not a form of "recreation therapy" (Compl. ¶¶ 22-24, 35-38), is pure semantics. Based on its own representations, Aspiro provided services that contained an element of and/or were predicated on adventure in a wilderness setting. *See Peter M.*, 554 F. Supp. 3d at 1225-26 (observing that "Aspiro defines itself as a wilderness therapy program and as the pioneer of wilderness adventure therapy."). It strains credulity to argue that outdoor, adventure-based therapy is not encompassed in the Plan's exclusion for "recreation therapy and services."

In sum, because Aspiro is a wilderness program and wilderness programs are expressly excluded from Plan coverage, Plaintiffs' claim for benefits fails as a matter of law. *See Roy C. v. Aetna Life Ins. Co.*, No. 2:17-cv-1216, 2018 WL 4511972, at *2 (D. Utah Sept. 19, 2018) ("[T]he Plan at issue in this case expressly and clearly excludes from coverage '[t]reatment in wilderness programs or similar programs,' and therefore, Plaintiffs' claim for benefits for treatment at Open Sky Wilderness Therapy is expressly and clearly excluded from coverage.").

**B.      Plaintiff Cannot Recover Benefits Based on a Purported Lack of a Full and Fair Review Because the Plan Does Not Cover the Services at Issue.**

Plaintiffs also allege that BCBSRI failed to provide a "full and fair review" of their appeal. (Compl. ¶ 61).[6]  But Plaintiffs' full and fair review claim does not provide an independent basis for coverage where the Plan does not provide coverage for the services at issue.  ERISA is designed only to protect "contractually defined benefits."  *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 830 (2003).  As a result, alleged procedural defects cannot transform excluded services into covered benefits.  *See, e.g.*, *Brightway Adolescent Hosp. v. Strachan, Green, Miller & Olender*, No. 2:99-CV-228K, 2000 WL 33363258, at *8 (D. Utah Dec. 15, 2000) ("Plaintiffs have failed to cite any cases in which benefits were awarded by the court based on the ground that the plan denied full and fair review."); *Loran K. v. Blue Cross & Blue Shield of Illinois*, No. 19-CV-07694-JSW, 2021 WL 4924777, at *8 (N.D. Cal. June 17, 2021) ("[E]ven if the alleged irregularities had affected Plaintiff's ability to obtain benefits, the remedy would not be to 'confer coverage by estoppel.'  Rather, where there is evidence of procedural irregularities, a court typically will apply a less deferential standard of review to the administrator's decision.").

Accordingly, even accepting Plaintiffs' procedural allegations to be true (which Defendants deny), they do not establish a substantive right to benefits.  *See Iqbal*, 556 U.S. at 679 (no entitlement to benefits absent plausible substantive right); *Todisco*, 497 F.3d at 102 (noting that prior decisions applying "equitable principles en route to an award of benefits under section

---

[6] In addition, Plaintiffs allege that BCBSRI, in its capacity as the Plan's Claims Administrator, failed to provide certain documents and information requested by the Plaintiffs.  (Compl. ¶¶ 8, 44-46, 49).  However, requesting documents and information from a claims administrator does not trigger ERISA § 502(c)'s disclosure requirements.  *See Tetreault v. Reliance Std. Life Ins. Co.*, 769 F.3d 49, 59-60 (1st Cir. 2014).  Indeed, the Complaint does not allege that BCBSRI violated ERISA § 502(c), 29 U.S.C. § 1132(c).

502(a)(1)(B) … did so in the context of reasonable claims that the plaintiff was actually entitled to benefits *under the terms of the plan documents*") (emphasis in the original).

For the foregoing reasons, Plaintiffs' First Cause of Action under ERISA § 502(a)(1)(B) fails as a matter of law and should be dismissed with prejudice.

## II.    PLAINTIFFS HAVE NOT PLAUSIBLY PLED A MHPAEA VIOLATION

### A.    Not All Treatment Limitations on Mental Health Benefits Are MHPAEA Violations.

MHPEA is designed to "end discrimination in the provision of insurance coverage for mental health and substance use disorders as comparable to coverage for medical and surgical conditions in employer-sponsored group health plans." *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 353, 356 (2d Cir. 2016).

MHPAEA does not mandate coverage for mental health treatment. *See Joseph F. v. Sinclair Servs. Co.*, 158 F. Supp. 3d 1239, 1262 (D. Utah 2016). Instead, MHPAEA requires certain plans "that choose to provide mental health . . . benefits [to] do so in parity with medical and surgical benefits." *Coalition for Parity, Inc. v. Sebelius*, 709 F. Supp. 2d 10, 13 (D.D.C. 2010). Specifically, MHPAEA requires that treatment limitations applicable to mental health or substance use disorder benefits be "no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan," and further prohibits "separate treatment limitations that are applicable only with respect to mental health." 29 U.S.C. § 1185a(a)(3)(A)(ii).

Treatment limitations can be quantitative, such as limits on the number of visits, or nonquantitative ("NQTLs"). At issue here are NQTLs, which "limit the scope or duration of benefits for treatment under a plan or coverage," and include "[r]estrictions based on geographic location, facility type, provider specialty, and other criteria that limit the scope or duration of benefits for services provided." 29 C.F.R. § 2590.712(a)-(c). NQTL comparisons between mental

health and medical/surgical benefits must be made within six discrete benefit "classifications": (1) in-patient, in-network; (2) in-patient, out-of-network; (3) outpatient, in-network; (4) outpatient, out-of-network; (5) emergency care; and (6) prescription drugs. *See* 29 C.F.R. § 2590.712(c)(2)(ii)(A). Regulators have identified residential treatment centers (on the mental health-side) and skilled nursing facilities and inpatient rehabilitation facilities (on the medical/surgical-side) as analogous "intermediate services" (*i.e.*, services that fall between inpatient hospital care and outpatient treatment) under MHPAEA. *See* Preamble, Final Rules Under the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008, 78 Fed. Reg. 68240, 68246-47 (Nov. 13, 2013) ("Preamble, Final Rules").

Importantly, MHPAEA does not require that NQTLs for mental health benefits and medical/surgical benefits in the same classification be the same. *See N.R. v. Raytheon Co.*, 24 F.4th 740, 747 (1st Cir. 2022) (noting that in the Preamble to the Final Rules implementing MHPAEA, the tri-agencies opined that "'disparate results alone do not mean that [non-quantitative treatment limitations] in use do not comply [with the Parity Act].") (quoting Preamble, Final Rules, 78 Fed. Reg. at 68245-46). Instead, MHPAEA requires only that "the processes, strategies, evidentiary standards, or other factors used in applying the nonquantitative treatment limitation to mental health or substance use disorder benefits in the classification *are comparable to, and are applied no more stringently than*, the processes, strategies, evidentiary standards, or other factors used in applying the limitation with respect to medical/surgical benefits in the classification." 29 C.F.R. § 2590.712(c)(4)(i)(A) (emphasis added).

The NQTL requirements under MHPAEA are intentionally designed to be flexible, and "[d]isparate results alone do not mean that the NQTLs in use do not comply with [MHPAEA's] requirements." 78 Fed. Reg. 68240, 68245. *See also James C. v. Anthem Blue Cross and Blue Shield*, No. 19-cv-38 (CW), 2021 WL 2532905, at *20 (D. Utah June 21, 2021) (noting that "the

Parity Act only requires comparability, not equality, between limitations"); *Alice F. v. Health Care Serv. Corp.*, 367 F. Supp. 3d 817, 829 (N.D. Ill. 2019) ("[S]ome differences between mental healthcare and medical care can be tolerated under [MHPAEA] where 'the difference in requirements is not necessarily an improper limitation on mental health care, but recognition of the inherent difference in treatment at [different] facilities.'").

To state a claim for an MHPAEA violation, Plaintiffs must "(1) identify a specific treatment limitation on mental health benefits, (2) identify medical/surgical care covered by the plan that is analogous to the mental health/substance abuse care for which the plaintiffs seek benefits, and (3) plausibly allege a disparity between the treatment limitation on mental health/substance abuse benefits as compared to the limitations that defendants would apply to the covered medical/surgical analog." *James C.*, 2021 WL 2532905, at *18.

An alleged MHPAEA violation can be either "*facial* (as written in the language or the processes of the plan) or *as-applied* (in operation via application of the plan)." *Id.* (emphasis in the original); *see also* 29 C.F.R. § 2590.712(c)(4)(i) (MHPAEA violations can arise from the terms of the plan "as written and in operation"). Plaintiffs fail to plausibly allege either type of violation.

### B.    Plaintiffs Fail to State a Facial MHPAEA Violation.

To plead a facial MHPAEA violation, "the plaintiff must correctly identify [the plan's express] limitation and compare it to a relevant analogue." *Peter E.*, 2019 WL 3253787, at *3.

Here, the Plan excludes: (1) "[r]ecreational therapy services and programs, including wilderness programs," and (2) "[s]ervices provided in any covered program that are recreational therapy services, including wilderness programs, educational services, complementary services, non-medical self-care, self-help programs, or non-clinical services." (Ex. 1, p. 42).

These exclusions are facially neutral: they apply equally to medical/surgical and mental health claims. (*See id.*) Plaintiffs therefore cannot plausibly allege a facial MHPAEA violation.

*See, e.g., S.F. v. CIGNA Health & Life Ins. Co*., No. 2:23-CV-213, 2024 WL 1912359, at *6 (D. Utah May 1, 2024), *appeal dismissed*, No. 24-4062, 2025 WL 1568310 (10th Cir. Feb. 10, 2025) ("[T]he CAM Policy broadly excludes wilderness therapy programs and outdoor youth programs, whether to treat medical, surgical, or mental health care. Therefore, the Plans' language does not provide Plaintiffs with a basis for a facial challenge under the Parity Act."); *Peter M.*, 554 F. Supp. 3d at 1227 ("The wilderness treatment exclusion is listed under the general heading for 'Medical Plan Exclusions.' The language of this section does not indicate that the exclusion only applies to mental health treatment. Rather, it applies to all wilderness treatment programs."); *A.H. by & Through G.H. v. Microsoft Corp. Welfare Plan*, No. C17-1889, 2018 WL 2684387, at *7 (W.D. Wash. June 5, 2018) (finding no facial MHPAEA violation where the exclusion for "educational or recreational therapy or programs, including wilderness programs" "suggested that the exclusion applied to all medical benefits," not just mental health benefits) (citation modified).

Plaintiffs also fail to identify a valid medical/surgical analogue to wilderness therapy that the Plan does not treat at parity. Plaintiffs allege that skilled nursing, subacute rehabilitation, and inpatient hospice care are medical/surgical analogues for wilderness therapy (Compl. ¶ 42), but regulators have not identified these forms of treatment as such. *See generally* Preamble, Final Rules (no reference to medical/surgical analogues for wilderness therapy). Nor do Plaintiffs offer any rationale as to why these forms of treatment should be considered analogues for wilderness therapy. *See generally* Compl. Indeed, regulators identified skilled nursing, subacute rehabilitation, and inpatient hospice care as medical/surgical analogues for residential treatment. But residential treatment is a materially different mental health service than wilderness therapy. *See Alice F.*, 367 F. Supp. 3d at 828 ("By contrast [to residential treatment centers], wilderness programs offer a different service providing merely a supportive environment and methods to

17

address social needs."). As a result, these forms of treatment are not medical/surgical analogues for wilderness therapy.

Moreover, it is undisputed that the Plan provides coverage for residential treatment at parity with skilled nursing, subacute rehabilitation, and inpatient hospice care. The Plan's benefits structure accordingly complies with MHPAEA's requirements. *See Roy C.*, 2018 WL 4511972, at \*3 ("Plaintiffs have failed to sufficiently identify a comparison or analogue to wilderness treatment in the medical and surgical fields of treatment. The Plan at issue in this case provides mental health services on both an inpatient and outpatient basis. It provides coverage for mental health services for hospitalization, residential treatment, partial hospitalization, and intensive outpatient treatment as required by the Parity Act. It simply does not provide coverage for wilderness treatment programs."); *A.G. by & Through N.G. v. Cmty. Ins. Co.*, 363 F. Supp. 3d 834, 841–42 (S.D. Ohio 2019) ("[T]he Plan … explicitly cover[s] services at residential treatment centers – for both medical and mental health services – it simply does not cover any services performed at wilderness camps. A residential treatment center is an intermediate facility analogue to a rehabilitation hospital and skilled nursing facility. Therefore, … because the Plan both provides benefits for services performed at residential treatment centers for medical/surgical patients and for mental health conditions, the Plan does not contain a discriminatory limitation.").

### C.    Plaintiffs Fail to State an As-Applied MHPEA Violation.

To plead an as-applied violation, "a plaintiff must plausibly allege that a 'defendant differentially applies a facially neutral plan term.'" *J.S. v. Blue Cross Blue Shield of Illinois*, No. 2:22-CV-00480, 2024 WL 4308925, at \*5 (D. Utah Sept. 26, 2024).

Plaintiffs allege only, "[u]pon information and belief," that "BCBSRI/the Plan has not applied a similar exclusion in the context of skilled nursing facilities or other analogs to Aspiro," and that, "if BCBSRI/the Plan has never received a similar claim in a setting other than mental

health treatment, then BCBSRI/the Plan is aware that it is enforcing an exclusion that is only applicable to mental health condition benefits." (Compl. ¶ 71). Such a speculative and conclusory allegation is insufficient to carry a plaintiff's pleading burden. *See Iqbal*, 556 U.S. at 678-79 ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").[7] That is true even in the context of a MPHAEA claim. *See L.L. v. Anthem Blue Cross Life & Health Ins.*, 661 F. Supp. 3d 1106, 1112 (D. Utah 2023) ("***Plaintiff fails to offer any factual allegations*** to support the conclusion that Anthem imposes a different standard when assessing whether intermediate level mental health benefits are investigational and when analogous medical or surgical benefits are investigational.") (emphasis added); *M.N. v. UnitedHealthcare Ins.*, No. 2:18-cv-00710, 2020 WL 1644199, at *6 (D. Utah April 2, 2020) ("Although Plaintiffs identify skilled nursing facilities and inpatient hospice care as medical/surgical analogs to the residential treatment and wilderness therapy at issue, they allege no facts regarding the comparator treatments. ***Without some facts about actual, as-applied, analogous medical treatment coverage, other than labels and conclusions, there can be no comparison and hence no claim***.") (emphasis added); *Sarah W. v. CIGNA Health & Life Ins. Co.*, No. 2:19-CV-00629-DB, 2020 WL 1030716, at *2 (D. Utah Mar. 3, 2020) ("***Plaintiffs fail to allege with specificity facts showing a disparity*** in [Cigna's] application of limitation criteria or

---

[7] *Lavigne v. Great Salt Bay Cmty. Sch. Bd.*, No. 24-1509, 2025 WL 2103993, at *8 (1st Cir. July 28, 2025) ("[T]he phrase 'information and belief' does not excuse 'pure speculation,' and a 'legal conclusion couched as a factual allegation' is not entitled to a presumption of truth."); *Sequin, LLC v. Renk*, No. CV 20-62WES, 2021 WL 124250, at *5 (D.R.I. Jan. 13, 2021), report and recommendation adopted, No. CV 20-062 WES, 2021 WL 391519 (D.R.I. Feb. 4, 2021) ("[I]f an allegation is made on 'information and belief,' but the pleader fails to supply facts to support it, the allegation may be disregarded.") (citation omitted); *Sigui v. M&M Commc'ns, Inc.*, No. CV 14-442S, 2015 WL 13717724, at *11 (D.R.I. Oct. 20, 2015), report and recommendation adopted, No. CV 14-442 S, 2016 WL 1255710 (D.R.I. Mar. 30, 2016) ("The claims are based exclusively on conclusory and unsupported 'information and belief' allegations which are not sufficient to survive Defendant's 12(b)(6) challenge.").

*how* a disparity arises between criteria Defendant used to deny coverage for [A.L.'s] treatment and criteria for analogous medical or surgical treatment. Instead, Plaintiffs' Parity Act claim is supported by speculative statements and legal conclusions, which do not constitute well-pleaded facts.") (emphasis added); *Anne M. v. United Behav. Health*, No. 2:18-CV-808 TS, 2019 WL 1989644, at *3 (D. Utah May 6, 2019) ("***Plaintiffs fail to adequately allege facts to support their claim*** that UBH applied less rigorous standards when evaluating analogous medical/surgical claims. Therefore, Plaintiffs' second cause of action is subject to dismissal.") (emphasis added).

Plaintiffs also argue that, "[b]ecause BSBSRI/the Plan declined to produce the requested documents and materials requested by Plaintiffs, further discovery is needed to resolve this aspect of Plaintiffs' claims." (Compl. ¶ 72).[8] However, discovery cannot substitute for well-pled facts. *See Sarah W.*, 2020 WL 1030716, at *3 ("Plaintiffs contend that they lack the necessary information to include more specific facts in order to state a Parity Act claim because Defendants failed to provide Plaintiffs with the Plan's medical necessity criteria for medical/surgical and mental health/substance use disorder benefits. However, the court will not allow Plaintiffs to conduct a discovery fishing expedition on a cause of action that lacks the factual support required by Rule 12(b)(6)."); *Julian B. v. Regence Blue Cross & Blue Shield of Utah*, No. 2:19-cv-471-TC, 2020 WL 1955222, at *4 (D. Utah Apr. 23, 2020) ( "As for Plaintiffs' contention that they need

---

[8] Plaintiffs allege that they requested, but did not receive, *inter alia*, clinical guidelines utilized in the Plan's determination and copies of any report or opinions provided by any physician or other professional. (Compl. ¶¶ 44-45). Even assuming Plaintiffs allegations are true, they do not mean that Plaintiffs have been deprived of the factual information they need to plead a plausible as-applied MHPAEA claim. Indeed, it is undisputed that Plaintiffs' claim was denied based on an express coverage exclusion and not based on opinions regarding the medical necessity of the treatment at issue and/or the application of any clinical guidelines. As result, any clinical guidelines and physician opinions are irrelevant here. Moreover, the medical policies and clinical guidelines applicable to the Plan are fully available to Plaintiffs on BCBSRI's website. *See Look up Medical and Payment Policies*, Blue Cross Blue Shield of Rhode Island, https://www.bcbsri.com/providers/medicalpolicies (last visited August 29, 2025).

discovery before they can articulate the connection [necessary to plausibly allege an as-applied MHPAEA claim], they request permission to conduct a fishing expedition."); *see also DM Rsch., Inc. v. Coll. of Am. Pathologists*, 170 F.3d 53, 55 (1st Cir. 1999) ("Conclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition.").

### D.    Plaintiffs are Not Entitled to Relief for Any Alleged MHPAEA Violation.

Even if Plaintiffs had pled a plausible MHPAEA violation (which they have not), the remedies they seek are unavailable.  Specifically, Plaintiffs' request for the equitable remedies of disgorgement, restitution, accounting, and surcharge (Compl. ¶ 75) under ERISA § 502(a)(3) is misplaced because they have already asserted a claim for Plan benefits under ERISA § 502(a)(1)(B).  *See, e.g., Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996) ("[S]ubsection (a)(3) is intended to function as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy ... where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for [a Section 502(a)(3) claim], in which case such relief normally would not be appropriate"); *Neely v. Pension Tr. Fund of Pension, Hospitalization & Benefit Plan of Elec. Indus.*, No. 00 CV 2013 SJ, 2003 WL 21143087, at *12 (E.D.N.Y. Jan. 16, 2003) ("[A] plaintiff's § 502(a)(3) claim should be dismissed when the § 502(a)(3) claim seeks relief duplicative of the relief sought on a claim for benefits under § 502(a)(1)(B).") (collecting cases).  In addition, Plaintiffs have not alleged that Defendants wrongfully took their "property" and, thus, Plaintiffs' claims for disgorgement, accounting, and restitution fail for that additional reason.  *See Teets v. Great-W. Life & Annuity Ins.*, 921 F.3d 1200, 1226 (10th Cir. 2019).

Similarly, Plaintiffs cannot seek an injunction related to their MHPAEA claim (Compl. ¶ 75) because they have alleged only past harm, not a real and immediate threat of future injury.

Plaintiffs do not allege that they currently are receiving wilderness therapy, at Aspiro or otherwise, or plan to do so again in the future.[9]  "[P]ast wrongs do not in themselves amount to [a] real and immediate threat of injury necessary to make out a case or controversy" for purposes of establishing standing for prospective injunctive relief.  *Bates v. United Parcel Serv.*, 511 F.3d 974, 985 (9th Cir. 2007).  Instead, a plaintiff seeking prospective injunctive relief "must demonstrate that [she] has suffered or is threatened with a 'concrete and particularized' legal harm coupled with a 'sufficient likelihood that [she] will again be wronged in a similar way.'"  *Id.* at 985.  Likewise, Plaintiffs are not entitled to declaratory relief (Compl., ¶ 75) because, for purposes of declaratory relief, "past exposure to illegal conduct does not in itself show a present case or controversy . . . if unaccompanied by any continuing, present adverse effects."  *L.A. v. Lyons*, 461 U.S. 95, 102 (1983).  Plaintiffs do not allege that they will be wronged by any similar alleged violation of MHPAEA in the future, nor is there a present case or controversy justifying prospective declaratory relief.  *See Lawrence v. Keunhold*, 271 F. App'x 763, 766 (10th Cir. 2008) (declaratory relief is meant to define future conduct).  Plaintiffs also cannot ask this Court to issue an "obey-the-law" injunction that lacks the requisite specificity.  (Compl. ¶ 75) (broadly asking the Court to order Defendants to stop violating MHPAEA)).  *See Schmidt v. Lessard*, 414 U.S. 473, 476 (1974) (noting that "basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed").

Finally, Plaintiffs have not identified any mistake or fraud that could be remedied by reformation of the Plan (Compl. ¶ 75), and, therefore, they are not entitled to such relief.  *Negley v. Breads of the World Med. Plan*, 222 F. App'x 692, 696 (10th Cir. 2007).  Moreover, Plaintiffs'

---

[9] Moreover, should this case proceed, discovery will show that contrary to the allegation in the Complaint (Compl. ¶ 5), Plaintiffs are not current participants in the Plan.  As a result, Plaintiffs cannot seek prospective injunctive or declaratory relief with regard to the application of the Plan's terms.

request for reformation fails because it is based on the "medical necessity criteria utilized by Defendants," even though it is undisputed that Defendants never issued a medical necessity determination with respect to G.R.K.'s wilderness treatment at Aspiro.  (Compl., p. 1 and ¶ 75).

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint in its entirety and with prejudice.

Dated: August 29, 2025                                  Respectfully submitted,

<u>/s/ Kara P. Wheatley</u>
Kara P. Wheatley (*admitted pro hac vice*)
Jovana Vujovic (*admitted pro hac vice*)
Kathryn Panish (*admitted pro hac vice*)
GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Avenue, Suite 1200
Washington, DC 20006
kwheatley@groom.com
jvujovic@groom.com
kpanish@groom.com
Tel.: (202) 861-6339
Fax: (202) 659-4503

<u>/s/ Michael J. Daly</u>
Michael J. Daly (#6729)
PIERCE ATWOOD LLP
One Citizens Plaza, 10th Floor
Providence, RI 02903
mdaly@pierceatwood.com
Tel.: (401) 490-3424
Fax: (401) 588-5166

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 29, 2025, a true and correct copy of the foregoing document was filed through the CM/ECF system and sent electronically to the registered participants identified on the Notice of Electronic Filing (NEF).

<u>*/s/ Kara P. Wheatley*</u>
Kara P. Wheatley

# Exhibit 1

# Subscriber Agreement

# Healthmate Coast-to-Coast



# BLUE CROSS & BLUE SHIELD OF RHODE ISLAND
## SUBSCRIBER AGREEMENT

---

## TABLE OF CONTENTS

---

**SUMMARY OF MEDICAL BENEFITS** ............................................................................................... 1

   **NETWORK PROVIDER SERVICES** ............................................................................................. 1
   NON-NETWORK PROVIDER SERVICES ........................................................................................ 1
   DEDUCTIBLE/MAXIMUM OUT-OF-POCKET EXPENSE ...................................................................... 1
   SUMMARY OF MEDICAL BENEFITS .......................................................................................... 2

**SECTION 1:  INTRODUCTION TO YOUR SUBSCRIBER AGREEMENT** ................................................ 6

   HOW TO USE THIS AGREEMENT ............................................................................................. 6
   CONTACT US IF YOU HAVE A QUESTION .................................................................................. 6
   YOUR MEMBER IDENTIFICATION CARD ..................................................................................... 7
   YOUR GUIDE TO SELECTING A PRIMARY CARE PROVIDER (PCP) AND OTHER PROVIDERS ...................... 7
   PROGRAMS TO KEEP YOU HEALTHY ....................................................................................... 7
   ABOUT THIS AGREEMENT .................................................................................................... 9

**SECTION 2: ELIGIBILITY** ......................................................................................................... 10

   WHO IS AN ELIGIBLE PERSON .............................................................................................. 10
   WHEN YOUR COVERAGE BEGINS .......................................................................................... 11
   COVERAGE FOR MEMBERS WHO ARE HOSPITALIZED ON THEIR EFFECTIVE DATE ............................... 13
   HOW TO ADD OR REMOVE COVERAGE FOR FAMILY MEMBERS ....................................................... 13
   WHEN YOUR COVERAGE ENDS ............................................................................................. 13
   CONTINUATION OF COVERAGE .............................................................................................. 14

**SECTION 3: COVERED HEALTHCARE SERVICES** ......................................................................... 16

   AMBULANCE SERVICES ...................................................................................................... 17
   AUTISM SERVICES ............................................................................................................ 17
   BEHAVIORAL HEALTH SERVICES ........................................................................................... 18
   CARDIAC REHABILITATION ................................................................................................... 20
   CHIROPRACTIC SERVICES ................................................................................................... 20
   DENTAL SERVICES ............................................................................................................ 20
   DIALYSIS SERVICES .......................................................................................................... 20
   DURABLE MEDICAL EQUIPMENT (DME), MEDICAL SUPPLIES, PROSTHETIC DEVICES, ENTERAL FORMULA OR FOOD, AND HAIR PROSTHESIS (WIGS) ................................................................................ 20
   EARLY INTERVENTION SERVICES (EIS) .................................................................................. 23
   EDUCATION - ASTHMA ....................................................................................................... 23
   EMERGENCY ROOM SERVICES ............................................................................................. 23
   EXPERIMENTAL OR INVESTIGATIONAL SERVICES ....................................................................... 24
   GENDER REASSIGNMENT SERVICES ...................................................................................... 25
   HEARING SERVICES .......................................................................................................... 25
   HOME HEALTH CARE ......................................................................................................... 25
   HOSPICE CARE ............................................................................................................... 25
   HUMAN LEUKOCYTE ANTIGEN TESTING .................................................................................. 25
   INFERTILITY SERVICES ...................................................................................................... 26
   INFUSION THERAPY .......................................................................................................... 26
   INPATIENT SERVICES ........................................................................................................ 26
   **MASTECTOMY SERVICES** ................................................................................................. 27

OBSERVATION SERVICES .................................................................................................................27
OFFICE VISITS (OTHER THAN PREVENTIVE CARE SERVICES).............................................................28
ORGAN TRANSPLANTS ...................................................................................................................28
PHYSICAL/OCCUPATIONAL THERAPY ...............................................................................................29
PREGNANCY AND MATERNITY SERVICES ..........................................................................................29
PRESCRIPTION DRUGS ...................................................................................................................29
PREVENTIVE CARE AND EARLY DETECTION SERVICES.......................................................................30
PRIVATE DUTY NURSING SERVICES .................................................................................................32
RADIATION THERAPY/CHEMOTHERAPY SERVICES .............................................................................32
RESPIRATORY THERAPY .................................................................................................................32
SKILLED CARE IN A NURSING FACILITY .............................................................................................32
SPEECH THERAPY .........................................................................................................................32
SURGERY SERVICES ......................................................................................................................33
TELEMEDICINE SERVICES ...............................................................................................................34
TESTS, LABS, AND IMAGING AND X-RAYS (DIAGNOSTIC)..................................................................34
URGENT CARE ..............................................................................................................................35
VISION CARE SERVICES .................................................................................................................36

SECTION 4: EXCLUSIONS ..........................................................................................................37

AIR AND WATER AMBULANCE SERVICES ..........................................................................................37
BEHAVIORAL HEALTH SERVICES ......................................................................................................37
CHIROPRACTIC SERVICES ..............................................................................................................37
DENTAL SERVICES .........................................................................................................................37
DIALYSIS SERVICES .......................................................................................................................38
DURABLE MEDICAL EQUIPMENT (DME), MEDICAL SUPPLIES, PROSTHETIC DEVICES, ENTERAL FORMULA OR FOOD, AND
HAIR PROSTHESIS (WIGS).............................................................................................................38
EXPERIMENTAL OR INVESTIGATIONAL SERVICES ...............................................................................39
GENDER REASSIGNMENT SERVICES .................................................................................................39
HEARING SERVICES ........................................................................................................................39
HOME HEALTH CARE .....................................................................................................................39
INFERTILITY SERVICES ...................................................................................................................39
INPATIENT SERVICES ......................................................................................................................39
ORGAN TRANSPLANTS ...................................................................................................................39
PREGNANCY AND MATERNITY SERVICES ..........................................................................................40
PRESCRIPTION DRUGS AND DIABETIC EQUIPMENT OR SUPPLIES........................................................40
PRIVATE DUTY NURSING SERVICES .................................................................................................41
SURGERY SERVICES ......................................................................................................................41
TESTS, LABS, AND IMAGING AND X-RAYS (DIAGNOSTIC)..................................................................42
THERAPIES ...................................................................................................................................42
VISION CARE SERVICES .................................................................................................................43
PROVIDERS ..................................................................................................................................43
SERVICES AVAILABLE OR PROVIDED FROM OTHER SOURCES ............................................................43
ALL OTHER EXCLUSIONS ...............................................................................................................44

SECTION 5: REQUESTS FOR AUTHORIZATION, DENIALS, COMPLAINTS, AND APPEALS.....................46

REQUESTS FOR AUTHORIZATION .....................................................................................................46
DENIALS .......................................................................................................................................48
COMPLAINTS .................................................................................................................................48
RECONSIDERATIONS AND APPEALS .................................................................................................49
LEGAL ACTION ..............................................................................................................................52

SECTION 6: CLAIM FILING AND PROVIDER PAYMENTS ...............................................................54

HOW TO FILE A CLAIM ...................................................................................................................54
HOW NETWORK PROVIDERS ARE PAID.............................................................................................54
HOW NON-NETWORK PROVIDERS ARE PAID.....................................................................................55
HOW BLUECARD PROVIDERS ARE PAID: COVERAGE FOR SERVICES PROVIDED OUTSIDE OUR SERVICED AREA..........56

SECTION 7: COORDINATION OF BENEFITS AND SUBROGATION ..................................................60

Introduction ..................................................................................................................60
Definitions ....................................................................................................................60
When You Have More Than One Plan with BCBSRI ..................................................61
When You Are Covered by More Than One Insurer ....................................................61
Our Right to Make Payments and Recover Overpayments .........................................63
Our Right of Subrogation and/or Reimbursement .......................................................64

## SECTION 8: GLOSSARY ............................................................................................67

## SECTION 9: CONTACT INFORMATION ....................................................................74

## SECTION 10: NOTICES AND DISCLOSURES ..........................................................76

Behavioral HealthCare Parity .....................................................................................76
Genetic Information .....................................................................................................76
Orally Administered Anticancer Medication .................................................................76
Our Right to Receive and Release Information About You ...........................................76
Statement of Rights Under the Newborns' and Mothers' Health Protection Act ..........77

## SECTION 11: PHARMACY BENEFITS .....................................................................78

Required Preauthorization ...........................................................................................78
Summary of Pharmacy Benefits ..................................................................................79
Prescription Drugs ......................................................................................................81

## SUMMARY OF MEDICAL BENEFITS

This is a summary of *your* medical *benefits* under this *plan*. It includes information about *copayments*, *deductibles*, and *benefit limits*. This summary is intended to give you a general understanding of the medical coverage available under this *plan*. Please read Section 3.0 for a detailed description of coverage for each *covered healthcare service* and Section 4.0 for exclusions.

The amount you pay for *covered healthcare services* can differ based on the following:

- the service was provided in an *inpatient* or *outpatient* setting, in a *physician's* office, in your home, or from a pharmacy;
- the healthcare *provider* is from a *network provider* or *non-network provider*;
- a *deductible*, a *copayment*, or a *benefit limit* applies;
- you reached your *plan year maximum out-of-pocket expense*;
- there are exclusions from coverage that apply; or
- our *allowance* for a *covered healthcare service* is less than the amount of your *copayment* and *deductible* (if any). In this case, you will be responsible to pay up to our *allowance* when services are rendered by a *network provider*.

### Network Provider Services

If you receive *covered healthcare services* from a *network provider*, the *provider* has agreed to accept our payment for *covered healthcare services* as payment in full, excluding your *copayments*, *deductible* (if any), and the difference between the *benefit limit* and our *allowance*, if any.

### Non-network Provider Services

If you receive *covered healthcare services* from a *non-network provider*, you will be responsible for the *provider's charge*. You will be reimbursed based on the lesser of our *allowance*, the *non-network provider's charge*, or the *benefit limit*, less any *copayments* and *deductibles*. The *deductible* and *maximum out-of-pocket expenses* are calculated based on the lower of our *allowance* or the *provider's charge*, unless otherwise specifically stated.

## Deductible/Maximum Out-of-Pocket Expense

| Deductible: Maximum Out-of-Pocket Expense | *Network Providers* You Pay | *Non-network Providers* You Pay |
|---|---|---|
| Deductible - The amount you must pay each *plan year* before we begin to pay for certain *covered healthcare services*. See Glossary section for further details. The *deductible* applies to *network* and *non-network* services separately. Services that apply the *deductible* are indicated as "After *Deductible*" in the Summary of Medical Benefits and the Summary of Pharmacy Benefits. | | |
| Deductible for an Individual Plan: | $7,300 | $10,000 |
| Deductible for a Family Plan: The Family plan *deductible* is met by adding the amount of *covered healthcare* expenses applied to the *deductible* for all family *members*; however, no one (1) member can contribute more than the amount shown above for "Deductible for an Individual Plan". | $14,600 | $20,000 |
| Maximum Out-of-Pocket Expense - The total combined amount of your *deductible* and *copayments* you must pay each *plan year* for certain *covered healthcare services*. See Glossary section for further details. The *maximum out-of-pocket expense* limit accumulates separately for *network* and *non-network* services. The *deductible* and *copayments* (including, but not limited to, office visits *copayments* and prescription drug *copayments*) apply to the *maximum out-of-pocket expense*. | | |
| Maximum Out-of-Pocket Expense for an Individual Plan: | $7,350 | $20,000 |
| Maximum Out-of-Pocket Expense for a Family Plan: The family *maximum out-of-pocket expense* limit is met by adding the amount of *covered healthcare* expenses applied to the *maximum out-of-pocket expense* limit for all family *members*, however, no one (1) family *member* can contribute more than the amount shown in the Individual Plan *maximum out-of-pocket expense* amount. | $14,700 | $40,000 |

## Summary of Medical Benefits

| Covered Benefits - See Covered Healthcare Services for additional benefit limits and details. | *Network Providers* | *Non-network Providers* |
|---|---|---|
| (*) *Preauthorization* may be required for this service or for certain services in the *benefit* category. Please see *Preauthorization* in Section 5 for more information. | You Pay | You Pay |
| **Ambulance Services** | | |
| Ground | $50 | The level of coverage is the same as *network provider*. |
| Air/water* | 0% - After *deductible* | The level of coverage is the same as *network provider*. |
| **Autism Services** | | |
| Applied behavioral analysis - *Preauthorization* may be required for services received from a *non-network provider*. | 0% - After *deductible* | 40% - After *deductible* |
| Physical/Occupational/Speech Therapy Services - Autism Diagnosis - *Outpatient Hospital* | 0% - After *deductible* | 40% - After *deductible* |
| Physical/Occupational/Speech Therapy Services - Autism Diagnosis - In a *provider's* office | 0% - After *deductible* | 40% - After *deductible* |
| **Behavioral Health Services – Mental Health and Substance Use Disorder** | | |
| *Inpatient* - Unlimited days at a general *hospital* or a specialty *hospital* including detoxification or residential/rehabilitation per *plan year*.<br><br>*Preauthorization may be required for services received from a non-network provider.* | 0% - After *deductible* | 40% - After *deductible* |
| *Outpatient* or intermediate care services - See Covered Healthcare Services: Behavioral Health Section for details about partial hospital program, intensive outpatient program, adult intensive services, and child and family intensive treatment.<br><br>*Preauthorization* may be required for services received from a *non-network provider*. | 0% - After *deductible* | 40% - After *deductible* |
| Office visits - See Office Visits section below for Behavioral Health services provided by a *PCP* or specialist. | | |
| Psychological testing | 0% | 40% - After *deductible* |
| Medication-assisted treatment - when rendered by a mental health or substance use disorder *provider*. | $25 | 40% - After *deductible* |
| Methadone maintenance treatment - one *copayment* per seven day period of treatment. | $25 | 40% - After *deductible* |
| **Cardiac Rehabilitation** | | |
| *Outpatient* - *Benefit* is limited to 18 weeks or 36 visits (whichever occurs first) per covered episode. | 0% - After *deductible* | 40% - After *deductible* |
| **Chiropractic Services** | | |
| In a *physician's* office - limited to 20 visits per *plan year*. | $25 | 40% - After *deductible* |
| **Dental Services - Accidental Injury (Emergency)** | | |
| *Emergency* room - When services are due to accidental injury to *sound natural teeth*. | $150 | The level of coverage is the same as *network provider*. |
| In a **physician's/dentist's** office - When services are due to accidental injury to *sound natural teeth*. | $40 | 40% - After *deductible* |
| **Dental Services - Outpatient** | | |
| Services connected to dental care when performed in an *outpatient* facility * | 0% - After *deductible* | 40% - After *deductible* |
| **Dialysis Services** | | |
| *Inpatient/outpatient/*in your home | 0% - After *deductible* | 40% - After *deductible* |

| Covered Benefits - See Covered Healthcare Services for additional benefit limits and details. | *Network Providers* | *Non-network Providers* |
|---|---|---|
| (*) *Preauthorization* may be required for this service or for certain services in the *benefit* category. Please see *Preauthorization* in Section 5 for more information. | You Pay | You Pay |
| **Durable Medical Equipment (DME), Medical Supplies, Diabetic Supplies, Prosthetic Devices, and Enteral Formula or Food, Hair Prosthetics** | | |
| *Outpatient* durable medical equipment* - Must be provided by a licensed medical supply provider. | 0% - After *deductible* | 40% - After *deductible* |
| *Outpatient* medical supplies* - Must be provided by a licensed medical supply provider. | 0% - After *deductible* | 40% - After *deductible* |
| *Outpatient* diabetic supplies/equipment purchased at licensed medical supply *provider* (other than a *pharmacy*). See the Summary of Pharmacy Benefits for supplies purchased at a *pharmacy*. | 0% - After *deductible* | 40% - After *deductible* |
| *Outpatient* prosthesis* - Must be provided by a licensed medical supply provider. | 0% - After *deductible* | 40% - After *deductible* |
| Enteral formula delivered through a feeding tube. Must be sole source of nutrition. | 0% - After *deductible* | 40% - After *deductible* |
| Enteral formula or food taken orally * | 0% - After *deductible* | The level of coverage is the same as *network provider*. |
| Hair prosthesis (wigs) - The *benefit limit* is $350 per hair prosthesis (wig) when worn for hair loss suffered as a result of cancer treatment. | 0% - After *deductible* | The level of coverage is the same as *network provider*. |
| **Early Intervention Services (EIS)** | | |
| Coverage provided for *members* from birth to 36 months. The *provider* must be certified as an EIS *provider* by the Rhode Island Department of Human Services. | 0% | The level of coverage is the same as *network provider*. |
| **Education - Asthma** | | |
| Asthma management | $40 | 40% - After *deductible* |
| **Emergency Room Services** | | |
| *Hospital emergency* room | $150 | The level of coverage is the same as *network provider*. |
| **Experimental and Investigational Services** | | |
| Coverage varies based on type of service. | | |
| **Hearing Services** | | |
| Hearing exam | $40 | 40% - After *deductible* |
| Hearing diagnostic testing | 0% | 40% - After *deductible* |
| Hearing aids – Limited to one per ear every 3 years. | 0% - After *deductible* | The level of coverage is the same as *network provider*. |
| **Home Health Care*** | | |
| Intermittent skilled services when billed by a home health care agency. | 0% - After *deductible* | 40% - After *deductible* |
| **Hospice Care** | | |
| *Inpatient*/in your home. When provided by an approved hospice care program. | 0% - After *deductible* | 40% - After *deductible* |
| **Human Leukocyte Antigen Testing** | | |
| Human leukocyte antigen testing | 0% - After *deductible* | 40% - After *deductible* |
| **Infertility Services*** | | |
| *Inpatient/outpatient*/in a *physician's* office. Three (3) in-vitro fertilization cycles will be covered per *plan year* with a total of eight (8) in-vitro fertilization cycles covered in a *member's* lifetime. | 20% - After *deductible* | 40% - After *deductible* |
| **Infusion Therapy - Administration Services** | | |
| *Outpatient* - facility | 0% - After *deductible* | 40% - After *deductible* |
| In the *physician's* office/in your home | 0% - After *deductible* | 40% - After *deductible* |

| Covered Benefits - See Covered Healthcare Services for additional benefit limits and details. | *Network Providers* | *Non-network Providers* |
|---|---|---|
| (*) *Preauthorization* may be required for this service or for certain services in the *benefit* category. Please see *Preauthorization* in Section 5 for more information. | You Pay | You Pay |
| **Inpatient Services** | | |
| *General hospital* or *specialty hospital* services* - unlimited days | 0% - After *deductible* | 40% - After *deductible* |
| *Rehabilitation* facility services* - limited to 45 days per *plan year*. | 0% - After *deductible* | 40% - After *deductible* |
| *Physician hospital* visits | 0% - After *deductible* | 40% - After *deductible* |
| **Mastectomy Services** | | |
| *Inpatient* - see Mastectomy Services in Section 3 for details. | 0% | 40% - After *deductible* |
| Surgery services - includes mastectomy and reconstructive surgery. See Mastectomy Services in Section 3 for details. | 0% | 40% - After *deductible* |
| Mastectomy-related treatment - includes prostheses and treatment for physical complications, such as physical or occupational therapy. | 0% | 40% - After *deductible* |
| **Observation Services** | | |
| In a *hospital* or other health care facility. | 0% - After *deductible* | 40% - After *deductible* |
| **Office Visits - (Other than Preventive Care Services. See Prevention and Early Detection Services for coverage of annual preventive office visits.)** | | |
| Allergy injections - applies to injection only, including administration. | 0% | 40% - After *deductible* |
| *Hospital* based clinic visits | $40 | 40% - After *deductible* |
| Pediatric clinic visit | $25 | 40% - After *deductible* |
| *PCP* visits - including behavioral health. Visits include *PCP* office visits and *PCP* house calls. | $25 | 40% - After *deductible* |
| Retail clinics | $25 | 40% - After *deductible* |
| Specialists | | |
| Office visits and house calls rendered by a specialist (other than a behavioral health specialist). Specialist includes but is not limited to allergists, dermatologists and podiatrists. | $40 | 40% - After *deductible* |
| Office visits and house calls rendered by a behavioral health specialist. | $25 | 40% - After *deductible* |
| **Organ Transplants** | | |
| Organ transplant services | 0% - After *deductible* | 40% - After *deductible* |
| **Physical/Occupational Therapy** | | |
| *Outpatient hospital*/in a **physician's/therapist's** *office*. | $25 | 40% - After *deductible* |
| **Pregnancy and Maternity Services** | | |
| Pre-natal, delivery, and postpartum services. | 0% - After *deductible* | 40% - After *deductible* |
| **Prescription Drugs and Diabetic Equipment and Supplies** | | |
| Prescription drugs and diabetic equipment and supplies purchased at a retail, specialty, or mail order pharmacy. | See Summary of Pharmacy *Benefits* | See Summary of Pharmacy *Benefits* |
| Prescription drugs requiring administration by a licensed health care *provider** : | | |
| Prescription drugs other than infused drugs - includes but is not limited to: medications by injection or inhalation, as well as nasal, topical, or transdermal medications. | 0% - After *deductible* | 40% - After *deductible* |
| Infused drugs | 0% - After *deductible* | 40% - After *deductible* |
| **Prevention Care Services and Early Detection Services** | | |
| See Prevention and Early Detection Services section for details. | 0% | 40% - After *deductible* |
| **Private Duty Nursing Services*** | | |
| Must be performed by a certified home health care agency. | 0% - After *deductible* | 40% - After *deductible* |

| Covered Benefits - See Covered Healthcare Services for additional benefit limits and details. | *Network Providers* | *Non-network Providers* |
|---|---|---|
| (*) *Preauthorization* may be required for this service or for certain services in the *benefit* category. Please see *Preauthorization* in Section 5 for more information. | You Pay | You Pay |
| Radiation Therapy/Chemotherapy Services | | |
| *Outpatient* | 0% - After *deductible* | 40% - After *deductible* |
| In a *physician's* office | 0% - After *deductible* | 40% - After *deductible* |
| Respiratory Therapy | | |
| *Inpatient* | 0% - After *deductible* | 40% - After *deductible* |
| *Outpatient* | 0% - After *deductible* | 40% - After *deductible* |
| Skilled Care in a Nursing Facility* | | |
| Skilled or sub-acute care | 0% - After *deductible* | 40% - After *deductible* |
| Speech Therapy | | |
| *Outpatient hospital* in a *physician's/therapist's* office. | $25 | 40% - After *deductible* |
| Surgery Services* | | |
| *Inpatient physician* services | 0% - After *deductible* | 40% - After *deductible* |
| *Outpatient* services - includes physician services and outpatient hospital or ambulatory surgical center facility services. | 0% - After *deductible* | 40% - After *deductible* |
| In a *physician's* office | 0% | 40% - After *deductible* |
| Telemedicine Services | | |
| When rendered by our designated telemedicine *provider*. | $10 | Not Covered |
| When rendered by a *network provider* or *non-network provider* other than our designated telemedicine *provider*. | See the *covered healthcare service* being provided for the amount you pay | See the *covered healthcare service* being provided for the amount you pay |
| Tests, Labs, Imaging and X-rays - Diagnostic | | |
| *Outpatient*, in a *physician's* office, *urgent care center* or free-standing laboratory: | | |
| Major diagnostic imaging and testing* including but not limited to: MRI, MRA, CAT scans, CTA scans, PET scans, nuclear medicine, and cardiac imaging. | 0% - After *deductible* | 40% - After *deductible* |
| Sleep studies.* | 0% - After *deductible* | 40% - After *deductible* |
| Diagnostic imaging and tests, other than major diagnostic imaging and testing services noted above. | 0% | 40% - After *deductible* |
| Lab and pathology services. | 0% | 40% - After *deductible* |
| Diagnostic colorectal services - (Including, but not limited to, fecal occult blood testing, flexible sigmoidoscopy, colonoscopy, and barium enema. See Prevention and Early Detection Services for preventive colorectal services.) | 0% | 40% - After *deductible* |
| Lyme disease diagnosis and treatment | 0% | 40% - After *deductible* |
| Urgent Care | | |
| Urgent care services | $50 | The level of coverage is the same as *network provider*. |
| Vision Care Services | | |
| Vision exam - one routine eye exam per *member* per *plan year*. | $25 | Not Covered |
| Non-routine eye exam | $25 | Not Covered |

## SECTION 1:  INTRODUCTION TO YOUR SUBSCRIBER AGREEMENT

Thank you for choosing Blue Cross & Blue Shield of Rhode Island (BCBSRI) for *your* healthcare coverage.  We appreciate the trust you've placed in us and want to help you make the most of *your* health *plan*.

In this *Subscriber Agreement* (*agreement*), you'll find valuable information about *your plan*, including:

- how *your* health coverage works;
- how BCBSRI processes *claims* for the health services you receive;
- *y*our rights and responsibilities  as a BCBSRI *member*;
- BCBSRI's rights and responsibilities;  and
- tools and programs to help you stay healthy and save money.

We encourage you to read this *agreement* to learn about all the advantages of being a BCBSRI *member*.

## How to Use This Agreement
Below are some helpful tips on how to find what you need in this *agreement*.

- As a *member*, you are responsible for understanding  the *benefits* to which you are entitled  under this *agreement* and the rules you must follow to receive those *benefits*.
- The Table of Contents will help you find the order of the sections as they appear in the *agreement*.
- The Summary of *Benefits*, included in this *agreement*, shows the amount you pay out of *y*our own pocket.
- Important  contact information,  such as, telephone  numbers,  addresses,  and websites are located at the end of this document.
- Some words and phrases used in this *agreement* are in *italics*. This means that the words or phrases have a special meaning as they relate to *y*our healthcare coverage.  Please see Section 8 for definitions  of these words.
- When we use the words "we," "us," and "our," we are referring to BCBSRI. When we use the words "you" and "*y*our" we are referring to the enrolled  *subscriber* and/or *member*. These words are also defined in the Glossary.
- Many sections of this document are related to other sections. You may need to reference more than one section to find the information  you need.

## Contact Us If You Have a Question
If you have questions about *your benefits* or anything  in this *agreement*, we are happy to help. Simply call our Customer Service Department or visit one of our Your Blue Store locations. As a BCBSRI *member*, you may also log in to our secure *member* website to find out BCBSRI news, get *plan* information or use many of our self-service options.

## Your Member Identification Card

Your BCBSRI *member* ID card is your key to getting healthcare coverage. It shows your healthcare *provider* that you're part of the nation's most trusted health *plan*. All BCBSRI *members* receive ID cards, which provide important information about your coverage. This card is for identification only, and you must show it whenever you receive healthcare services. Please note you must be a current *member* to receive covered services.

Tips for keeping your card safe:
- Carry it with you at all times.
- Keep it in a safe location, just as you would with a credit card or money.
- Let BCBSRI know right away if it is lost or stolen.

## Your Guide to Selecting a Primary Care Provider (PCP) and Other Providers

Quality healthcare begins with a partnership between you and your *primary care provider* (*PCP*).

When you need care, call your *PCP*, who will help coordinate your care. Your healthcare coverage under this *plan* is provided or arranged through our *network* of *PCPs*, specialists, and other *providers*. You're encouraged to:
- become involved in your healthcare by asking *providers* about all treatment plans available and their costs;
- take advantage of the preventive health services offered under this *plan* to help you stay healthy and find problems before they become serious.

Each *member* is required to provide the name of his or her *PCP*. However, if the name of a *PCP* is not provided with the application, your enrollment will not be delayed and your coverage will not be cancelled.

### How to Find a PCP or Other Providers

Finding a *PCP* in our *network* is easy. To select a *provider*, or to check that a *provider* is in our *network*, please use the "Find a Doctor" tool on our website or call Customer Service.

Please note: We are not obligated to provide you with a *provider*. We are not liable for anything your *provider* does or does not do. We are not a healthcare *provider* and do not practice medicine, dentistry, furnish health care, or make medical judgments.

## Programs to Keep You Healthy

Many health problems can be prevented by making positive changes to your lifestyle, including exercising regularly, eating a healthy diet, and not smoking. As a *member*, you can take advantage of our wellness programs at no additional cost.

## Wellness Programs

We offer wellness programs to our *members* from time to time. These programs include, but are not limited to:

- online and in-person educational programs;
- health assessments;
- coaching;
- biometric screenings, such as cholesterol or body mass index;
- discounts

*Your* participation in a wellness program may make *your* employer eligible for a group wellness incentive award.

*Your* participation in our wellness programs is voluntary. We reserve the right to end wellness programs at any time.

## Member Incentives

From time to time, we may offer you coupons, discounts, or other incentives as part of our *member* incentives program. These coupons, discounts and incentives are not *benefits* and do not change or affect *your benefits* under this *plan*. You must be a *member* to be eligible for *member* incentives. Restrictions may apply to these incentives, and we reserve the right to change or stop providing *member* incentives at any time.

## Care Coordination

Care coordination gives you access to dedicated BCBSRI healthcare professionals, including nurses, dietitians, behavioral health *providers*, and community resources specialists. These care coordinators can help you set and meet *your* health goals. You can receive support for many health issues, including, but not limited to:

- making the most of *your physician's* visits;
- navigating through the healthcare system;
- managing medications or addressing side effects;
- better understanding new or pre-existing medical conditions;
- completing preventive screenings;
- losing weight.

Care Coordination is a personalized service that is part of *your* existing healthcare coverage and is available at no additional cost to you. For more information, please call (401) 459-CARE (2273).

## Disease Management

If you have a chronic condition such as asthma, coronary heart disease, diabetes, congestive heart failure, and/or chronic obstructive pulmonary disease, we're here to help. Our tools and information can help you manage *your* condition and improve *your* health. You may also be eligible to receive help through our care coordination program. This voluntary program is available at no additional cost you. To learn more about disease management, please call (401) 459-5683 or 1-888-725-8500.

## <u>About This Agreement</u>

Our entire contract with you consists of this *agreement* and our contract with your employer. Your ID card will identify you as a *member* when you receive the healthcare services covered under this *agreement*. By presenting your ID card to receive *covered healthcare services*, you are agreeing to abide by the rules and obligations of this *agreement*.

Your eligibility for *benefits* is determined under the provisions of this *agreement*. Your right to appeal and take action is described in Appeals in Section 5.

This *agreement* describes the *benefits*, exclusions, conditions and limitations provided under your *plan*. It shall be construed under and shall be governed by the applicable laws and regulations of the State of Rhode Island and federal law as amended from time to time. It replaces any *agreement* previously issued to you. If this *agreement* changes, an amendment or new *agreement* will be provided.

## SECTION 2: ELIGIBILITY

This section describes:
- who is eligible for coverage;
- when coverage begins;
- how to add or remove family members;
- when coverage ends; and
- continuation of coverage.

## <u>Who Is an Eligible Person</u>

**You**

You are eligible for coverage if you are an employee and have met *your* employer's eligibility requirements, including any waiting period.

**Your Spouse**

If your *plan* includes family coverage*, your* spouse is eligible to enroll for healthcare coverage if you have selected a family *plan*. Only one of the following individuals may be enrolled at a given time:

- Your legal spouse: according to the laws of the state in which you were married.
- Your common law spouse: according to the law of the state in which *your* marriage was formed. To be eligible, you and *your* common law spouse need to complete our Affidavit of Common Law Marriage and provide us with the required documentation listed on the affidavit. Please call our Customer Service Department to obtain a copy.
- Your civil union partner: according to the law of the state in which you entered into a civil union. Civil Union partners may only be enrolled if civil unions are recognized by the state in which you reside.
- Former Spouse: In the event of a divorce, *y*our former spouse may continue to be eligible for coverage provided that *y*our divorce decree requires it in accordance with state law. Your former spouse will remain eligible on *y*our policy until the earlier of:
  - the date either you or your former spouse are remarried;
  - the date provided by the judgment of divorce; or
  - the date *y*our former spouse has comparable coverage available through his or her own employment.
- Domestic Partner: your domestic partner may be eligible to enroll for coverage provided your employer authorizes the eligibility of domestic partners. You and your domestic partner may be required to complete a Declaration of Domestic Partnership form and provide the required documentation listed on the form. Please contact your employer to determine if your domestic partner is eligible and for any additional information regarding coverage for domestic partners.

**Your Children**

If your *plan* includes family coverage, each of *you*r and *you*r spouse's children are eligible for coverage until the last day of the month in which they turn twenty-six (26). For purposes of determining eligibility for coverage, the term children means:

- Natural children;

- Step-children;
- Legally adopted children;
- Foster children who have been placed with you by an authorized placement agency or court order.
- Children of your domestic partner, provided your employer authorizes the eligibility of domestic partners

A child for whom healthcare coverage is required through a Qualified Medical Child Support Order or other court or administrative order is also eligible for coverage. Your employer is responsible for determining if an order meets the criteria of a Qualified Medical Child Support Order.

We may request more information from you to confirm your child's eligibility.

**Disabled Dependents**
In accordance with R.I. General Law § 27-20-45, when your enrolled unmarried child reaches the maximum dependent age of twenty-six (26), he or she can continue to be considered an eligible dependent only if he or she is determined by us to be a disabled dependent.

If you have an unmarried child of any age who is financially dependent upon you and medically determined to have a physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months, that child is an eligible disabled dependent under this *agreement*.

Please contact our Customer Service Department, to obtain the necessary form to verify the child's disabled status. Periodically you may be asked to submit additional documents to confirm the child's disabled status.

## When Your Coverage Begins
Your coverage will begin on the first day of the month following your eligibility date, unless otherwise indicated in our agreement with your employer, as long as we receive your required enrollment information within the first thirty (30) days following your eligibility date and the premium is paid.

If you or your dependents fail to enroll at this time, you cannot enroll in the *plan* unless you do so through an Open Enrollment Period or a Special Enrollment Period.

**Open Enrollment Period**
Open Enrollment is a period of time each year when you and your eligible dependents, if family coverage is offered, may enroll for healthcare coverage or make changes to your existing healthcare coverage. The effective date will be on the first day of your employer's *plan year*.

**Special Enrollment Period**

A Special Enrollment Period is a time outside the yearly Open Enrollment Period when you can sign up for health coverage. You and your eligible dependents may enroll for coverage through a Special Enrollment Period by providing required enrollment information within thirty (30) days of the following events:

- you get married, the coverage effective is the first day of the month following your marriage.
- you have a child born to the family, the coverage effective date is the date of birth.
- you have a child placed for adoption with your family, the coverage effective date is the date of placement.

Special note about enrolling your newborn child: You must notify your employer of the birth of a newborn child and pay the required premium within thirty-one (31) days of the date of birth. Otherwise, the newborn will not be covered beyond the thirty-one (31) day period. This *plan* does not cover services for a newborn child who remains hospitalized after thirty-one (31) days and has not been enrolled in this *plan*.

If you are enrolled in an Individual *Plan* when your child is born, the coverage for thirty-one (31) days described above means your *plan* becomes a Family *Plan* for as long as your child is covered. Applicable Family *Plan deductibles* and *maximum out-of-pocket expenses* may apply.

In addition, if you lose coverage from another *plan*, you may enroll or add your eligible dependents for coverage through a Special Enrollment Period by providing required enrollment information within thirty (30) days following the date you lost coverage. Coverage will begin on the first day of the month following the date your coverage under the other *plan* ended. In order to be eligible, the loss of coverage must be the result of:

- legal separation or divorce;
- death of the covered policy holder;
- termination of employment or reduction in the number of hours of employment;
- the covered policy holder becomes entitled to Medicare;
- loss of dependent child status under the *plan*;
- employer contributions to such coverage are being terminated;
- COBRA *benefits* are exhausted; or
- your employer is undergoing Chapter 11 proceedings.

You are also eligible for a Special Enrollment Period if you and/or your eligible dependent lose eligibility for Medicaid or a Children's Health Insurance Program (CHIP), or if you and/or your eligible dependent become eligible for premium assistance for Medicaid or a (CHIP). In order to enroll, you must provide required information within sixty (60) days following the change in eligibility. Coverage will begin on the first day of the month following our receipt of your application.

In addition, you may be eligible for a Special Enrollment Period if you provide required information within thirty (30) days of one of the following events:

- you or your dependent lose minimum essential coverage (unless that loss of coverage is due to non-payment of premium or your voluntary termination of coverage);
- you adequately demonstrate to us that another health *plan* substantially violated a material provision of its contract with you;
- you make a permanent move to Rhode Island: or
- your enrollment or non-enrollment in a qualified health *plan* is unintentional, inadvertent, or erroneous and is the result of error, misrepresentation, or inaction by us or an agent of *HSRI* or the U.S. Department of Health and Human Services (HHS).

## Coverage for Members Who Are Hospitalized on Their Effective Date

If you are in the *hospital* on *y*our effective date of coverage, healthcare services related to such hospitalization are covered as long as: (a) you notify us of *y*our hospitalization within forty-eight (48) hours of the effective date, or as soon as is reasonably possible; and (b) *covered healthcare services* are received in accordance with the terms, conditions, exclusions and limitations of this *agreement*. As always, *benefits* paid in such situations are subject to the Coordination of *Benefits* provisions.

## How to Add or Remove Coverage for Family Members

If your *plan* offers family coverage, you must notify your employer if you want to add or remove family members according to the Special Enrollment provisions described above. When adding or removing a family member, inform your employer in advance of the requested effective date and your employer will notify us. All requests must be made through your employer. We cannot directly add or remove coverage for you or your family members.

## When Your Coverage Ends

Coverage under this *plan* is guaranteed renewable. It can only be canceled by us for the following reasons:

- if you leave *y*our place of employment;
- if you decide to discontinue coverage. Inform your employer prior to the requested date of cancellation and your employer will notify us. If we do not receive your notice prior to the requested date of cancellation, you or your employer may be responsible for paying another month's premium;
- if the required premium is not paid within one month of the due date. We will mail you a notice of discontinuance along with information about enrolling in an individual healthcare *plan*;
- if you or a covered dependent no longer qualifies as an eligible person;
- if we no longer offer this type of coverage;
- if *y*our employer contracts with another insurer or entity to provide or administer *benefits* for the *covered healthcare services* provided by this *agreement*;
- if fraud is determined by us. See Rescission of Coverage section below for additional details.

If *your* healthcare coverage is terminated for one of the reasons listed above, we will send you a termination notice thirty (30) days before the termination date. The notice will indicate the reason why *your* healthcare coverage has ended.

When your coverage ends, you may apply for individual healthcare coverage directly from BCBSRI or through *HSRI*. You must meet the eligibility requirements and we must receive required enrollment information within sixty (60) days from the date your group coverage ended along with required premium. If you do not reside in Rhode Island, you are not eligible to enroll in an individual *plan* from BCBSRI or *HSRI*. You may be able to obtain coverage through an insurance company in the state in which you reside.

**Rescission of Coverage**
Rescission is a cancellation or discontinuance of coverage that has a retroactive effect. A cancellation is not a rescission if it:
- only has a prospective effect (as described above); or
- is due to non-payment of premiums, which can have a retroactive cancellation effect.

We may rescind *your* coverage if you or *your* dependents commit fraud. Fraud includes, but is not limited to, intentional misuse of *your* identification card (ID card) or intentional misrepresentation of a material fact. Any *benefit* paid in the past will be voided. You will be responsible to reimburse us for all costs and *claims* paid by us. We must provide you a written notice of a rescission at least thirty (30) days in advance.

Except for non-payment, we will not contest this policy after it has been in force for a period of two (2) years from the later of the effective date of this *agreement* or the latest reinstatement date.

## Continuation of Coverage

If *your* coverage is terminated, you may be eligible to continue *your* coverage in accordance with state or federal law.

**Continuation of Coverage According to State Law**
In accordance with R.I. General Laws § 27-19.1, if *your* employment is terminated due to one of the following reason, *your* healthcare coverage may be continued, provided that you continue to pay the applicable premiums.
- Involuntary layoff or death;
- The workplace ceasing to exist; or
- Permanent reduction in size of the workforce.

The period of this continuation will be for up to eighteen (18) months from *your* termination date, but not to exceed the period of continuous employment preceding termination with *your* employer. The continuation period will end for any person covered under *your* policy on the date the person becomes employed by another group and is eligible for *benefits* under that group's *plan*.

**Extended Benefits**

If you are disabled on the date *your* healthcare coverage ends, *your benefits* will be temporarily extended for any continuous loss, which commenced while *your* coverage was in force. The services provided under this *benefit* are subject to all terms, conditions, limitations and exclusions listed in this *agreement*, and the care you receive must relate to or arise out of the disability you had on the day *your* healthcare coverage ended.

Extended *benefits* apply only to the *subscriber* who is disabled. If you want to receive coverage for continued care when *your* coverage ends, you must provide us with proof that you are disabled. We will make a determination whether *your* condition constitutes a disability and you will have the right to appeal our determination or to take legal action.

The extension of *benefits* will end upon the earliest of the following events:
- the continuous disability ends; or
- twelve (12) months from the termination date; or
- payment of the *benefit limits* under this *plan*.

**Continuation of Coverage According to Federal Law**

If coverage for you or *your* covered dependents is terminated and *your* coverage was made available through the group health *plan* of an employer of twenty (20) or more employees, you may be eligible for continuation of coverage according to federal law. This law is the Consolidated Omnibus Budget Reconciliation Act of 1986 as amended from time to time ("COBRA"). Your employer is responsible for making COBRA coverage available to you, and for complying with all of COBRA's requirements. You should contact *your* employer if you have any questions about continuing coverage through COBRA.

## SECTION 3: COVERED HEALTHCARE  SERVICES

This section describes *covered healthcare services*. This *plan* covers services only if they meet all of the following requirements:

- Listed as a *covered healthcare service* in this section. The fact that a *provider* has prescribed or recommended a service, or that it is the only available  treatment for an illness or injury does not mean it is a *covered healthcare  service* under this *plan*.
- *Medically necessary*, consistent with our medical policies and related guidelines  at the time the services are provided.
- Not listed in Exclusions Section.
- Received while a *member* is enrolled in the *plan*.
- Consistent with applicable  state or federal law.

We review *medical necessity* in accordance with our medical policies and related guidelines.  Our medical policies can be found on our website.

Our medical policies are written to help administer  *benefits* for the purpose of *claims* payment. They are made available  to you for informational  purposes and are subject to change. Medical policies  are not meant to be used as a guide for *your* medical treatment.  Your medical treatment remains a decision made by you with *your physician*. If you have questions about our medical policies, please call Customer Service.

When a *new service* or drug becomes available,  when possible, we will review it within six (6) months of one of the events described below to determine whether the *new service* or drug will be covered:
- the assignment of an American Medical Association (AMA) Current Procedural Terminology (CPT) code in the annual  CPT publication;
- final Food and Drug Administration (FDA) approval;
- the assignment of processing codes other than CPT codes or approval by governing or regulatory bodies other than the FDA;
- submission to us of a *claim* meeting the criteria above; and
- generally,  the first date an FDA approved  prescription drug  is available  in pharmacies (for prescription drug coverage only).

During the review period, *new services* and drugs are not covered.

**For all *covered  healthcare services*, please see the Summary  of Medical *Benefits* and the Summary  of Pharmacy  *Benefits* to determine the amount  that you pay and any *benefit limits*.**

## Ambulance Services

**Ground Ambulance**

This *plan* covers local professional or municipal ground ambulance services when it is *medically necessary* to use these services, rather than any other form of transportation as required under R.I. General Law § 27-20-55. Examples include but are not limited to the following:

- from a *hospital* to a home, a skilled nursing facility, or a rehabilitation facility after being discharged as an *inpatient*;
- to the closest available *hospital emergency* room in an *emergency* situation; or
- from a *physician's* office to an *emergency* room.

Our *allowance* for ground ambulance includes the services rendered by an *emergency* medical technician or paramedic, as well as any drugs, supplies and cardiac monitoring provided.

**Air and Water Ambulance**

This *plan* covers air and water ambulance services when:

- the time needed to move a patient by land, or the instability of transportation by land, may threaten a patient's condition or survival; or
- if the proper equipment needed to treat the patient is not available from a ground ambulance.

The patient must be transported to the nearest facility where the required services can be performed and the type of *physician* needed to treat the patient's condition is available.

Our *allowance* for the air or water ambulance includes the services rendered by an *emergency* medical technician or paramedic, as well as any drugs, supplies and cardiac monitoring provided.

## Autism Services

This *plan* covers the following services for the treatment of autism spectrum disorders in accordance with R.I. General Law § 27-20-11.

- Applied behavior analysis when provided and/or supervised by an individual licensed by the state in which the service is rendered. See the Summary of Medical *Benefits* for the amount that you pay.

- Physical therapy, occupational therapy, and speech therapy services when rendered as part of the treatment of autism spectrum disorder. A *benefit limit* will not apply to these services.

- Psychological and psychiatric services, and prescription drugs are also covered. See Behavioral Health Services and Prescription Drug and Diabetic Equipment or Supplies 3 for additional information.

Coverage for autism spectrum disorders does not affect any obligation of a school district, a state or other governmental entity to provide services to an individual under an individualized family service *plan*, an individualized education program, or similar services required under state or federal law. Services related to autism that are furnished by school personnel are not covered under this *plan*.

## Behavioral Health Services

Behavioral health services include the evaluation, management, and treatment for a mental health or *substance use disorder* condition. For the purpose of this *plan*, *substance use disorder* does not include addiction to or abuse of tobacco and/or caffeine.

Mental health or *substance use disorders* are those that are listed in the most updated volume of either:
- the Diagnostic and Statistical Manual of Mental Disorders (DSM) published by the American Psychiatric Association; or
- the International Classification of Disease Manual (ICD) published by the World Health Organization.

This *plan* provides parity in *benefits* for behavioral healthcare services. Please see Section 10 for additional information regarding behavioral healthcare parity.
We review behavioral health *programs* to determine whether the services provided are clinically appropriate in the setting in which they are rendered. The following behavioral health services are covered when *medically necessary* and when rendered by a *provider* licensed by the State of Rhode Island or by the state in which the *provider* is located.

This *plan* provides parity in *benefits* for behavioral *healthcare* services. Please see Section 10 for additional information regarding behavioral *healthcare* parity.

### Inpatient
This *plan* covers behavioral health services if you are *inpatient* at a general or *specialty hospital*. See *Inpatient* Services in Section 3 for additional information.

### Residential Treatment Facility
This *plan* covers services at acute behavioral health *residential treatment facilities*, which provide:
- clinical treatment;
- medication evaluation management; and
- 24-hour on site availability of health professional staff, as required by licensing regulations.

**Intermediate Care Services**
This *plan* covers intermediate care services, which are facility-based *programs* that are:
- more intensive than traditional *outpatient* services;
- less intensive than 24-hour *inpatient hospital* or *residential treatment facility* services; and
- used as a step down from a higher level of care; or
- used a step-up from standard care level of care.

Intermediate care services include the following:
- **Partial Hospital Program (PHP)** – PHPs are structured and medically supervised day, evening, or nighttime treatment *programs* providing individualized treatment plans. A PHP typically runs for five hours a day, five days per week.
- **Intensive Outpatient Program (IOP)** – An IOP provides substantial clinical support for patients who are either in transition from a higher level of care or at risk for admission to a higher level of care. An IOP typically runs for three hours per day, three days per week.
- **Home and Community Based Adult Intensive Service (AIS) and Child and Family Intensive Treatment (CFIT)** – AIS/CFIT *programs* offer services primarily based in the home and community for qualifying adults and children with moderate-to-severe mental health conditions. These *programs* consist at a minimum of ongoing *emergency*/crisis evaluations, psychiatric assessment, medication evaluation and management, case management, psychiatric nursing services, and individual, group, and family therapy.

**In a Provider's Office/In Your Home**
This *plan* covers individual psychotherapy, group psychotherapy, and family therapy when rendered by:
- Board certified psychiatrists;
- Licensed clinical psychologists;
- Clinical social workers (licensed or certified at the independent practice level);
- Advance practice nurses/clinical nurse specialists;
- Licensed mental health counselors; and
- Licensed marriage and family therapists.

**Psychological Testing**
This *plan* covers psychological testing as a behavioral health *benefit* when rendered by:
- neuropsychologists;
- psychologists; or
- pediatric neurodevelopmental specialists.

This *plan* covers neuropsychological testing as described in the Tests, Labs and Imaging section.

**Medication Assisted Treatment**
This *plan* covers medication assisted treatment for *substance* use *disorders*, including methadone maintenance treatment. Please see the Summary of Medical *Benefits* for specific *copayments* for these services.

## Cardiac Rehabilitation

This *plan* covers services provided in a cardiac rehabilitation *program* up to the *benefit limit* shown in the Summary of Medical *Benefits*.

## Chiropractic Services

This *plan* covers chiropractic visits up to the *benefit limit* shown in the Summary of Medical *Benefits*. The *benefit limit* applies to any visit for the purposes of chiropractic treatment or diagnosis.

## Dental Services

**Services to Treat an Accidental Injury**

This *plan* covers the following services to treat an accidental injury to *your sound natural teeth* or an injury resulting in a facial fracture, received in an *emergency* room or *provider's* office when the treatment is received within seventy-two (72) hours of the injury.

- Extraction of teeth needed to avoid infection of teeth damaged in the injury;
- Suturing;
- Reimplanting and stabilization of dislodged teeth;
- Repositioning and stabilization of partly dislodged teeth; and
- Dental x-rays.

**Outpatient Dental Anesthesia Services**

This *plan* covers anesthesia services received in connection with a dental service when provided in a *hospital* or *freestanding ambulatory surgical center* and:
- the use of this is *medically necessary*; and
- the setting in which the service is received is determined to be appropriate.

This *plan* also covers facility fees associated with these services.

## Dialysis Services

This *plan* covers dialysis services and supplies provided when you are *inpatient*, *outpatient* or in *your* home and under the supervision of a dialysis *program*. Dialysis supplies provided in *your* home are covered as durable medical equipment.

## Durable Medical Equipment (DME), Medical Supplies, Prosthetic Devices, Enteral Formula or Food, and Hair Prosthesis (Wigs)

This *plan* covers durable medical equipment and supplies, prosthetic devices and enteral formula or food as described in this section.

**Durable Medical Equipment (DME)**

DME is equipment which:
- can withstand repeated use;
- is primarily and customarily used to serve a medical purpose;
- is not useful to a person in the absence of an illness or injury; and

- is for use in the home.

DME includes supplies necessary for the effective use of the equipment.

This *plan* covers the following DME:
- wheelchairs, *hospital* beds, and other DME items used only for medical treatment; and
- replacement of purchased equipment which is needed due to a change in *your* medical condition or if the device is not functional, no longer under warranty, or cannot be repaired.

DME may be classified as a rental item or a purchased item. In most cases, this *plan* only pays for a rental DME up to our *allowance* for a purchased DME. Repairs and supplies for rental DME are included in the rental *allowance*.

*Preauthorization* may be required for certain DME and replacement or repairs of DME.

**Medical Supplies**
Medical supplies are consumable supplies that are disposable and not intended for re-use. Medical supplies require an order by a *physician* and must be essential for the care or treatment of an illness, injury, or congenital defect.

Covered medical supplies include:
- essential accessories such as hoses, tubes and mouthpieces for use with *medically necessary* DME (these accessories are included as part of the rental *allowance* for rented DME);
- catheters, colostomy and ileostomy supplies, irrigation trays and surgical dressings; and
- respiratory therapy equipment.

**Diabetic Equipment and Supplies**
This *plan* covers diabetic equipment and supplies for the treatment of diabetes in accordance with R.I. General Law §27-20-30. Covered diabetic equipment and supplies include:
- therapeutic or molded shoes and inserts for custom-molded shoes for the prevention of amputation;
- blood glucose monitors including those with special features for the legally blind, external insulin infusion pumps and accessories, insulin infusion devices and injection aids; and
- lancets and test strips for glucose monitors including those with special features for the legally blind, and infusion sets for external insulin pumps.

The amount you pay differs based on whether the equipment and supplies are bought from a durable medical equipment *provider* or from a pharmacy. See the Summary of Pharmacy *Benefits* and the Summary of Medical *Benefits* for details. Coverage for some diabetic equipment and supplies may only be available from either a DME *provider* or from a *pharmacy*. Visit our website to determine if this is applicable or call our Customer Service Department.

**Prosthetic Devices**
Prosthetic devices replace or substitute all or part of an internal body part, including contiguous tissue, or replace all or part of the function of a permanently inoperative or malfunctioning body part and alleviate functional loss or impairment due to an illness, injury or congenital defect. Prosthetic devices do not include dental prosthetics.

This *plan* covers the following prosthetic devices as required under R.I. General Law § 27-20-52:
- prosthetic appliances such as artificial limbs, breasts, larynxes and eyes;
- replacement or adjustment of prosthetic appliances if there is a change in *your* medical condition or if the device is not functional, no longer under warranty and cannot be repaired;
- devices, accessories, batteries and supplies necessary for prosthetic devices;
- orthopedic braces except corrective shoes and orthotic devices used in connection with footwear; and
- breast prosthesis following a mastectomy, in accordance with the Women's Health and Cancer Rights Act of 1998 and R.I. General Law 27-20-29.

The prosthetic device must be ordered or provided by a *physician*, or by a *provider* under the direction of a *physician*. When you are prescribed a prosthetic device as an *inpatient* and it is billed by a *provider* other than the *hospital* where you are an *inpatient*, the *outpatient benefit limit* will apply.

**Enteral Formulas or Food (Enteral Nutrition)**
Enteral formula or food is nutrition that is absorbed through the intestinal tract, whether delivered through a feeding tube or taken orally. Enteral nutrition is covered when it is the sole source of nutrition and prescribed by the *physician* for home use.

In accordance with R.I. General Law §27-20-56, this *plan* covers enteral formula taken orally for the treatment of:
- malabsorption caused by Crohn's Disease;
- ulcerative colitis;
- gastroesophageal reflux;
- chronic intestinal pseudo obstruction; and
- inherited diseases of amino acids and organic acids.

Food products modified to be low protein are covered for the treatment of inherited diseases of amino acids and organic acids. *Preauthorization* may be required.

The amount that you pay may differ depending on whether the nutrition is delivered through a feeding tube or taken orally. When enteral formula is delivered through a feeding tube, associated supplies are also covered.

**Hair Prosthesis (Wigs)**

This *plan* covers hair prosthetics (wigs) worn for hair loss suffered as a result of cancer treatment in accordance with R.I. General Law § 27-20-54 and subject to the *benefit limit* and *copayment* listed in the Summary of Medical *Benefits*.

This *plan* will reimburse the lesser of the *provider's charge* or the *benefit limit* shown in the Summary of Medical *Benefits*. If the *provider's charge* is more than the *benefit limit*, you are responsible for paying any difference.

## Early Intervention Services (EIS)

This *plan* covers Early Intervention Services in accordance with R.I. General Law §27-20-50. Early Intervention Services are educational, developmental, health, and social services provided to children from birth to thirty-six (36) months. The child must be certified by the Rhode Island Department of Human Services (DHS) to enroll in an approved Early Intervention Services *program*. Services must be provided by a licensed Early Intervention *provider* and rendered to a Rhode Island resident.

*Members* not living in Rhode Island may seek services from the state in which they reside; however, those services are not covered under this *plan*.

Early Intervention Services as defined by DHS include but are not limited to the following:
- speech and language therapy;
- physical and occupational therapy;
- evaluation;
- case management;
- nutrition;
- service plan development and review;
- nursing services; and
- assistive technology services and devices.

## Education - Asthma

This *plan* covers asthma education services when the services are prescribed by a *physician* and performed by a certified asthma educator.

## Emergency Room Services

This *plan* covers services received in a *hospital emergency* room when needed to stabilize or initiate treatment in an *emergency*. If *your* condition needs immediate or urgent, but non-*emergency* care, contact *your PCP* or use an *urgent care center*.

This *plan* covers bandages, crutches, canes, collars, and other supplies incidental to your treatment in the *emergency* room as part of our *allowance* for the *emergency* room services.

Additional services provided in the *emergency* room such as radiology or *physician* consultations are covered separately from *emergency* room services and may require additional *copayments*. The amount you pay is based on the type of service being rendered.

Follow-up care services, such as suture removal, fracture care or wound care, received at the *emergency* room will require an additional *emergency* room *copayment*. Follow-up care services can be obtained from your *primary care provider* or a specialist.

See Dental Services in Section 3 for information regarding *emergency* dental care services.

## Experimental or Investigational Services

This *plan* covers certain *experimental or investigational* services as described in this section.

**Clinical Trials**

This *plan* covers clinical trials as required under R.I. General Law § 27-20-60. An approved clinical trial is a phase I, phase II, phase III, or phase IV clinical trial that is being performed to prevent, detect or treat cancer or a life-threatening disease or condition. In order to qualify, the clinical trial must be:
- federally funded;
- conducted under an investigational new drug application reviewed by the Food and Drug Administration (FDA); or
- a drug trial that is exempt from having such an investigational new drug application.

To qualify to participate in a clinical trial:
- you must be determined to be eligible, according to the trial protocol;
- a *network provider* must have concluded that your participation would be appropriate; and
- medical and scientific information must have been provided establishing that your participation in the clinical trial would be appropriate.

If a *network provider* is participating in a clinical trial, and the trial is being conducted in the state in which you reside, you may be required to participate in the trial through the *network provider*.

Coverage under this *plan* includes routine patient costs for *covered healthcare services* furnished in connection with participation in a clinical trial. The amount you pay is based on the type of service you receive.

Coverage for clinical trials does not include:

- the investigational item, device, or service itself;
- items or services provided solely to satisfy data collection and that are not used in the direct clinical management; or
- a service that is clearly inconsistent with widely accepted standards of care.

**Off-label Prescription Drugs**
This *plan* covers off label prescription drugs for cancer or disabling or life-threatening chronic disease if the prescription drug is recognized as a treatment for cancer or disabling or life-threatening chronic disease in accepted medical literature, in accordance with R.I. General Law § 27-55-1.

## Gender Reassignment Services

This *plan* covers services related to gender reassignment. *Preauthorization* may be required for gender reassignment surgical services.

## Hearing Services

**Hearing Exams and Tests**
This *plan* covers hearing exams and diagnostic hearing tests.

**Hearing Aids**
This *plan* covers hearing aids in accordance with R.I. General Law § 27-20-46, subject to the *benefit limit* and *copayments* listed in the Summary of Medical *Benefits*.

## Home Health Care

This *plan* covers the following home care services when provided by a certified home healthcare agency:

- nursing services;
- services of a home health aide;
- visits from a social worker;
- medical supplies; and
- physical, occupational and speech therapy.

## Hospice Care

If you have a terminal illness and you agree with *your physician* not to continue with a curative treatment *program*, this *plan* covers hospice care services received in *your* home, in a skilled nursing facility, or in an *inpatient* facility.

## Human Leukocyte Antigen Testing

This *plan* covers human leukocyte antigen testing for A, B, and DR antigens once per *member* per lifetime to establish a *member's* bone marrow transplantation donor suitability in accordance with R.I. General Law §27-20-36.

The testing must be performed in a facility that is:

- accredited by the American Association of Blood Banks or its successors; and
- licensed under the Clinical Laboratory Improvement Act as it may be amended from time to time.

At the time of testing, the person being tested must complete and sign an informed consent form that also authorizes the results of the test to be used for participation in the National Marrow Donor *program*.

## Infertility Services

This *plan* covers the following services, in accordance with R.I. General Law §27-20-20.

- Services for the diagnosis and treatment of infertility if you are:
  - o a presumably healthy individual; and
  - o unable to conceive or sustain a pregnancy during a:
    - ▪ one (1) year period for a member under age 35;
    - ▪ six (6) month period for a member age 35 or older.

- ▪ Standard fertility preservation services for members not in active infertility treatment when a medically necessary medical treatment may directly or indirectly cause iatrogenic infertility. Iatrogenic infertility means an impairment of fertility by surgery, radiation, chemotherapy, or other medical treatment affecting reproductive organs or processes.

- ▪ Prescription drugs for the treatment of infertility. Coverage is based on the route of administration and site of service. For information about prescription drugs see Prescription Drugs and Diabetic Equipment or Supplies and the Summary of Pharmacy *Benefits*.

*Preauthorization* may be required for certain infertility services.

## Infusion Therapy

This *plan* covers infusion therapy and related administration services.

## Inpatient Services

**Hospital**

This *plan* covers services provided while *inpatient* in a general or *specialty hospital* including, but not limited to the following:

- anesthesia;
- diagnostic tests and lab services;
- dialysis;
- drugs;
- intensive care/coronary care;
- nursing care;
- physical, occupational, speech and respiratory therapies;
- *physician's* services while hospitalized;

- radiation therapy;
- surgery related services; and
- room and board.

Notify us if you are admitted from the *emergency* room to a *hospital* that is not in our *network*. Our Customer Service Department can assist you with any questions you may have about *your* coverage.

**Rehabilitation Facility**
This *plan* covers rehabilitation services received in a *general hospital* or *specialty hospital*. Coverage is limited to the number of days shown in the Summary of Medical *Benefits*.

**Physician Visits**
This *plan* covers the services of a *physician* or other *provider* in charge of *your* medical care while you are *inpatient* in a general or *specialty hospital*.

## Mastectomy Services

**Inpatient**
This *plan* provides coverage for a minimum of forty-eight (48) hours in a *hospital* following a mastectomy and a minimum of twenty-four (24) hours in a *hospital* following an axillary node dissection. Any decision to shorten these minimum coverages shall be made by the attending *physician* in consultation with and upon agreement with you. If you participate in an early discharge, defined as *inpatient* care following a mastectomy that is less than forty-eight (48) hours and *inpatient* care following an axillary node dissection that is less than twenty-four (24) hours, coverage shall include a minimum of one (1) home visit conducted by a *physician* or registered nurse.

**Surgery Services and Mastectomy Related Treatment**
This *plan* provides *benefits* for mastectomy surgery and mastectomy-related services in accordance with the Women's Health and Cancer Rights Act of 1998 and Rhode Island General Law 27-20-29 et seq. For the *member* receiving mastectomy-related *benefits*, coverage will be provided in a manner determined in consultation with the attending *physician, physician* assistant, or an advance practice registered nurse and the patient, for:

- all stages of reconstruction of the breast on which the mastectomy was performed;
- surgery and reconstruction of the other breast to produce a symmetrical appearance;
- prostheses; and
- treatment of physical complications at all stages of the mastectomy, including lymphedema.

See the Summary of Medical *Benefits* for the amount you pay.

## Observation Services

This *plan* covers services provided to you when you are in a *hospital* or other licensed health care facility solely for observation. Even though you may use a bed or stay overnight, observation services are not *inpatient* services. Observation services help the *physician* decide if you need to be admitted for care as an *inpatient* or if you can be discharged. These observation services may be provided in the *emergency* room or another area of the *hospital* or licensed healthcare facility. See the Summary of Medical *Benefits* for the amount you pay.

## Office Visits (other than Preventive Care Services)

This *plan* covers office and clinic visits to diagnose or treat a sickness or injury. Office visit *copayments* differ depending on the type of *provider* you see.

This *plan* covers *physician* visits in your home if you have an injury or illness that:
- confines you to your home; or
- requires special transportation; and
- because of this injury or illness, you are physically unable to travel to the *provider's* office.

If you receive services other than the office or clinic visit examination, such as surgery, lab tests, diagnostic imaging, physical or occupational therapy, the amount that you pay is based on the type of service provided.

For *Preventive Care Services* see the Summary of Medical *Benefits* for the amount you pay when these services are provided in a *physician's* office or clinic.

## Organ Transplants

This *plan* covers organ and tissue transplants when ordered by a physician, is *medically necessary*, and is not an *experimental or investigational* procedure.

Examples of covered transplant services include but are not limited to: heart, heart-lung, lung, liver, small intestine, pancreas, kidney, cornea, small bowel, and bone marrow.

Allogenic bone marrow transplant *covered healthcare services* include medical and surgical services for the matching participant donor and the recipient. However, Human Leukocyte Antigen testing is covered as indicated in the Summary of Medical *Benefits*. For details see Human Leukocyte Antigen Testing section.

This *plan* covers high dose chemotherapy and radiation services related to autologous bone marrow transplantation to the extent required under R.I. Law § 27-20-60. See *Experimental or Investigational* Services in Section 3 for additional information.

To speak to a representative in our Case Management Department please call 1-401-459-2273 or 1-888-727-2300 ext. 2273. The national transplant network program is called the Blue Distinction Centers for Transplants. [SM] For more information about the Blue Distinction Centers for Transplants [SM] call our Customer Service Department or visit our website.

When the recipient is a covered *member* under this *plan*, the following services are also covered:

- obtaining donated organs (including removal from a cadaver);
- donor medical and surgical expenses related to obtaining the organ that are integral to the harvesting or directly related to the donation and limited to treatment occurring during the same stay as the harvesting and treatment received during standard post-operative care; and
- transportation of the organ from donor to the recipient.

The amount you pay for transplant services, for the recipient and eligible donor, is based on the type of service.

## Physical/Occupational Therapy

This *plan* covers physical and occupational therapy when:

- ordered by a *physician*;
- received from a licensed physical or occupational therapist;
- a *program* is implemented to provide *habilitative* or *rehabilitative* services.

See Autism Services when physical therapy and occupational therapy services are rendered as part of the treatment of autism spectrum disorder.

The amount you pay and any *benefit limit* will be the same whether the services are provided for *habilitative* or *rehabilitative* purposes.

## Pregnancy and Maternity Services

This *plan* covers *physician* services and the services of a licensed midwife for prenatal, delivery, and postpartum care. The first office visit to diagnose a pregnancy is not included in prenatal services.

This *plan* covers *hospital* services for mother and newborn child for at least forty-eight (48) hours following a vaginal delivery and ninety-six (96) hours following a caesarean delivery. The newborn child's coverage includes necessary care and treatment of medically diagnosed congenital defects and birth abnormalities, as well as routine well-baby care services.

## Prescription Drugs

**Medical Benefits - Prescription Drugs Administered by a Provider (other than a pharmacist)**

This *plan* covers prescription drugs as a medical *benefit*, referred to as "*medical prescription drugs*", when the prescription drug requires administration (or the FDA approved recommendation is administration) by a licensed healthcare *provider* (other than a pharmacist). Please note: Specialty prescription drugs meeting these requirements or recommendations are covered as a pharmacy *benefit* and not a medical *benefit*.

These *medical prescription drugs* include, but are not limited to, medications administered by infusion, injection, or inhalation, as well as nasal, topical or transdermal

administered medications. For some of these *medical prescription drugs*, the cost of the prescription drug is included in the *allowance* for the medical service being provided, and is not separately reimbursed.

**Administration Services**

When a *medical prescription drug* is administered by infusion, the administration of the prescription drug may be covered separately from the prescription drug. See Infusion Therapy - Administration Services in the Summary of Medical *Benefits* for *benefit limits* and the amount you pay.

Prescription drugs that are self-administered are not covered as a medical *benefit* but may be covered as a pharmacy *benefit*. Please see Pharmacy Prescription Drugs and Diabetic Equipment or Supplies – Pharmacy Benefits section above for additional information.

**Site of Care Program**

For some *medical prescription drugs*, after the first administration, coverage may be limited to certain locations (for example, a designated *outpatient* or ambulatory service facility, *physician's* office, or your home), provided the location is appropriate based on your medical status. For a list of *medical prescription drugs* that are subject to this Site of Care Program, visit our website.

*Preauthorization* may be required to determine *medical necessity* as well as appropriate site of care. If we deny your request for *preauthorization*, or you disagree with our determination for the appropriate site of care, you can submit a medical appeal. See Appeals in Section 5 for information on how to file a medical appeal.

## Preventive Care and Early Detection Services

This *plan* covers, early detection services, *preventive care services*, and immunizations or vaccinations in accordance with the Affordable Care Act (ACA), as set forth below and in accordance with the guidelines of the following resources:

- services that have an A or B rating in the current recommendations of the U.S. Preventative Services Task Force (USPSTF);
- immunizations recommended by the Advisory Committee on Immunization Practices of the Centers for Disease Control and Prevention;
- preventive care and screenings for infants, children, and adolescents as outlined in the comprehensive guidelines supported by the Health Resources and Services Administration (HRSA); or
- preventive care and screenings for women as outlined in the comprehensive guidelines as supported by HRSA.

Covered early detection services, *preventive care services* and adult and pediatric immunizations or vaccinations are based on the most currently available guidelines and are subject to change.

The amount you pay for preventive services will be different from the amount you pay for diagnostic procedures and non-preventive services. See the Summary of Medical

*Benefits* and the Summary of Pharmacy *Benefits* for more information about the amount you pay.

## Preventive Office Visits

This *plan* covers the following preventive office visits.

- Annual preventive visit - one (1) routine physical examination per *plan year* per *member* age 36 months and older;
- Pediatric preventive office and clinic visits from birth to 35 months - 11 visits;
- Well Woman annual preventive visit - one (1) routine gynecological examination per *plan year* per female *member*.

## Health and Diet Counseling

This *plan* covers diabetes and nutritional counseling in accordance with state and federal laws, when prescribed by a *physician* and provided by either a *physician* or an appropriately licensed, registered or certified counselor.

## Tobacco Use Counseling and Intervention

This *plan* covers smoking cessation *programs* when prescribed by a *physician* in accordance with R.I. General Law §27-20-53 and ACA guidelines. Smoking cessation *programs* include, but are not limited to, the following:

- Smoking cessation counseling must be provided by a *physician* or upon his or her *referral* to a qualified licensed practitioner.
- Over-the-counter and FDA approved nicotine replacement therapy and/or smoking cessation prescription drugs, prescribed by a *physician*, and purchased at a pharmacy. See the Summary of Pharmacy *Benefits* for details on coverage.

## Vaccinations/Immunizations

This *plan* covers adult and pediatric preventive vaccinations and immunizations in accordance with current guidelines. Our *allowance* includes the administration and the vaccine. If a covered immunization is provided as part of an office visit, the office visit *copayment* and *deductible* (if any) will apply.

Travel immunizations are covered to the extent that such immunizations are recommended for adults and children by the Centers for Disease Control and Prevention (CDC). The recommendations are subject to change by the CDC.

## Preventive Screening/Early Detection Services

This *plan* covers preventive screenings based on the ACA guidelines noted above. Preventive screenings include but are not limited to:

- mammograms;
- pap smears;
- prostate-specific antigen (PSA) tests;
- flexible sigmoidoscopy;
- colonoscopy;
- double contrast barium enema;
- fecal occult blood tests, screening for gestational diabetes, and human papillomavirus; and

- genetic counseling for breast cancer susceptibility gene (BRCA).

**Contraceptive Methods and Sterilization Procedures for Women**
This *plan* covers the following contraceptive services:
- FDA approved contraceptive drugs and devices requiring a prescription;
- barrier method (cervical cap, diaphragm, or implantable) fitted and supplied during an office visit; and
- surgical and sterilization services for women with reproductive capacity, including but not limited to tubal ligation.

**Breastfeeding Counseling and Equipment**
This *plan* covers lactation (breastfeeding) support and counseling during the pregnancy or postpartum period when provided by a licensed lactation counselor. This *plan* covers manual, electric, or battery operated breast pumps for a female *member* in conjunction with each birth event.

## Private Duty Nursing Services

This *plan* covers private duty nursing services, received in *y*our home when ordered by a *physician*, and performed by a certified home healthcare agency. This *plan* covers these services when the patient requires continuous skilled nursing observation and intervention.

## Radiation Therapy/Chemotherapy Services

This *plan* covers chemotherapy and radiation services.

## Respiratory Therapy

This *plan* covers respiratory therapy services. When respiratory services are provided in *y*our home, as part of a home care *program*, durable medical equipment, supplies, and oxygen are covered as a durable medical equipment service.

## Skilled Care in a Nursing Facility

This *plan* covers skilled nursing services in a skilled nursing facility if:
- the services are prescribed by a *physician*:
- *y*our condition needs skilled nursing services, skilled rehabilitation services or skilled nursing observation;
- the services are provided by or supervised by licensed technical or professional medical personnel; and
- the services are not custodial care, respite care, day care, or for the purpose of assisting with activities of daily living.

## Speech Therapy

This *plan* covers speech therapy services when provided by a qualified licensed *provider* and part of a formal treatment plan for:
- loss of speech or communication function; or
- impairment as a result of an acute illness or injury, or an acute exacerbation of a chronic disease.

Speech therapy services must relate to:
- performing basic functional communication; or
- assessing or treating swallowing dysfunction.

See Autism Services when speech therapy services are rendered as part of the treatment of autism spectrum disorder.

The amount you pay and any *benefit limit* will be the same whether the services are provided for *habilitative* or *rehabilitative* purposes.

## Surgery Services

This *plan* covers surgery services to treat a disease or injury when:
- the operation is not *experimental or investigational*, or cosmetic in nature;
- the operation is being performed at the appropriate place of service; and
- the *physician* is licensed to perform the surgery.

*Preauthorization* may be required for certain surgical services.

**Reconstructive Surgery for a Functional Deformity or Impairment**
This *plan* covers reconstructive surgery and procedures when the services are performed to relieve pain, or to correct or improve bodily function that is impaired as a result of:
- a birth defect;
- an accidental injury;
- a disease; or
- a previous covered surgical procedure.

Functional indications for surgical correction do not include psychological, psychiatric or emotional reasons.

This *plan* covers the procedures listed below to treat functional impairments.
- abdominal wall surgery including panniculectomy (other than an abdominoplasty);
- blepharoplasty and ptosis repair;
- gastric bypass or gastric banding;
- nasal reconstruction and septorhinoplasty;
- orthognathic surgery including mandibular and maxillary osteotomy;
- reduction mammoplasty;
- removal of breast implants;
- removal or treatment of proliferative vascular lesions and hemangiomas;
- treatment of varicose veins; or

- gynecomastia.

*Preauthorization* may be required for these services.

**Anesthesia Services**
This *plan* covers general and local anesthesia services received from an anesthesiologist when the surgical procedure is a *covered healthcare service*.

This *plan* covers office visits or office consultations with an anesthesiologist when provided prior to a scheduled covered surgical procedure.

## Telemedicine Services
This *plan* covers clinically appropriate telemedicine services when the service is provided via remote access through an on-line service or other interactive audio and video telecommunications system in accordance with R.I. General Law § 27-81-1.

Clinically appropriate telemedicine services may be obtained from a *network* or *non-network provider*, and from our designated telemedicine service *provider*.

When you seek telemedicine services from our designated telemedicine service *provider*, the amount you pay is listed in the Summary of Medical *Benefits*.

When you receive a *covered healthcare service* from a *network* or *non-network provider* via remote access, the amount you pay depends on the *covered healthcare service* you receive, as indicated in the Summary of Medical *Benefits*.

For information about telemedicine services, our designated telemedicine service provider, and how to access telemedicine services, please visit our website or contact our Customer Service Department.

## Tests, Labs, and Imaging and X-rays (diagnostic)
This *plan* covers diagnostic tests, labs, and imaging and x-rays to diagnose or treat a condition when ordered by a *physician*.

**Major Diagnostic Imaging and Tests**
Major diagnostic imaging and tests include but are not limited to:
- magnetic resonance imaging (MRI),
- magnetic resonance angiography (MRA),
- computerized axial tomography (CAT or CT scans),
- nuclear scans,
- positron emission tomography (PET scan), and
- cardiac imaging.

*Preauthorization* may be required for major diagnostic imaging and tests.

This *plan* covers MRI examinations when the quality assurance standards of R.I. General Law §27-20-41 are met. MRI examinations conducted outside of the State of

Rhode Island must be performed in accordance with the applicable laws of the state in which the examination has been conducted.

**Diagnostic Imaging and X-rays (other than the imaging services noted above)**
Diagnostic imaging and x-rays include but are not limited to:
- general imaging (such as x-rays and ultrasounds), and
- mammograms.

**Tests**
Diagnostic tests include but are not limited to:
- electrocardiograms (EKGs),
- electroencephalograms (EEGs),
- nerve conduction tests,
- neuropsychological testing, and
- sleep studies.

**Labs and Pathology**
Diagnostic labs and pathology include but are not limited to:
- blood tests,
- urinalysis,
- pap smears, and
- throat cultures.

For tests, labs and imaging associated with *Preventive Care Services* and Early Detection Services, please refer to that section, and see the Summary of Medical *Benefits* for the amount you pay.

**Lyme Disease Diagnosis and Treatment**
This *plan* covers diagnostic testing and long-term antibiotic treatment of chronic lyme disease in accordance with R.I. General Law § 27-20-48. To be covered, services must be ordered by *your physician* after evaluation of *your* symptoms, diagnostic test results, and response to treatment. Coverage for lyme disease treatment will not be denied solely because such treatment may be characterized as unproven, experimental, or investigational.

## Urgent Care

This *plan* covers services received at an *urgent care center*. For other services, such as surgery or diagnostic tests, the amount that you pay is based on the type of service being provided. See Summary of Medical *Benefits* for details.

Follow-up care (such as suture removal or wound care) should be obtained from *your primary care provider* or specialist.

Please note: *Retail clinics* located in retail stores, supermarkets and pharmacies are not considered *urgent care centers*. The amount you pay for services at a retail based clinic

differs from the amount you pay for urgent care services. See the Summary of Medical *Benefits* for details.

## Vision Care Services

For purposes of coordination of *benefits*, vision care services covered under other *plans* are not considered an *allowable expense, as* defined in the Coordination of *Benefits* and Subrogation in Section 7.

**Eye Exam**

This *plan* covers one (1) routine or annual eye exam, per *plan year*, for a *member's* visual acuity. Additional eye exams are covered during the *plan year* when there is an underlying medical condition, such as conjunctivitis.

## SECTION 4: EXCLUSIONS

This section lists the services or categories of services that are not covered (excluded) under this *plan*. We will not cover services listed in this section even if they are prescribed or recommended by *your provider*. We will not cover services that are not *medically necessary*, whether or not they are listed in this section.

The exclusion headings in this section are intended to group together services, treatments, items, or supplies that fall into a similar category. Actual exclusions appear underneath each heading.

**The services listed in this section are not covered under this *plan*.**

### Air and Water Ambulance Services
- Air or water ambulance transportation services, when the destination is not to an acute care *hospital*. Some examples of non-covered air or water ambulance services include transport to a *physician's* office, nursing facility, or a patient's home.

### Behavioral Health Services
- Non-medical self-care, or self-help training (e.g. Alcoholics Anonymous (AA), Narcotics Anonymous (NA) meetings/services).
- Behavioral training assessment, education, or exercise services unless provided for applied behavioral analysis.
- Psychoanalysis for educational purposes, regardless of symptoms.
- Psychotherapy services you may receive which are credited towards a degree or to further *your* education or training.

### Chiropractic Services
- Chiropractic services received in *your* home.

### Dental Services
The following dental services are not covered, except as described under Dental Services in Section 3:
- Dental injuries incurred as a result of biting or chewing.
- General dental services such as extractions including full mouth extractions, prostheses, braces, operative restorations, fillings, medical or surgical treatment of dental caries, gingivitis, gingivectomy, impactions, periodontal surgery, non-surgical treatment of temporomandibular joint dysfunctions, including appliances or restorations necessary to increase vertical dimensions or to restore the occlusion.
- Panorex x-rays or dental x-rays.
- Orthodontic services, even if related to a covered surgery.
- Dental appliances or devices.
- Preparation of the mouth for dentures and dental or oral surgeries such as, but not limited to, the following:
  - apicoectomy, per tooth, first root;
  - alveolectomy including curettage of osteitis or sequestrectomy;

- o alveoloplasty, each quadrant;
- o complete surgical removal of inaccessible impacted mandibular tooth mesial surface;
- o excision of feberous tuberosities;
- o excision of hyperplastic alveolar mucosa, each quadrant;
- o operculectomy excision periocoronal tissues;
- o removal of partially bony impacted tooth;
- o removal of completely bony impacted tooth, with or without unusual surgical complications;
- o surgical removal of partial bony impaction;
- o surgical removal of impacted maxillary tooth;
- o surgical removal of residual tooth roots; and
- o vestibuloplasty with skin/mucosal graft and lowering the floor of the mouth.

## Dialysis Services

- The following dialysis services received in *your* home:
  - o installing or modifying of electric power, water and sanitary disposal or *charges* for these services;
  - o moving expenses for relocating the machine;
  - o installation expenses not necessary to operate the machine; and
  - o training you or members of *your* family in the operation of the machine.
- Dialysis services received in a *physician's* office.

## Durable Medical Equipment (DME), Medical Supplies, Prosthetic Devices, Enteral Formula or Food, and Hair Prosthesis (Wigs)

- Items typically found in the home that do not need a prescription and are easily obtainable such as, but not limited to:
  - o adhesive bandages;
  - o elastic bandages;
  - o gauze pads; and
  - o alcohol swabs.
- DME and medical supplies prescribed primarily for the convenience of the *member* or the *member's* family, including but not limited to, duplicate DME or medical supplies for use in multiple locations or any DME or medical supplies used primarily to assist a caregiver.
- Non-wearable automatic external defibrillators.
- Replacement of durable medical equipment and prosthetic devices prescribed because of a desire for new equipment or new technology.
- Equipment that does not meet the basic functional need of the average person.
- DME that does not directly improve the function of the *member*.
- Medical supplies provided during an office visit.
- Pillows or batteries, except when used for the operation of a covered prosthetic device, or items for which the sole function is to improve the quality of life or mental wellbeing.
- Repair or replacement of DME when the equipment is under warranty, covered by the manufacturer, or during the rental period.

- Infant formula, nutritional supplements and food, or food products, whether or not prescribed, unless required by R.I. Law §27-20-56 for Enteral Nutrition Products, or delivered through a feeding tube as the sole source of nutrition.
- Corrective or orthopedic shoes and orthotic devices used in connection with footwear, unless for the treatment of diabetes.

## Experimental or Investigational Services
- Treatments, procedures, facilities, equipment, drugs, devices, supplies, or services that are *experimental or investigational* except as described in Section 3.

## Gender Reassignment Services
- Reversal of gender reassignment surgery.

## Hearing Services
- Repairs, modifications, cords, batteries, and other assistive listening devices.

## Home Health Care
- Homemaking, companion, chronic, or custodial care services.
- Services of a personal care attendant.

## Infertility Services
- Freezing, storage and thawing of embryos, sperm, or other tissues, for future use, unless the freezing, storage and thawing is needed due to potential iatrogenic infertility as described in Infertility Services in Section 3.
- Reversal of voluntary sterilization or infertility treatment for a person that previously had a voluntary sterilization procedure.
- Fees associated with finding an egg or sperm donor, related storage, donor stipend, or shipping *charges*.
- Services related to surrogate parenting, when the surrogate is not a *member* of this *plan*.

## Inpatient Services
- *Hospital* services which are not performed in a *hospital*.

## Organ Transplants
- Medical services of the donor that are not directly related to the organ transplant.
- Services related to obtaining, storing, or other services performed for the potential future use of umbilical cord blood.
- Noncadaveric small bowel transplants.
- Services related to donor searches.
- Donor related medical and surgical expenses when the recipient is not covered as a *member*.
- Services or supplies related to an excluded transplant procedure.

## Pregnancy and Maternity Services

- Preimplantation genetic diagnosis, also known as embryo screening.
- Amniocentesis or any other service when performed solely to determine gender.
- Services related to surrogate parenting or the newborn child of the surrogate parent, when the surrogate is not a *member* of this *plan*.

## Prescription Drugs and Diabetic Equipment or Supplies

- Biological products for allergen immunotherapy and vaccinations.
- Blood fractions.
- Compound prescription drugs that are not made up of at least one *legend drug*.
- Bulk powders and chemicals used in compound prescriptions that are not FDA approved, are not covered unless listed on our *formulary*.
- Prescription drugs prescribed or dispensed outside of our dispensing guidelines.
- Prescription drugs ordered or prescribed based solely on online questionnaires, telephonic interviews, surveys, emails, or any other marketing solicitation methods, whether alone or in combination.
- Prescription drugs that have not proven effective according to the FDA.
- Prescription drugs used for cosmetic purposes.
- Prescription drugs purchased from a non-designated pharmacy, if a pharmacy has been designated for you through the Pharmacy Home Assignment program.
- Experimental prescription drugs including those placed on notice of opportunity hearing status by the Federal Drug Efficacy Study Implementation (DESI).
- Prescription drugs provided to you that are not dispensed by a *network pharmacy* or covered under *your* medical *plan*.
- Prescription drugs and diabetic equipment and supplies purchased at a *non-network pharmacy* unless indicated as covered in the Summary of Pharmacy *Benefits*.
- Prescription drug related medical supplies except for diabetic, regardless of the reason prescribed, the intended use, or *medical necessity*. Examples include, but are not limited to, alcohol pads, bandages, wraps or pill holders.
- Off-label use of prescription drugs except as described in *Experimental or Investigational* Services in Section 3;
- Prescribed weight-loss drugs.
- Replacement of prescription drugs resulting from a lost, stolen, broken or destroyed prescription order or refill.
- Therapeutic devices and appliances, including hypodermic needles and syringes except when used to administer insulin.
- Prescription drugs, therapeutic equivalents, or any other pharmaceuticals used to treat sexual dysfunctions.
- Vitamins, unless specifically listed as a *covered healthcare service*.
- A prescription drug refill greater than the refill number authorized by *your physician*, more than a year from the date of the original prescription, or limited by law.
- Long acting opioids and other controlled substances, nicotine replacement therapy, and *specialty prescription drugs* when purchased from a mail order pharmacy.
- Prescription drugs and *specialty prescription drugs* when the required prescription drug *preauthorization* is not obtained.
- Certain prescription drugs that have an over-the-counter (OTC) equivalent.

- Prescriptions filled through an internet pharmacy that is not a verified internet pharmacy practice site certified by the National Association of Boards of Pharmacy.
- Illegal drugs, including medical marijuana, which are dispensed in violation of state and/or federal law.

## Private Duty Nursing Services

- Services of a nurse's aide.
- Services of a private duty nurse:
  - when the primary duties are limited to bathing, feeding, exercising, homemaking, giving oral medications or acting as companion or sitter;
  - after the caregiver or patient have demonstrated the ability to carry out the plan of care;
  - provided outside the home. Examples include at school, or in a nursing or assisted living facility;
  - that are duplication or overlap of services. Examples include when a person is receiving hospice care services or for the same hours of a skilled nursing home care visit;
  - that are for observation only; and
  - provided as part-time/intermittent and not continuous care.
- Maintenance care when the condition has stabilized including routine ostomy care or tube feeding administration or if the anticipated need is indefinite.
- Twenty-four (24) hour private duty nursing care for a person without an available caregiver in the home.
- Respite care (e.g., care during a caregiver vacation) or private duty nursing so that the caregiver may attend work or school.

## Surgery Services

- Abdominoplasty.
- Brow ptosis surgery.
- Cervicoplasty.
- Chemical exfoliations, peels, abrasions, dermabrasions, or planing for acne, scarring, wrinkling, sun damage or other benign conditions.
- Correction of variations in normal anatomy including augmentation mammoplasty, mastopexy, and correction of congenital breast asymmetry.
- Dermabrasion.
- Ear piercing or repair of a torn earlobe.
- Excision of excess skin or subcutaneous tissue except for panniculectomy.
- Genioplasty.
- Hair transplants.
- Hair removal including electrolysis epilation, unless in relation to gender reassignment services or skin grafting.
- Inverted nipple surgery.
- Laser treatment for acne and acne scars.
- Osteoplasty - facial bone reduction.
- Otoplasty.

- Procedures to correct visual acuity including but not limited to cornea surgery or lens implants.
- Removal of asymptomatic benign skin lesions.
- Repeated cauterizations or electrofulguration methods used to remove growths on the skin.
- Rhinoplasty.
- Rhytidectomy.
- Scar revision, regardless of symptoms.
- Sclerotherapy for spider veins.
- Skin tag removal.
- Subcutaneous injection of filling material.
- Suction assisted Lipectomy.
- Tattooing or tattoo removal except tattooing of the nipple/areola related to a mastectomy.
- Treatment of vitiligo.
- Standby services of an assistant surgeon or anesthesiologist.
- Orthodontic services related to orthognathic surgery.
- Cosmetic procedures when performed primarily:
  - to refine or reshape body structures or dental structures that are not functionally impaired;
  - to improve appearance or self-esteem; or
  - for other psychological, psychiatric or emotional reasons.
- Drugs, biological products, *hospital charges*, pathology, radiology fees and *charges* for surgeons, assistant surgeons, attending *physicians* and any other incidental services, which are related to cosmetic surgery.

## Tests, Labs, and Imaging and X-rays (diagnostic)

- Re-reading of diagnostic tests by a second *provider*.
- Dental x-rays except when ordered by a *physician*/*dentist* to diagnose a condition due to an accident to *your sound natural teeth*.
- Over the counter diagnostic devices or kits even if prescribed by a *physician*, except for those devices or kits related to the treatment of diabetes or nicotine lab tests.
- Parental testing.
- Forensic testing.

## Therapies

- Acupuncture and acupuncturist services, including x-ray and laboratory services.
- Biofeedback, biofeedback training, and biofeedback by any other modality for any condition.
- Recreational therapy services and *programs*, including wilderness *programs*.
- Services provided in any covered *program* that are recreational therapy services, including wilderness *programs*, educational services, complimentary services, non-medical self-care, self-help *programs*, or non-clinical services. Examples include, but are not limited to, Tai Chi, yoga, personal training, meditation.
- Computer/internet/social media based services and/or *programs*.
- Aqua therapy unless provided by a physical therapist.

- Maintenance therapy services unless it is a *habilitative service* that helps a person keep, learn or improve skills and functioning for daily living.
- Aromatherapy.
- Hippotherapy.
- Massage therapy rendered by a massage therapist.
- Therapies, procedures, and services for the purpose of relieving stress.
- Physical, occupational, speech, or respiratory therapy provided in *y*our home, unless through a home care *program*.
- Pelvic floor electrical and magnetic stimulation, and pelvic floor exercises.
- Educational classes and services for speech impairments that are self-correcting.
- Speech therapy services related to food aversion or texture disorders.
- Exercise therapy.
- Naturopathic, homeopathic, and Christian Science services, regardless of who orders or provides the services.

## Vision Care Services

- Eye exercises and visual training services.
- Lenses and/or frames and contact lenses unless specifically listed as a *covered healthcare service*.

## Providers

- Services performed by a *provider* who has been excluded or debarred from participation in federal programs, such as Medicare and Medicaid. To determine whether a *provider* has been excluded from a federal program, visit the U.S. Department of Human Services Office of Inspector General website (https://exclusions.oig.hhs.gov/) or the Excluded Parties List System website maintained by the U.S. General Services Administration (https://www.sam.gov/).
- Services provided by facilities, *dentists, physicians*, surgeons, or other *providers* who are not legally qualified or licensed, according to relevant sections of Rhode Island Law or other governing bodies, or who have not met our credentialing requirements.
- Services provided by a *non-network provider*, unless listed as covered in the Summary of Medical *Benefits*.
- Services provided by naturopaths, homeopaths, or Christian Science practitioners.

## Services Available or Provided from Other Sources

- Services for any condition, illness, or disease which should be covered by the United States government or any of its agencies, Medicare, any state or municipal government or any of its agencies except *emergency* care when there is a legal responsibility to provide it.
- Services or supplies for military-related conditions, such as war, or any military action, which takes place after *y*our coverage becomes effective.
- Services received in a facility mainly meant to care for students, faculty, or employees of a college or other institution of learning.
- *Covered healthcare services* provided to you when there is no *charge* to you or there would have been no *charge* to you absent this health *plan*.

- Services if another entity or agency is responsible under state or federal laws, which are provided for the health of schoolchildren or children with disabilities. See Title 16, Chapters 21, 24, 25, and 26 of the R.I. General Laws. See also applicable regulations about the health of schoolchildren and the special education of children with disabilities or similar rules set forth by federal law or state law of applicable jurisdiction.
- Services and supplies which are required under the laws of a state, other than Rhode Island, and are not provided under this health *plan*.

## All Other Exclusions

- Services not approved by the FDA or other governing body.
- Services we have not reviewed or we have not determined are eligible for coverage.
- Administrative service *charges* for:
  - missed appointments;
  - completion of *claim* forms;
  - additional fees, sometimes referred to as access fees, associated with concierge, boutique, or retainer practices; and
  - any other administrative *charges*.
- Blood services for drawing, processing, or storage of *your* own blood, including any penalty fees related to blood services.
- Continuation of a *covered healthcare service* or *benefit* as a result of a clerical error.
- Custodial care, rest care, day care, or non-skilled care services.
- Convalescent homes, nursing homes including non-skilled care, assisted living facilities, or other residential facilities.
- Educational classes, unless listed as covered, and training services.
- Exams or services that are required for or related to employment, education, marriage, adoption, insurance purposes, court order, or similar third parties when not *medically necessary* or when the *benefit limit* for the exam or service has been met.
- Routine foot care, including the treatment of corns, bunions except capsular or bone surgery, calluses, the trimming of nails, the treatment of simple ingrown nails and other preventive hygienic procedures, except when performed to treat diabetic related nerve and circulation disorders of the feet.
- Treatment of flat feet unless the treatment is a covered surgical service.
- Telephone consultations, telephone services, or medication monitoring by phone, except for telemedicine services as described in Section 3.
- Healthcare services for work-related illnesses or injuries for which *benefits* are available under Workers' Compensation , whether or not you are entitled to such *benefits*, unless:
  - you are self-employed, a sole stockholder of a corporation, or a member of a partnership; and
  - your illnesses or injuries were incurred in the course of your self-employment, sole stockholder, or partnership activities; and
  - you are not enrolled as an employee under a group health *plan* sponsored by another employer.

- Services and supplies used for *your* personal appearance and/or comfort, whether or not prescribed by a *physician* and regardless of *your* condition. These services and supplies include, but are not limited to:
  o batteries, unless indicated as covered;
  o radio;
  o telephone;
  o television;
  o air conditioner;
  o humidifier;
  o dehumidifier
  o air purifier;
  o beauty and barber services;
  o recliner lift;
  o travel expenses, whether or not prescribed by a *physician*;
  o standers;
  o raised toilet seats;
  o toilet seat systems;
  o cribs;
  o ramps;
  o positioning wedges;
  o wall or ceiling mounted lift systems;
  o water circulating cold pads or cryo-cuffs;
  o car seats including any vest system or car beds;
  o bath or shower chair systems;
  o trampolines;
  o tricycles;
  o therapy balls; and
  o net swings with a positioning seat.
- Repatriation and medical evacuation services for transportation back to the United States from another country. This exclusion does not apply to air and water ambulance services as described in Section 3, which provides for transportation to the nearest facility where the required services can be performed.
- Research studies.
- Self-treated services or services provided by relatives whether by blood, marriage, or adoption, or other members of *your* household.
- Services related to sexual dysfunctions, except *medically necessary* services for treatment related to an organic condition.
- *Programs* or drugs designed for the purpose of weight loss, including but not limited to, commercial diet plans, weight loss *programs*, and any services in connection with such plans or *programs*.
- Health assessment *programs* designed to provide personalized treatment plans. These treatment plans can include but are not limited to:
  o cardiovascular assessments;
  o diet;
  o exercise; and
  o lifestyle guidance.

## SECTION 5: REQUESTS FOR AUTHORIZATION, DENIALS, COMPLAINTS, AND APPEALS

### Requests for Authorization

We evaluate the *medical necessity* of select *covered healthcare services* using clinical criteria to facilitate clinically appropriate, cost-effective management of your care. This process is called *utilization review*, and it can occur in the following situations:

- When you (or your *provider*) request authorization for a service before receiving it (*preauthorization*).
- When you (or your *provider*) request authorization for a service that is ongoing (concurrent authorization).
- When you (or your *provider*) request authorization for a service you have already received (retrospective authorization).

The determination of whether a service is *medically necessary* is solely for the purpose of *claims* payment and the administration of health *benefits* under this *plan*. It is not an exercise of professional medical judgment. BCBSRI does not act as a healthcare *provider*. We do not furnish medical care. You are not prohibited from having a treatment or hospitalization for which reimbursement was not authorized. Nothing here will change or affect your relationship with your *provider(s)*.

We may contract with an organization to conduct *utilization review* on our behalf. If another company does *utilization review* on our behalf, the company will act as an independent contractor and is not a partner, agent, or employee of BCBSRI.

**Preauthorization**

*Preauthorization* is the process by which we determine whether a *covered healthcare service* is *medically necessary* before you receive the service. Medical services which may require *preauthorization* are marked with an asterisk (*) in the Summary of Medical *Benefits*.

A separate *preauthorization* process applies to pharmacy services. Pharmacy services which require prescription drug *preauthorization* are marked with the (+) symbol in the Summary of Pharmacy *Benefits*. To obtain the required prescription drug *preauthorization* please ask the pharmacist to call our pharmacy *benefits* administrator using the number listed on the back of your ID card. See Prescription Drugs and Diabetic Equipment or Supplies in Section 3 for additional information about prescription drug *preauthorization*.

*Preauthorization* is not a guarantee of payment, as the process does not take *benefit limits* into account.

In most cases, *providers* are responsible for obtaining *preauthorization* for *covered healthcare services*. However, in some cases you are responsible for obtaining *preauthorization*. The chart below describes who is responsible for getting *preauthorization* in the specified situations:

| Covered services provided by: | Preauthorization is the responsibility of the: |
|---|---|
| *Network Providers* | *Provider* |
| *Non-Network Providers* | *Member* |
| *BlueCard Providers*: <br> *Inpatient* Services <br> Other Services | <br> *Provider* <br> *Member* |

For mental health and *substance use disorder* services received from *non-network providers*, please call 1-800-274-2958 prior to receiving care. *Preauthorization* is not required for mental health and *substance use disorder* services received from *network providers*. Lines are open 24 hours a day, 7 days per week. For all other *covered healthcare services*, call our Customer Service Department.

A notification of the *preauthorization* determination will be provided prior to the date of service but no later than fourteen (14) calendar days from receipt of the request.

When we determine that the services are not *medically necessary*, that service is not covered. If the *provider* is responsible for obtaining *preauthorization*, that *provider* may not bill you for the service. When you are responsible for obtaining *preauthorization*, and we determine the service is not *medically necessary*, you will be responsible for the cost of the services. You have the right to appeal our determination or to take legal action as described in this section.

Please note: You do not need *preauthorization* for *emergency* services. Additionally, you do not need *preauthorization* from us or from any other person (including a *PCP*) in order to obtain access to obstetrical or gynecological care from a *network physician* who specializes in obstetrics or gynecology. Your *physician*, however, may be required to comply with certain procedures, including obtaining *preauthorization* for certain services.

**Expedited Preauthorization**
You may request an expedited *preauthorization* review in an *emergency*. We will respond to you with a determination within seventy-two (72) hours following receipt of the request.

**Concurrent Authorization**
We review requests for concurrent authorization when you need an extension of an authorized course of treatment beyond the period of time or number of treatments already approved. If we deny your request, we will notify your *provider* before the end of the treatment period and will let you know within twenty-four (24) hours from receipt of the request if the request is made at least twenty-four (24) hours before the expiration of the period of time or number of treatments. You have the right to appeal our determination or to take legal action as described in this section.

**Retrospective Authorization**

We review requests for retrospective authorization when services were provided before authorization was obtained. A notification of the retrospective determination will be provided within thirty (30) calendar days from receipt of the request. You have the right to appeal our determination or to take legal action as described in this section.

**Network Authorization**

For services that cannot be provided by a *network provider*, you can request a *network authorization* to seek services from a *non-network provider*. With an approved *network authorization*, the *network benefit* level will apply to the authorized *covered healthcare service*. If we approve a *network authorization* for you to receive services from a *non-network provider*, our reimbursement will be based on the lesser of our *allowance*, the *non-network provider's charge*, or the *benefit limit*. For more information, please see the How *Non-Network Providers* Are Paid section.

## Denials

A *claim* denial, also known as an adverse *benefit* determination, is any of the following:

- a full or partial denial of a *benefit*;
- a reduction of a *benefit*;
- a termination of a *benefit*;
- a failure to provide or make a full or partial payment for a *benefit*; and
- a rescission of coverage, even if there is no adverse effect on any *benefit*.

If we deny payment for a service we determine not *medically necessary*, a determination letter will be provided with the following information:

- reason for the denial;
- clinical criteria used to make the determination as well as how to obtain a copy of the clinical criteria; and
- instructions for filing a medical appeal.

If you have questions, please contact our Grievance and Appeals Unit. See Section 9 for contact information. You may also contact the Office of the Health Insurance Commissioner's Consumer Resource Program, RIREACH at 1-855-747-3224 about questions or concerns you may have.

## Complaints

A complaint is an expression of dissatisfaction with any aspect of our operation or the quality of care you received from a healthcare *provider*. It is not an appeal, an inquiry, or a problem of misinformation which can be resolved promptly by clearing up the misunderstanding, or supplying the appropriate information to *your* satisfaction.

We encourage you to discuss any concerns or issues you may have about any aspect of *your* medical treatment with the healthcare *provider* that furnished the care. In most cases, issues can be more easily resolved if they are raised when they occur. However, if you remain dissatisfied or prefer not to take up the issue with *your provider*, you can call our Customer Service Department for further assistance. You may also call our Customer Service Department if you are dissatisfied with any aspect of our operation.

If the concern or issue is not resolved to *your* satisfaction, you may file a verbal or written complaint with our Grievance and Appeals Unit.

We will acknowledge receipt of *your* complaint or administrative appeal within ten (10) business days. The Grievance and Appeals Unit will conduct a thorough review of *your* complaint and respond within thirty (30) business days of the date it was received. The determination letter will provide you with the rationale for our response as well as information on any possible next steps available to you.

When filing a complaint, please provide the following information:
- your name, address, *member* ID number;
- the date of the incident or service;
- summary of the issue;
- any previous contact with BCBSRI concerning the issue;
- a brief description of the relief or solution you are seeking; and
- additional information such as *referral* forms, *claims*, or any other documentation that you would like us to review.

Please send all information to the address listed on the Contact Information section.

## Reconsiderations and Appeals

If you experience a problem relating to an authorization review, *benefit* denial, or other aspect of this *plan*, we have internal and external procedures to help you resolve your issue.

The following sections detail the processes and procedures for filing:
- Administrative Appeals;
- Medical Reconsiderations and Appeals (including expedited appeals);
- Prescription Drug Appeals: and
- External Appeals.

For appeals of a decision that a prescription drug is not covered because it is not on our formulary, please see the Formulary Exception Process in the Prescription Drug and Diabetic Equipment and Supplies section.

When filing a reconsideration or an appeal, please provide the same information listed in the Complaints section above.

**Administrative Appeals**

An administrative appeal is a request for us to reconsider a full or partial denial of payment for *covered healthcare services* for the following reasons:

- the services were excluded from coverage;
- we determined that you were not eligible for coverage;
- you or your *provider* did not follow BCBSRI's requirements; or
- a limitation on an otherwise covered *benefit* exists.

You are not required to file a complaint (as described above), before filing an administrative appeal. If you call our Customer Service Department, a Customer Service Representative will try to resolve your concern. If the issue is not resolved to your satisfaction, you may file a verbal or written administrative appeal with our Grievance and Appeals Unit.

If you request an administrative appeal, you must do so within one hundred eighty (180) days of receiving a denial of payment for *covered healthcare services*.

The Grievance and Appeals Unit will conduct a thorough review of your administrative appeal and respond within:

- thirty (30) calendar days for a prospective review; and
- sixty (60) calendar days for a retrospective review.

The letter will provide you with information regarding our determination.

**Medical Reconsiderations and Appeals**

A medical reconsideration or appeal is a request for us to reconsider a full or partial denial of payment for *covered healthcare services* because we determined:

- the service was not *medically necessary* or appropriate; or
- the service was *experimental or investigational*.

You may request an expedited appeal when:

- an urgent *preauthorization* request for healthcare services has been denied;
- the circumstances are an *emergency*; or
- you are in an *inpatient* setting.

### How to File a Medical Request for Reconsideration

You or your *physician* may file a written or verbal request for reconsideration with our Grievance and Appeals Unit. The request for reconsideration must be submitted to us within one hundred and eighty (180) calendar days of the initial determination letter.

If someone other than your *provider* is requesting a medical reconsideration on your behalf, you must provide us with a signed notice, authorizing the individual to represent you in this matter.

You will receive written notification of our determination within:

- fifteen (15) calendar days, from the receipt of your request for reconsideration of a prospective or concurrent review; and
- fifteen (15) calendar days, from the receipt of your request for reconsideration of a retrospective review.

### How to File an Appeal of a Medical Reconsideration

You may request an appeal if our denial was upheld during the initial reconsideration. Your appeal will be reviewed by a *provider* in the same or similar specialty as your treating *provider*. You must submit your request for an appeal within forty-five (45) calendar days of receiving of the reconsideration denial letter.

You will receive written notification of our appeal determination following the same timeframes noted in the How to File a Medical Request for Reconsideration section above.

At any time during the review process, you may supply additional information to us. You may also request copies of information relevant to your request (free of charge) by contacting our Grievance and Appeals Unit.

### How to File an Appeal of a Prescription Drug Denial

For denials of a prescription drug *claim* based on our determination that the service was not *medically necessary* or appropriate, or that the service was *experimental or investigational*, you may request an appeal without first submitting a request for reconsideration.

You or your *physician* may file a written or verbal prescription drug appeal with our pharmacy *benefits* manager (PBM). The prescription drug appeal must be submitted to us within one hundred and eighty (180) calendar days of the initial determination letter. You will receive written notification of our determination within thirty (30) calendar days from the receipt of your appeal.

### How to File an Expedited Appeal

Your appeal may require immediate action if a delay in treatment could seriously jeopardize your health or your ability to regain maximum function, or would cause you severe pain.

To request an expedited appeal of a denial related to services that have not yet been rendered (a *preauthorization* review) or for on-going services (a concurrent review), you or your healthcare *provider* should call:

- our Grievance and Appeals Unit; or
- our pharmacy *benefits* manager for a prescription drug appeal.

Please see Section 9 for contact information.

You will be notified of our decision no later than seventy-two (72) hours after our receipt of the request.

You may not request an expedited review of *covered healthcare services* already received.

**How to Request an External Appeal**
If you remain dissatisfied with our medical appeal determination, you may request an external review by an outside review agency.   In accordance with §27-18.9-8, your external appeal will be reviewed by one of the external independent review organizations (IRO) approved by the Office of the Health Insurance Commissioner. The IRO is selected using a rotational method. Your *claim* does not have to meet a minimum dollar threshold in order for you to be able to request an external appeal.

To request an external appeal, submit a written request to us within four (4) months of your receipt of the medical appeal denial letter. We will forward your request to the outside review agency within five (5) business days, unless it is an urgent appeal, and then we will send it within two (2) business days.

We may charge you a filing fee up to $25.00 per external appeal, not to exceed $75.00 per *plan year*. We will refund you if the denial is reversed and will waive the fee if it imposes an undue hardship for you.

Upon receipt of the information, the outside review agency will notify you of its determination within ten (10) calendar days, unless it is an urgent appeal, and then you will be notified within seventy-two (72) hours.

The determination by the outside review agency is binding on us.

Filing an external appeal is voluntary. You may choose to participate in this level of appeal or you may file suit in an appropriate court of law (see Legal Action, below).

Once a *member* or *provider* receives a decision at one of the several levels of appeals noted above, (reconsideration, appeal, external), the *member* or *provider* may not ask for an appeal at the same level again, unless additional information that could affect such decisions can be provided.

## Legal Action

If you are dissatisfied with the determination of *your claim*, and have complied with applicable state and federal law, you are entitled to seek judicial review. This review will take place in an appropriate court of law.

Under state law, you may not begin court proceedings prior to the expiration of sixty (60) days after the date you filed *your claim*. In no event may legal action be taken against us later than three (3) years from the date you were required to file the *claim*.

For *members* covered by a group (employer sponsored) health *plan*, *your plan* may be subject to the Employee Retirement Income Security Act of 1974 (ERISA), as amended. Under federal law, if *your plan* is subject to ERISA you may have the right to bring legal action under section 502(a) of ERISA after you have exhausted all appeals available under the *plan*. That means, for both medical and administrative appeals, federal law requires that you pursue a final decision from the *plan*, prior to filing suit under section 502(a) of ERISA. For a medical appeal, that final decision is the determination of the appeal. You are not required to submit *your claim* to external review prior to filing a suit under section 502(a) of ERISA. Consult *your* employer to determine whether this applies to you and what *your* rights and obligations may be. If you are dissatisfied with the decision on *your claim*, and have complied with applicable state and federal law, you are entitled to seek judicial review. This review will take place in an appropriate court of law.

## SECTION 6: CLAIM FILING AND PROVIDER PAYMENTS

This section provides information regarding how a *member* may file a *claim* for a *covered healthcare service and how* we pay *providers* for a *covered healthcare service*.

### How to File a Claim

*Network providers* file *claims* on your behalf.

*Non-network providers* may or may not file *claims* on your behalf. If a *non-network provider* does not file a *claim* on your behalf, you will need to file it yourself. To file a *claim*, please send us the *provider's* itemized bill, and include the following information:

- your name;
- your *member* ID number;
- the name, address, and telephone number of the *provider* who performed the service;
- date and description of the service; and
- *charge* for that service.

Please send your *claim* to the address listed in the Contact Information section.

*Claims* must be filed within one calendar year of the date you receive a *covered healthcare service*. *Claims* submitted after this deadline are not eligible for reimbursement. This timeframe does not apply if you are legally incapacitated.

### How Network Providers Are Paid

We pay *network providers* directly for *covered healthcare services*. *Network providers* agree not to bill, *charge*, collect a deposit from, or seek reimbursement from you for a *covered healthcare service*, except for your share under the *plan*.

When you see a *network provider*, you are responsible for a share of the cost of *covered healthcare services*. Your share includes the *deductible*, if one applies, and the *copayment*, as listed in the Summary of Medical *Benefits*. The *covered healthcare service* may also have a *benefit limit*, which caps the amount we will reimburse the *provider* for that service. You will be responsible for any amount over the *benefit limit*, up to the *allowance*.

Your *provider* may request these payments at the time of service, or may bill you after the service. If you do not pay your *provider*, the *provider* may decline to provide current or future services or may pursue payment from you, such as beginning collection proceedings.

Some of our *agreements* with *network providers* include alternative payment methods such as incentives, risk-sharing, care coordination, value-based, capitation or similar payment methods. Your *copayments* are determined based on our *allowance* at the date the service is rendered. Your *copayment* may be more or less than the amount the *network provider* receives under these alternative payment methods. Your *copayment* will not be adjusted based on these alternative payment methods, or for any payment that is not calculated on an individual claim basis. Our contracts with *providers* may establish a payment *allowance* for multiple *covered healthcare services*, and we may apply a single *copayment* based on these arrangements. In these cases, you will typically be responsible for fewer *copayments* than if your share of the cost had been determined on a per service basis.

Not all of the individual *providers* at a *network* facility will be *network providers*. It is your responsibility to make sure that each *provider* from whom you receive care is in the *network*. However, if you receive certain types of services at a *network* facility, and *covered healthcare services* are provided with those services by a *non-network provider* outside of your control, we will reimburse you for those *covered healthcare services* based upon our *allowance* at the *network* level of *benefits* when the services have been rendered:

- during an *inpatient* admission at a *network* facility under the supervision of a *network physician*;
- while receiving *outpatient* services performed at a *network* facility under the supervision of a *network physician*; and
- while receiving *emergency* room services at a *network* facility.

## How Non-network Providers Are Paid

If you receive care from a *non-network provider*, you are responsible for paying all *charges* for the services you received. You may submit a *claim* for reimbursement of the payments you made.

For the limited circumstances listed below, your *copayment* and *deductible* will apply at the *network* level of *benefits*:

- *emergency* care (*emergency* room, urgent care and ambulance services);
- we specifically approve the use of a *non-network provider* for *covered healthcare services,* see *Network Authorization* in Section 5 for details;
- *covered healthcare services* are rendered by a *non-network provider* at a *network* facility outside of your control;
- otherwise, as required by law.

For those circumstances where we cover services from a *non-network provider*, we reimburse you or the *non-network provider*, less any *copayments* and *deductibles,* up to the lesser of:

- our *allowance*;
- the *non-network provider's charge*; or
- the *benefit limit*.

You are responsible for the *deductible*, if one applies, and the *copayment*, as well as any amount over the *benefit limit* that applies to the service you received.

You are liable for the difference between the amount that the *non-network provider* bills and the payment we make for *covered healthcare services*. Generally, we send reimbursement to you, but we reserve the right to reimburse a *non-network provider* directly.

We reimburse *non-network provider* services using the same guidelines we use to pay *network providers*. Generally, our payment for *non-network provider* services will not be more than the amount we pay for *network provider* services. If an *allowance* for a specific *covered healthcare service* cannot be determined by reference to a fee schedule, reimbursement will be based upon a calculation that reasonably represents the amount paid to *network providers*. For *emergency* services, we reimburse *non-network providers*, in accordance with R.I. Gen. Laws § 27-18-76, the greater of our *allowance*, our usual guidelines for paying *non-network providers*, or the amount that would be paid under Medicare, less any *copayments* or *deductibles*.

Payments we make to you are personal. You cannot transfer or assign any of your right to receive payments under this *agreement* to another person or organization, unless the R.I. General Law §27-20-49 (Dental Insurance assignment of *benefits*) applies.

For information about *network authorization* requests to seek *covered healthcare services* from a *non-network provider* when the *covered healthcare service* cannot be provided by a *network provider,* please see *Network Authorization* in Section 5.

## How BlueCard Providers Are Paid: Coverage for Services Provided Outside Our Serviced Area

### Overview
BCBSRI has a variety of relationships with other Blue Cross and/or Blue Shield Licensees. Generally, these relationships are called "Inter-*Plan* Arrangements." These Inter-*Plan* Arrangements work based on rules and procedures issued by the Blue Cross and Blue Shield Association ("Association"). Whenever you access healthcare services outside the geographic area BCBSRI serves, the *claim* for those services may be processed through one of these Inter-*Plan* Arrangements, as described below.

When you receive care outside of the BCBSRI service area, you will receive it from one of two kinds of *providers*. Most *providers* ("participating *providers*") contract with the local Blue Cross and/or Blue Shield *Plan* in that geographic area ("Host Blue"). Some *providers* ("nonparticipating *providers*") don't contract with the Host Blue. We explain below how we pay both kinds of *providers*.

### Inter-Plan Arrangements Eligibility – Claim Types
All *claim* types are eligible to be processed through Inter-*Plan* Arrangements, as described above, except for all dental *benefits*, and those prescription drug *benefits* or vision *benefits* that may be administered by a third party contracted by us to provide the specific service or services.

**BlueCard® Program**

Under the *BlueCard*® Program, when you receive *covered healthcare services* within the geographic area served by a Host Blue, BCBSRI will remain responsible for doing what we agreed to in the contract. However, the Host Blue is responsible for contracting with and generally handling all interactions with its participating *providers*.

When you receive covered health care services outside our service area and the claim is processed through the BlueCard Program, the amount you pay for covered health care services is calculated based on the lower of:

- the billed covered charges for your covered services; or
- the negotiated price that the Host Blue makes available to BCBSRI.

Often, this "negotiated price" will be a simple discount that reflects an actual price that the Host Blue pays to *your* healthcare *provider*. Sometimes, it is an estimated price that takes into account special arrangements with *your* healthcare *provider* or *provider* group that may include types of settlements, incentive payments and/or other credits or *charges*. Occasionally, it may be an average price, based on a discount that results in expected average savings for similar types of healthcare *providers* after taking into account the same types of transactions as with an estimated price.

Estimated pricing and average pricing also take into account adjustments to correct for over- or underestimation of past pricing of *claims*, as noted above. However, such adjustments will not affect the price we have used for *your claim* because they will not be applied after a *claim* has already been paid.

**Negotiated (non–BlueCard Program) Arrangements**

With respect to one or more Host Blues, in certain instances, instead of using the *BlueCard* Program, we may process your *claims* for *covered healthcare services* through Negotiated Arrangements for National Accounts.

The amount you pay for *covered healthcare services* under this arrangement will be calculated based on the negotiated price (refer to the description of negotiated price in the BlueCard® Program section above) made available to us by the Host Blue.

**Value-Based Programs**

If you receive *covered healthcare services* under a Value-Based Program inside a Host Blue's service area, you will not be responsible for paying any of the *Provider* Incentives, risk-sharing, and/or Care Coordinator Fees that are a part of such an arrangement, except when a Host Blue passes these fees to us through average pricing or fee schedule adjustments.

The following defined terms only apply to the *BlueCard* section only:

- Care Coordinator Fee is a fixed amount paid by us to *providers* periodically for Care Coordination under a Value-Based Program.
- Care Coordination is organized, information-driven patient care activities intended to facilitate the appropriate responses to an enrolled *member's* healthcare needs across the continuum of care.

- Value-Based Program (VBP) is an outcomes-based payment arrangement and/or a coordinated care model facilitated with one or more local *providers* that is evaluated against cost and quality metrics/factors and is reflected in *provider* payment.
- *Provider* Incentive is an additional amount of compensation paid to a healthcare *provider* by us, based on the *provider's* compliance with agreed-upon procedural and/or outcome measures for a particular group of covered persons.

**Inter-Plan Programs: Federal/State Taxes/Surcharges/Fees**

Federal or state laws or regulations may require a surcharge, tax or other fee that applies to insured accounts. If applicable, we will include any such surcharge, tax or other fee as part of the *claim* charge passed on to you.

**Nonparticipating Providers Outside Our Service Area**

- **Enrolled Member Liability Calculation**

When *covered healthcare services* are provided outside of BCBSRI service area by nonparticipating *providers*, the amount an enrolled *member* pays for such services will generally be based on either the Host Blue's nonparticipating *provider* local payment or the pricing arrangements required by applicable law. In these situations, the enrolled *member* may be responsible for the difference between the amount that the nonparticipating *provider* bills and the payment BCBSRI will make for the covered services as set forth in this paragraph. Payments for out-of-*network* emergency services are governed by applicable federal and state law.

- **Exceptions**

In some exception cases, BCBSRI may pay claims from nonparticipating healthcare *providers* outside of BCBSRI service area based on the *provider's* billed charge. This may occur in situations where an enrolled *member* did not have reasonable access to a participating *provider*, as determined by BCBSRI. In other exception cases, BCBSRI may pay such claims based on the payment BCBSRI would pay to a local nonparticipating *provider* (as described in the above subsection "How Non-network Providers Are Paid"). This may occur where the Host Blue's corresponding payment would be more than BCBSRI in-service area nonparticipating *provider* payment. BCBSRI may choose to negotiate a payment with such a *provider* on an exception basis.

Unless otherwise stated, in any of these exception situations, the enrolled member may be responsible for the difference between the amount that the nonparticipating healthcare *provider* bills and payment BCBSRI will make for the covered services as set forth in this paragraph.

**Blue Cross Blue Shield Global Core**

If you are outside the United States (hereinafter "*BlueCard* service area"), you may be able to take advantage of the Blue Cross Blue Shield Global Core when accessing *covered healthcare services*. The Blue Cross Blue Shield Global Core is unlike the *BlueCard* Program available in the *BlueCard* service area in certain ways. For instance, although the Blue Cross Blue Shield Global Core assists you with accessing a *network* of *inpatient*, *outpatient* and professional *providers*, the *network* is not served by a Host Blue. As such, when you receive care from *providers* outside the *BlueCard* service area, you will typically have to pay the *providers* and submit the *claims* yourself to obtain reimbursement for these services.

- *Inpatient* Services: In most cases, if you contact the service center for assistance, *hospitals* will not require you to pay for covered *inpatient* services, except for your cost-share amounts/*deductibles*, coinsurance, etc. In such cases, the *hospital* will submit your *claims* to the service center to begin *claims* processing. However, if you paid in full at the time of service, you must submit a *claim* to receive reimbursement for *covered healthcare services*. *Preauthorization* may be required for non-*emergency inpatient* services.

- *Outpatient* Services: *Physicians*, *urgent care centers* and other *outpatient providers* located outside the *BlueCard* service area will typically require you to pay in full at the time of service. You must submit a *claim* to obtain reimbursement for *covered healthcare services*. *Preauthorization* may be required for *outpatient* services.

- Submitting a Blue Cross Blue Shield Global Core Claim: When you pay for *covered healthcare services* outside the *BlueCard* service area, you must submit a *claim* to obtain reimbursement. For institutional and professional *claims*, you should complete a Blue Cross Blue Shield Global Core *claim* form and send the *claim* form with the *provider's* itemized bill(s) to the service center (the address is on the form) to initiate *claims* processing. Following the instructions on the *claim* form will help ensure timely processing of your *claim*. The *claim* form is available from BCBSRI, the service center or online at www.bcbsglobalcore.com. If you need assistance with your *claim* submission, you should call the service center at 1.800.810.BLUE (2583) or call collect at 1.804.673.1177, 24 hours a day, seven days a week.

## SECTION 7: COORDINATION OF BENEFITS AND SUBROGATION

## Introduction

This Coordination of *Benefits* (COB) provision applies when you or your covered dependents have healthcare coverage under more than one *plan*.

This *plan* follows the COB rules of payment issued by the Rhode Island Office of the Health Insurance Commissioner (OHIC) in Regulation 48, and the National Association of Insurance Commissioners (NAIC). From time to time these rules may change before a revised *agreement* can be provided. The most current COB regulations in effect at the time of coordination are used to determine the *benefits* available to you.

When this provision applies, the order of *benefit* determination rules described below will determine whether we pay *benefits* before or after the *benefits* of another *plan*.

## Definitions

The following definitions apply to this section. For additional definitions, see Section 8. When the defined term is used, it will be *italicized* in this section.

**ALLOWABLE EXPENSE** means a necessary, reasonable and customary item of expense for health care, which is:
- covered at least in part under one or more *plans* covering the person for whom the *claim* is made; and
- incurred while this *plan* is in force.

When a *plan* provides healthcare coverage in the form of services, the reasonable cash value of each service is considered as both an *allowable expense* and a *benefit* paid.

Vision care services covered under other *plans* are not considered an *allowable expense* under this *plan*.

**PLAN** means any of the following that provides *benefits* or services for medical, pharmacy, or dental care treatment. If separate contracts are used to provide coordinated coverage for *members* of a group, the separate contracts are considered parts of the same *plan* and there is no COB among those separate contracts.

1. *Plan* includes: group and non-group insurance contracts, health maintenance organization (HMO) contracts, closed panel *plans* or other forms of group or group-type coverage (whether insured or uninsured); medical care components of long-term care contracts, such as skilled nursing care; medical *benefits* under group or individual automobile contracts; and Medicare or any other federal governmental *plan*, as permitted by law.

2. *Plan* does not include: *hospital* indemnity coverage insurance or other fixed indemnity coverage; accident only coverage; specified disease or specified accident coverage; limited *benefit* health coverage, as defined by state law; school accident type coverage; *benefits* for non-medical components of long-term care policies; Medicare supplement policies; Medicaid policies; or coverage under other federal governmental *plans*, unless permitted by law.

Each contract for coverage under numbers 1 or 2 above is a separate *plan*. If a *plan* has two parts and COB rules apply only to one of the two, each of the parts is treated as a separate *plan*.

**PRIMARY PLAN (*PRIMARY*)** means a *plan* whose *benefits* for a person's healthcare coverage must be determined without taking the existence of any other *plan* into consideration.

**SECONDARY PLAN (*SECONDARY*)** means a *plan* that is not a *primary plan*.

## When You Have More Than One Plan with BCBSRI

If you are covered under more than one *plan* with us, you are entitled to covered *benefits* under both *plans*. If one *plan* has a *benefit* that the other(s) does not, you are entitled to coverage under the *plan* that has the *benefit*. The total payments you receive will never be more than the total *allowable expense* for the services you receive.

## When You Are Covered by More Than One Insurer

A healthcare coverage *plan* is considered the *primary plan* and its *benefits* will be paid first if:
*   the *plan* does not use similar COB rules to determine coverage; or
*   the *plan* does not have a COB provision; or
*   The *plan* has similar the COB rules and is determined to be *primary* under the order of *benefit* determination rules described below.

*Benefits* under another *plan* include all *benefits* that would be paid if *claims* had been initially submitted under that *plan*.

The following factors are used to determine which *plan* is *primary* and which *plan* is *secondary*:
*   if you are the main *subscriber* or a dependent;
*   if you are married, which spouse was born earlier in the year;
*   the length of time each spouse has been covered under the *plan*;
*   if a parental custody or divorce decree applies; or
*   if Medicare is your other coverage then Medicare guidelines will apply.

These factors make up the order of *benefit* determination rules, described in greater detail below:

**(1)      Non-dependent/Dependent**

If you are covered under a *plan* and you are the main *subscriber*, the *benefits* of that *plan* will be determined before the *benefits* of a *plan* that covers you as a dependent. If, however, you are a Medicare beneficiary, then, in some instances, Medicare will be *secondary* and the *plan*, which covers you as the main *subscriber* or as a dependent, will be primary.

If one of *your* dependents covered under this *plan* is a student, and has additional coverage through a student *plan*, then the *benefits* from the student *plan* will be determined before the *benefits* under this *plan*.

**(2)      Dependent Child**

If dependent children are covered under separate *plans* of more than one person, whether a parent or guardian, *benefits* for the child will be determined in the following order:

- the *benefits* of the *plan* covering the parent born earlier in the year will be determined before those of the parent whose birthday (month and day only) falls later in the year;
- if both parents have the same birthday, the *benefits* of the *plan* that covered the parent longer are determined before those of the *plan* which covered the other parent for a shorter period of time;
- if the other *plan* does not determine *benefits* according to the parents' birth dates, but by parents' gender instead, the other *plan's* gender rule will determine the order of *benefits*.

**(3)      Dependent Child/Parents Separated or Divorced**

If two or more *plans* cover a person as a dependent child of divorced or separated parents, the *plan* responsible to cover *benefits* for the child will be determined in the following order:

- first, the *plan* of the parent with custody of the child;
- then, the *plan* of the spouse of the parent with custody of the child; and
- finally, the *plan* of the parent not having custody of the child.

If the terms of a court decree state that:

- one of the parents is responsible for the healthcare expenses of the child, and the entity obligated to pay or provide the parent's *benefits* under that parent's *plan* has actual knowledge of those terms, the *benefits* of that *plan* are determined first and the *benefits* of the *plan* of the other parent are the *secondary plan*.
- both parents share joint custody, without stating that one of the parents is responsible for the healthcare expenses of the child, the *plans* covering the child will follow the order of *benefit* determination rules outlined above.

**(4)    Active/Inactive Employee**

If you are covered under another *plan* as an active employee, *your benefits* and those of *your* dependents under that *plan* will be determined before *benefits* under this *plan*. The *plan* covering the active employee and dependents will be the *primary plan*. The *plan* covering that same employee as inactive (including those who are retired or have been laid off) will be the *secondary plan* for that employee and dependents.

**(5)    COBRA/Rhode Island Extended Benefits (RIEB)**

If this *plan* is provided to you under COBRA or RIEB, and you are covered under another *plan* as an employee, retiree, or dependent of an employee or retiree, the *plan* covering you as an employee, retiree or dependent of an employee or retiree will be *primary* and the COBRA or RIEB *plan* will be the *secondary plan*.

**(6)    Longer/Shorter Length of Coverage**

If none of the above rules determine the order of *benefits*, the *benefits* of the *plan* that covered a *member* or *subscriber* longer are determined before those of the *plan* that covered that person for the shorter term.

**How We Calculate Benefits Under These Rules**

When this *plan* is *secondary*, it may reduce its *benefits* so that the total *benefits* paid or provided by all *plans* are not more than the total *allowable expenses*. In determining the amount to be paid for any *claim*, the *secondary plan* will calculate the *benefits* it would have paid in the absence of other healthcare coverage and apply that calculated amount to any *allowable expense* under its *plan* that is unpaid by the *primary plan*. The *secondary plan* may then reduce its payment by the amount so that, when combined with the amount paid by the *primary plan*, the total *benefits* paid or provided by all *plans* for the *claim* do not exceed the total *allowable expense* for that *claim*. In addition, the *secondary plan* shall credit to its *plan deductible* any amounts it would have credited to its *deductible* in the absence of other healthcare coverage.

## Our Right to Make Payments and Recover Overpayments

If payments which should have been made by us according to this provision have actually been made by another organization, we have the right to pay those organizations the amounts we decide are necessary to satisfy the rules of this provision. These amounts are considered *benefits* provided under this *plan* and we will not have to pay those amounts again.

If we make payments for *allowable expenses*, which are more than the maximum amount needed to satisfy the conditions of this provision, we have the right to recover the excess amounts from:

- the person to or for whom the payments were made;
- any other insurers; and/or
- any other organizations (as we decide).

As the *subscriber*, you agree to pay back any excess amount paid, provide information and assistance, or do whatever is necessary to aid in the recovery of this excess amount. The amount of payments made includes the reasonable cash value of any *benefits* provided in the form of services.

## Our Right of Subrogation and/or Reimbursement

**Subrogation**

You may have a legal right to recover some or all of the costs of *y*our health care from someone else called a third party. Third party means any person or company that is, or could be, responsible for the costs of injuries or illness to you or any other dependent. This includes such costs to you or any other dependent covered under this *plan*.

If we pay for costs a third party is responsible for, we reserve the right to recover up to the full amount we paid. Our rights of recovery apply to any payment made to you or due to you from any source. This includes, but is not limited to:

- payment made or due by a third party;
- payments made or due by any insurance company on behalf of the third party;
- any payments or rewards made or due under an uninsured or underinsured motorist coverage policy;
- any disability award or settlement payment made or due;
- medical coverage payments made or due under any automobile policy;
- premises or homeowners' medical coverage payments made or due;
- premises or homeowners' insurance coverage; and
- any other payments made or due from a source intended to compensate you for third party injuries.

We have the right to recover those payments made for *covered healthcare services*. We can do this with or without *y*our consent. Our right has priority, except as otherwise provided by law. We can recover against the total amount of any recovery, regardless of whether all or part of the recovery is for medical expenses or the recovery is less than the amount needed to reimburse you fully for the illness or injury.

We may contract with a third party or subrogation agent to administer subrogation recoveries.

**Reimbursement**

In addition to the subrogation rights described above, we also have reimbursement rights. If you recover money by lawsuit, settlement, or otherwise, we may seek reimbursement from you for *covered healthcare services* for which we paid or will pay. Our reimbursement right applies when you received payment from a third party for *covered healthcare services* we provided under this *plan*, as described in the subrogation section above.

We can seek from you reimbursement up to the amount of any payment made to you, whether

- all or part of the payment to you was designated, allocated, or characterized as payment for medical expenses; or
- the payment is for an amount less than that necessary to compensate you fully for the illness or injury.

We may offset future payments under this *plan* until we have been paid an amount equal to what you were paid by a third party for the cost of the *covered healthcare services* that we paid or will pay. If we pay legal fees to recover money from you, we can recover those costs from you as well. The amount you must pay us cannot be reduced by any legal costs you have paid.

If you receive money in a settlement or a judgment and do not agree with our right to reimbursement, you must keep an amount equal to our *claim* in a separate account until the dispute is resolved. If a court orders that money be paid to you or any third party before *y*our lawsuit is resolved, you must tell us, at that time, so we can respond in court.

**Member Cooperation**
You further agree:
- to notify us promptly and in writing when notice is given to any third party or representative of a third party of the intention to investigate or pursue a *claim* to recover damages or obtain compensation;
- to cooperate with us and provide us with requested information;
- to do whatever is necessary to secure our rights of subrogation and reimbursement under this *plan*;
- to assign us any *benefits* you may be entitled to receive from a third party. *Y*our assignment is up to the cost of the *covered healthcare services*;
- to give us a first priority lien on any recovery, settlement, or judgment or other source of compensation which may be had by any third party. You agree to do this to the extent of the full cost of all *covered healthcare services* associated with third party responsibility;
- to do nothing to prejudice our rights as set forth above. This includes, but is not limited to, refraining from making any settlement or recovery which specifically attempts to reduce or exclude the full cost of the *covered healthcare services* provided by this *plan*;
- to serve as a constructive trustee for the benefit of this *plan* over any settlement or recovery funds received as a result of third party responsibility;
- that we may recover the full cost of the *covered healthcare services* provided by this *plan* without regard to any *claim* of fault on *y*our party, whether by comparative negligence or otherwise;
- that no court costs or attorney fees may be deducted from our recovery;
- that we are not required to pay or contribute to paying court costs or attorney's fees for the attorney hired by you to pursue *y*our *claim* or lawsuit against any third party; and

- that in the event you or *y*our representative fails to cooperate with us, you shall be responsible for all costs associated with *covered healthcare services* provided by this *plan*, in addition to costs and attorney fees incurred by this *plan* in obtaining repayment.

## SECTION 8: GLOSSARY

When a defined term is used, it will be *italicized*.

***AGREEMENT*** **(*SUBSCRIBER AGREEMENT*) means** this document. It is a legal contract between you and BCBSRI.

***ALLOWANCE*** is the amount a *network provider* has agreed to accept for a *covered healthcare service* based on an agreed upon fee schedule. For information about how we pay for healthcare services outside of our service area, please see How *BlueCard Providers* Are Paid: Coverage for Services Provided Outside of the Service Area in Section 6.

When you receive *covered healthcare services* from a *network provider*, the *provider* has agreed to accept our payment for *covered healthcare services* as payment in full. You will be responsible to pay your *copayments*, *deductibles* (if any), and the difference between the *benefit limit* and our *allowance*, if any.

When you receive *covered healthcare services* from a *non-network provider*, you will be responsible for the *provider's charge*. Our reimbursement will be based on the lesser of our *allowance*, the *non-network provider's charge*, or the *benefit limit*, less any *copayments* and *deductibles*.

***AMBULATORY SURGICAL CENTER*** (***FREESTANDING)*** means a state licensed facility, which is equipped to provide surgery services on an *outpatient* basis.

***BENEFIT LIMIT*** means the total *benefit* allowed under this *plan* for a *covered healthcare service*. The *benefit limit* may apply to the amount we pay, the duration, or the number of visits for a *covered healthcare service*.

***BENEFITS*** means any treatment, facility, equipment, drug, device, supply or service that you receive reimbursement for under a *plan*.

***BLUECARD*** is a national program in which we and other Blue Cross and Blue Shield *plans* participate. See How *BlueCard Providers* Are Paid: Coverage for Services Provided Outside of the Service Area in Section 6 for details.

***BLUE DISTINCTION CENTERS*** are *network providers* who are recognized by the Blue Cross and Blue Shield Association for delivering high-quality, effective, cost-efficient specialty care.

***CHARGES*** means the amount billed by any healthcare *provider* (e.g., *hospital*, *physician*, laboratory, etc.) for *covered healthcare services* without the application of any discount or negotiated fee arrangement.

***CLAIM*** means a request that *benefits* of a *plan* be provided or paid.

**COPAYMENT** means either a defined dollar amount or a percentage of our *allowance* that you must pay for certain *covered healthcare services*.

**COVERED HEALTHCARE SERVICES** means any service, treatment, procedure, facility, equipment, drug, device, or supply that we have reviewed and determined is eligible for reimbursement under this *plan*.

**DEDUCTIBLE** means the amount that you must pay each *plan year* before we begin to pay for certain *covered healthcare services*. See the Summary of Medical *Benefits* for *your plan year deductible, benefit limits* and to determine which services are subject to the *deductible*.

**DEVELOPMENTAL SERVICES** means therapies, typically provided by a qualified professional using a treatment plan, that are intended to lessen deficiencies in normal age appropriate function. The therapies generally are meant to limit deficiencies related to injury or disease that have been present since birth. This is true even if the deficiency was detected during a later developmental stage. The deficiency may be the result of injury or disease during the developmental period. *Developmental services* are applied for sustained periods of time to promote acceleration in developmentally related functional capacity. This *plan* covers *developmental services* unless specifically listed as not covered.

**EMERGENCY** means a medical condition manifesting itself by acute symptoms. The acute symptoms are severe enough (including severe pain) that a prudent layperson, with an average knowledge of health and medicine, could reasonably expect that without immediate medical attention serious jeopardy to the health of a person (or, with respect to a pregnant woman, the health of the woman or her unborn child), serious impairment to bodily functions, or serious dysfunction of any bodily organ or part could result.

**EXPERIMENTAL OR INVESTIGATIONAL** means any healthcare service that has progressed to limited human application, but has not been recognized as proven and effective in clinical medicine. See *Experimental or Investigational* Services in Section 3 for a more detailed description of the type of healthcare services we consider *experimental or investigational*.

**FORMULARY** means a list of covered prescription drugs provided under this *plan*. The *formulary* includes generic, preferred brand name, non-preferred brand name, and *specialty prescription drugs*.

**HABILITATIVE SERVICES (HABILITATIVE)** mean healthcare services that help a person keep, learn, or improve skills and functioning for daily living. Examples include therapy for a child who is not walking or talking at the expected age. These services may include physical and occupational therapy, speech therapy and other services performed in a variety of *inpatient* and/or *outpatient* settings for people with disabilities.

*HOSPITAL* means a facility:

- that provides medical and surgical care for patients who have acute illnesses or injuries; and
- is either listed as a *hospital* by the American *Hospital* Association (AHA) or accredited by the Joint Commission on Accreditation of Healthcare Organizations (JCAHO).

  o *GENERAL HOSPITAL* means a *hospital* that is designed to care for medical and surgical patients with acute illness or injury.

  o *SPECIALTY HOSPITAL* means a *hospital* or the specialty unit of a *general hospital* that is licensed by the state. It must be designed to care for patients with injuries or special illnesses. This includes, but is not limited to, a long-term acute care unit, an acute mental health or acute short-term rehabilitation unit or *hospital*.

*Hospital* does not mean:

- convalescent home;
- rest home;
- nursing home;
- home for the aged;
- school and college infirmary;
- *residential treatment facility;*
- long-term care facility;
- *urgent care center* or *freestanding ambulatory surgical center*;
- facility providing mainly custodial, educational or *rehabilitative* care; or
- a section of a *hospital* used for custodial, educational or *rehabilitative* care, even if accredited by the JCAHO or listed in the AHA directory.

*INPATIENT* means a person who is admitted to a *hospital* or other licensed healthcare facility for care, and is classified as *inpatient*. You are not *inpatient* when you are in a *hospital* or other health care facility solely for observation, even though you may use a bed or stay overnight. See Observation Services in Section 3 for additional information.

*LEGEND DRUG* is a drug that federal law does not allow the dispensing of without a prescription.

*MAXIMUM OUT-OF-POCKET EXPENSE* means the total amount you pay each *plan year* for *covered healthcare services*. We will pay up to 100% of our *allowance* for the *covered healthcare service* for the rest of the *plan year* once you have met the *maximum out-of-pocket expense*. See the Summary of Medical *Benefits* for your *maximum out-of-pocket expenses*.

**MEDICAL PRESCRIPTION DRUGS** are prescription drugs that require administration (or the FDA approved recommendation is for administration) by a licensed healthcare *provider* (other than a pharmacist). These *medical prescription drugs* include, but are not limited to, medications administered by infusion, injection, or inhalation, as well as nasal, topical or transdermal administered medications. *Medical prescription drugs* are covered as a medical *benefit*.

**MEDICALLY NECESSARY (MEDICAL NECESSITY)** means that the healthcare services provided to treat *your* illness or injury, upon review by BCBSRI are:
- appropriate and effective for the diagnosis, treatment, or care of the condition, disease, ailment or injury for which it is prescribed or performed;
- appropriate with regard to generally accepted standards of medical practice within the medical community or scientific evidence;
- not primarily for the convenience of the *member*, the *member's* family or *provider* of such *member*; and
- the most appropriate in terms of type, amount, frequency, setting, duration, supplies or level of service, which can safely be provided to the *member* (i.e. no less expensive professionally acceptable alternative, is available).

We will make a determination whether a healthcare service is *medically necessary*. You have the right to appeal our determination or to take legal action as described in Section 7.0. We review *medical necessity* on a case-by-case basis.

The fact that *your provider* performed or prescribed a procedure or treatment does not mean that it is *medically necessary*. We determine *medical necessity* solely for purpose of *claims* payment under this *plan*.

**MEMBER** means a person enrolled in this *plan*, whether a *subscriber* or other enrolled person.

**NETWORK** is a group of *providers* that have entered into contracts with us or other Blue Cross and Blue Shield *plans*.

**NETWORK AUTHORIZATION** is the process of obtaining an approval from us to receive *covered healthcare services* from a *non-network provider*.

**NETWORK PHARMACY** is a retail, mail order or specialty pharmacy that has a contract to accept our *pharmacy allowance* for prescription drugs and diabetic equipment or supplies covered under this *plan*.

**NETWORK PROVIDER** is a *provider* that has entered into a contract with us or other Blue Cross and Blue Shield *plans*.

**NEW SERVICE** means a service, treatment, procedure, facility, equipment, drug, device, or supply we previously have not reviewed to determine if the service is eligible for coverage under this *plan*.

**NON-NETWORK PHARMACY** is any pharmacy that has not entered into a contract to accept our *pharmacy allowance* for prescription drugs and diabetic equipment or supplies covered under this *plan*.

**NON-NETWORK PROVIDER** is a *provider* that has not entered into a contract with us or any other Blue Cross and Blue Shield *plan*.

**OUTPATIENT** means a person who is receiving care other than on an *inpatient* basis, such as:
- in a *provider's* office;
- in an *ambulatory surgical center* or facility;
- in an *emergency* room; or
- in a clinic.

**PHARMACY ALLOWANCE** means the lower of:
- the amount the pharmacy *charges* for the prescription drug;
- the amount we or our PBM have negotiated with a *network pharmacy*; or
- the maximum amount we pay any pharmacy for that prescription drug.

**PHYSICIAN** means any person licensed and registered as an allopathic or osteopathic physician (i.e. D.O or M.D.). For purposes of this *plan*, the term *physician* also includes a licensed *dentist*, podiatrist, chiropractic physician, nurse practitioner, or a physician assistant.

**PLAN** means any health insurance *benefit* package provided by an organization.

**PLAN YEAR** means a twelve (12) month period, determined by your employer. *Benefit limits*, *deductibles* (if any), and your *maximum out-of-pocket expenses* are calculated under this *plan* based on the *plan year*.

**PREAUTHORIZATION** is the process of determining whether a *covered healthcare service* is *medically necessary* before you receive the service. *Preauthorization* determines whether a healthcare service qualifies for *benefit* payment, and is not a professional medical judgment. The *preauthorization* process varies depending on whether the service is a medical procedure or a prescription drug.

**PREVENTIVE CARE SERVICES** means *covered healthcare services* performed to prevent the occurrence of disease as defined by the Affordable Care Act (ACA). See Preventive Care and Early Detection Services in Section 3.

**PRIMARY CARE PROVIDER (PCP)** means, for the purpose of this *plan*, professional *providers* that are family practitioners, internists, and pediatricians. For the purpose of this *plan*, gynecologists, obstetricians, nurse practitioners, and physician assistants may be credentialed as *PCPs*. To find a *PCP* or check that your *provider* is a *PCP*, please use the "Find a Doctor" tool on our website or call Customer Service.

**PROGRAM** means a collection of *covered healthcare services*, billed by one *provider*, which can be carried out in many settings and by different *providers*. This *plan* does not cover *programs* unless specifically listed as covered.

**PROVIDER** means an individual or entity licensed under the laws of the State of Rhode Island or another state to furnish healthcare services. For purposes of this *plan*, the term *provider* includes a *physician* and a *hospital*. It also means individuals whose services we must cover under Title 27, Chapters 19 and 20 of the R.I. General Laws, as amended from time to time.

A *provider* includes:
- midwives;
- certified registered nurse practitioners;
- psychiatric and behavioral health nurse clinical specialists practicing in collaboration with or in the employ of a *physician*;
- counselors in behavioral health; and
- therapists in marriage and family practice.

Healthcare services are only covered if those services are provided within the scope of the *provider's* license.

**REHABILITATIVE SERVICES (REHABILITATIVE)** means healthcare services that help a person keep, get back, or improve skills and functioning for daily living that have been lost or impaired due to being sick, hurt, or disabled. These services may include physical and occupational therapy, speech-language pathology, and psychiatric rehabilitation services in a variety of *inpatient* and/or *outpatient* settings. These acute short-term therapies can only be provided by a qualified professional.

**RESIDENTIAL TREATMENT FACILITY** means a facility which provides a treatment *program* for behavioral health services and is established and operated in accordance with applicable state laws for residential treatment *programs*.

**RETAIL CLINIC** is a medical clinic licensed to provide limited services, generally located in a retail store, supermarket or pharmacy. A *retail clinic* provides vaccinations and treats uncomplicated minor illnesses such as colds, ear infections, minor wounds or abrasions.

**SOUND NATURAL TEETH** means teeth that:
- are free of active or chronic clinical decay;
- have at least fifty percent (50%) bony support;
- are functional in the arch; and
- have not been excessively weakened by multiple dental procedures.

***SPECIALTY PRESCRIPTION DRUG*** is a type of prescription drug listed on our *formulary* that generally is identified by, but not limited to, features such as:
- being produced by DNA technology;
- treats chronic or long term disease;
- requires customized clinical monitoring and patient support; and
- needs special handling.

***SUBSCRIBER*** is the person who enrolls in this *plan* and signs the application on behalf of himself or herself and on behalf of the other family members listed as eligible on the application.

***SUBSTANCE USE DISORDER*** means the diagnosis and treatment of alcoholism and substance-related and addictive disorders that are listed in the current Diagnostic and Statistical Manual of the American Psychiatric Association (DSM) or the International Classification of Disease Manual (ICO) published by the World Health Organization.

***URGENT CARE CENTER*** means a healthcare center either affiliated with a *hospital* or other institution or independently owned and operated. These centers may also be referred to as walk-in centers.

***UTILIZATION REVIEW*** means the prospective (prior to), concurrent (during) or retrospective (after) review of any service to determine whether such service was properly authorized, constitutes a *medically necessary* service for purposes of *benefit* payment, and is a *covered healthcare service* under this *plan*.

***WE, US,*** and ***OUR*** means Blue Cross & Blue Shield of Rhode Island. WE, US, or OUR will have the same meaning whether *italicized* or not.

***YOU*** and **YOUR** means the *subscriber* or *member* enrolled for coverage under this *agreement*. YOU and YOUR will have the same meaning whether *italicized* or not.

## SECTION 9: CONTACT INFORMATION

| Type | Medical | Pharmacy |
|---|---|---|
| Telephone Numbers: | Customer Service and _Preauthorization_: In state: 401-459-5000: Out of state: 1-800-639-2227: Hearing impaired: 711  Appeals: 401-459-5784  _Preauthorization_ for Behavioral Health services: 1-800-274-2958 | Customer Service: In state: 401-459-5000: Out of state: 1-800-639-2227: Hearing impaired: 711  Home Delivery (Mail Order): 1-855-457-1204  _Preauthorization_: 1-855-457-0759 |
| Website: | www.bcbsri.com | www.bcbsri.com |
| Fax: | Appeals: 401-459-5005 | _Preauthorization_ and Appeals: 1-855-212-8110 |
| Mailing address to file a claim: | Blue Cross & Blue Shield of Rhode Island _Claims_ Department 500 Exchange Street Providence, RI 02903 | Prime Therapeutics, LLC. P.O. Box 21870 Lehigh Valley, PA 18002-1870 |
| Mailing address to submit an appeal: | Blue Cross & Blue Shield of Rhode Island Grievance and Appeals Unit 500 Exchange Street Providence, RI 02903 | Prime Therapeutics, LLC. Clinical Review Dept. 1305 Corporate Center Drive Eagan, MN 55121 |

BCBSRI Customer Service Department Call Center hours are:
- Monday thru Friday 8:00 AM to 8:00 PM
- Saturday thru Sunday 8:00 AM to 12:00 PM

**Your Blue Store**
You may also visit one of our retail walk-in service centers. Please check our website for specific locations and business hours.

**How To Find a Doctor or Other Providers**
To locate a _network provider_ please use the "Find A Doctor" feature on our website or call our Customer Service Department.

**Emergency Care**

If you need *emergency* care, call 911 or go to the nearest *hospital emergency* room. If you are traveling outside our service area and need urgent care, call the number provided in the *BlueCard* Access section above. You may also visit our website and use the "Find A Doctor" feature to find a *BlueCard provider*.

## SECTION 10: NOTICES AND DISCLOSURES

### Behavioral Health Care Parity

This *plan* provides parity in *benefits* for behavioral health services. This means that coverage of *benefits* for mental health and *substance use disorders* is generally comparable to, and not more restrictive than, the *benefits* for physical health.

Financial requirements, such as *deductibles*, *copayments*, or *benefit limits* that may apply to a behavioral health service *benefit* category, such as *inpatient* services, are not more restrictive than those that apply to most medical *benefits* within the same category.

Different levels of financial requirements to different tiers of prescription drugs are applied without regard to whether a prescription drug is generally prescribed for physical, mental health, or *substance use disorders*.

Other requirements are imposed that are not expressed numerically, such as *preauthorization*, concurrent *utilization review*, and retrospective *utilization review*. These are applied to behavioral health services in comparable ways as medical *benefits*.

### Genetic Information

This *plan* does not limit *y*our coverage based on genetic information. We will not:
- adjust premiums based on genetic information;
- request or require an individual or family members of an individual to have a genetic test; or
- collect genetic information from an individual or family members of an individual before or in connection with enrollment under this *plan* or at any time for underwriting purposes.

### Orally Administered Anticancer Medication

In accordance with RIGL § 27-20-67, prescription drug coverage for orally administered anticancer medications is provided at a level no less favorable than coverage for intravenously administered or injected cancer medications covered under your medical *benefit*.

### Our Right to Receive and Release Information About You

We are committed to maintaining the confidentiality of *y*our healthcare information. However, in order for us to make available quality, cost-effective healthcare coverage to you, we may release and receive information about *y*our health, treatment, and condition to or from authorized *providers* and insurance companies, among others. We may give or get this information, as permitted by law, for certain purposes, including, but not limited to:
- adjudicating health insurance *claims*;
- administration of *claim* payments;
- healthcare operations;
- case management and *utilization review*;
- coordination of healthcare coverage; and
- health oversight activities.

Our release of information about you is regulated by law. Please see the Rhode Island Confidentiality of HealthCare Communications and Information Act, R.I. Gen. Laws §§ 5-37.3-1 et seq. the Health Insurance Portability and Accountability Act of 1996, as amended by the Health Information Technology for Economic and Clinical Health Act, and implementing regulations, 45 C.F.R. §§ 160.101 et seq. (collectively "HIPAA"), the Gramm-Leach-Bliley Financial Modernization Act, 15 U.S.C. §§ 6801-6908, the Rhode Island Office of the Health Insurance Commissioner (OHIC) Regulation 100.

## Statement of Rights Under the Newborns' and Mothers' Health Protection Act

Under federal law, group health *plans* and health insurance issuers offering group healthcare coverage generally may not restrict *benefits* for any *hospital* length of stay in connection with childbirth for the mother or newborn child to less than forty-eight (48) hours following a vaginal delivery, or less than ninety-six (96) hours following a delivery by cesarean section. However, the *plan* or issuer may pay for a shorter stay if the attending *provider* (e.g., your *physician*, nurse midwife, or *physician* assistant), after consultation with the mother, discharges the mother or newborn earlier.

Also, under federal law, *plans* and issuers may not set the level of *benefits* or out-of-pocket costs so that any later portion of the 48-hour (or 96-hour) stay is treated in a manner less favorable to the mother or newborn than any earlier portion of the stay.

In addition, a *plan* or issuer may not, under federal law, require that a *physician* or other healthcare *provider* obtain authorization for prescribing a length of stay of up to 48 hours (or 96 hours).

In accordance with R.I. General Law §27-20-17.1, this *plan* covers a minimum *inpatient hospital* stay of forty-eight (48) hours from the time of a vaginal delivery and ninety-six (96) hours from the time of a cesarean delivery:
- if the delivery occurs in a *hospital*, the *hospital* length of stay for the mother or newborn child begins at the time of delivery (or in the case of multiple births, at the time of the last delivery).
- if the delivery occurs outside a *hospital*, the *hospital* length of stay begins at the time the mother or newborn child is admitted to a *hospital* following childbirth.

Decisions to shorten *hospital* stays shall be made by the attending *physician* in consultation with and upon agreement with you. In those instances where you and your newborn child participate in an early discharge, you will be eligible for:
- up to two (2) home care visits by a skilled, specially trained registered nurse for you and/or your newborn child, (any additional visits may be reviewed for *medical necessity*); and
- a pediatric office visit within twenty-four (24) hours after discharge from the *hospital*.

## SECTION 11: PHARMACY  BENEFITS

The Summary of Pharmacy *Benefits* only applies to prescription drugs purchased at a retail, mail order, or specialty, pharmacy. For information about our pharmacy *network*, visit our website or call our Customer Service Department.

## <u>Required Preauthorization</u>

Prescription drugs for which *preauthorization*  is required are marked with the symbol (+) in the Summary of Pharmacy *Benefits*.

For details on how to obtain prescription drug *preauthorization*  for a prescription drug, see Prescription Drug *Preauthorization*  in Section 3 for details. If *preauthorization*  is not obtained,  you will be required to pay for the prescription drug at the pharmacy. You can ask us to consider reimbursement after you receive the prescription drug by following the prescription drug *preauthorization*  process. For a list of prescription drugs that require *preauthorization*,  visit our website or call our Customer Service Department.

**Four-Tier Copayment  Structure**

This prescription drug *plan formulary* has four-tiered *copayment* structure. The *copayment* for a prescription drug will vary by tier. The tier placement of a prescription drug on our *formulary* is subject to change. For more information about our *formulary*, and to see the tier placement of a particular prescription drug, visit our website or call our Customer Service Department.

Below indicates the tier structure for this *plan* and the amount that you are responsible to pay. You will be responsible for paying the lowest cost of either *your copayment*, the retail cost of the drug, or the *pharmacy allowance*.  We reserve the right not to accept manufacturer coupons, discount *plan* payments or other cost share assistance program payments for prescription drug *copayments* and/or *deductibles*.

## Summary of Pharmacy Benefits

| Covered Benefits | Network Pharmacy You Pay | Non-network Pharmacy You Pay |
|---|---|---|
| (+) Preauthorization is required for this service. Please see Preauthorization in Section 3 for more information. | | |
| Prescription Drugs, other than Specialty Prescription Drugs, and Diabetic Equipment and Supplies (which includes Glucometers, Test Strips, Lancet and Lancet Devices, Needles and Syringes, and Miscellaneous Supplies, calibration fluid): | | |
| When purchased at a Retail or Specialty Pharmacy: | Tier 1: $10 | Not Covered |
| For maintenance and non-maintenance prescription drugs, a *copayment* applies for each 30-day period (or portion thereof) within the prescribed dosing period.. | Tier 2: $30 | Not Covered |
| | Tier 3: $60 | Not Covered |
| For tiers 1, 2, and 3: Up to a 90-day supply of maintenance and non-maintenance prescription drugs is available at certain *network* retail pharmacies and a 365-day supply for contraceptive prescription drugs and devices is available at all *network* retail pharmacies. A copayment will apply for each 30-day supply. For more information about pharmacies offering this option, visit our website.  Prorated *copayments* for a shorter supply period may apply for *network pharmacy* only. See Prescription Drug section for details. | Tier 4: See *specialty prescription drug* section below. | Not Covered |
| When purchased at a Mail Order Pharmacy: | Tier 1: $25 | Not Covered |
| Up to a 90-day supply of maintenance and non-maintenance prescription drugs. | Tier 2: $75 | Not Covered |
| | Tier 3: $150 | Not Covered |
| | Tier 4: See *specialty prescription drug* section below. | Not Covered |
| Specialty Prescription Drugs (+) Prorated copayments for a shorter supply period may apply for *network pharmacy* only. See Prescription Drug section for details. | | |
| When purchased at a Specialty Pharmacy(+): For maintenance and non-maintenance prescription drugs, a *copayment* applies for each 30-day period (or portion thereof) within the prescribed dosing period.. | Tier 4: $60 | Not Covered |
| When purchased at a Retail Pharmacy(+): For maintenance and non-maintenance prescription drugs, a *copayment* applies for each 30-day period (or portion thereof) within the prescribed dosing period. . *Specialty Prescription Drugs* purchased at a r*etail* pharmacy will require a significantly higher out of pocket expense than if purchased from a Specialty Pharmacy.  Our reimbursement is based on the pharmacy allowance. | Tier 4: 50% | Not Covered |
| When purchased at a Mail Order Pharmacy: | Not Covered | Not Covered |

| Covered Benefits | Network Pharmacy | Non-network Pharmacy |
|---|---|---|
| (+) Preauthorization is required for this service. Please see Preauthorization in Section 3 for more information. | You Pay | You Pay |
| Infertility Prescription Drugs - Three (3) in-vitro cycles will be covered per *plan year* with a total of eight (8) in-vitro cycles covered in a ***member's*** lifetime. | | |
| When purchased at a Specialty, Mail Order, or Retail Pharmacy | Tier 1: 20% | Not Covered |
| | Tier 2: 20% | Not Covered |
| | Tier 3: 20% | Not Covered |
| When purchased at a Specialty Pharmacy (+) | Tier 4: 20% | Not Covered |
| When purchased at a Retail Pharmacy (+): Specialty Prescription Drugs purchased at a retail pharmacy will require a significantly higher out of pocket expense than if purchased from a specialty pharmacy.<br><br>Our reimbursement is based on the pharmacy allowance. | Tier 4: 20% | Not Covered |
| When purchased at a Mail Order Pharmacy: | Not Covered | Not Covered |
| Contraceptive Methods - Preventive<br>Coverage includes barrier method (diaphragm or cervical cap), hormonal method (birth control pill), and emergency contraception. For non-preventive contraceptive prescription drugs and devices the amount you pay will depend on the tier placement of the contraceptive prescription drug or device. See above for details. | | |
| When purchased at a Retail Pharmacy:<br><br>Up to a 365-day supply of contraceptive prescription drugs and devices is available at all *network* retail pharmacies. For more information about this option, visit our website. | $0 | Not Covered |
| When purchased at a Mail Order Pharmacy:<br><br>Up to a 90-day supply. | $0 | Not Covered |
| Over-the-counter (OTC) Preventive Drugs | | |
| When purchased at any pharmacy:<br><br>Must be prescribed by a physician. See Prescription Drug section for details. | $0 | Not Covered |
| Nicotine Replacement Therapy (NRT) and Smoking Cessation Prescription Drugs | | |
| When purchased at any pharmacy:<br><br>Must be prescribed by a physician. See Prescription Drug section for details. | Tier 1 Preventive: $0<br>Tier 1 Non-preventive: $10 | Not Covered |
| | Tier 2 Preventive: $0<br>Tier 2 Non-preventive: $30 | Not Covered |
| | Tier 3: $60 | Not Covered |
| | Tier 4: NRT and Smoking Cessation drugs are only placed in Tier 1, Tier 2, or Tier 3. See above. | Not Covered |
| When purchased at a Mail Order Pharmacy: | Not Covered | Not Covered |
| Prescription Drugs Administered by a Provider (other than a Pharmacy). | See the Summary of Medical *Benefits*. | See the Summary of Medical *Benefits*. |

## Prescription Drugs

**Pharmacy Benefits - Prescription Drugs and Diabetic Equipment or Supplies from a Pharmacy**

This *plan* covers prescription drugs listed on our *formulary* and diabetic equipment or supplies bought from a pharmacy as a pharmacy *benefit*.

These *benefits* are administered by our Pharmacy *Benefit* Manager (PBM).

Our *formulary* includes a tiered *copayment* structure and indicates that certain prescription drugs require *preauthorization*. If a prescription drug is not on our *formulary*, it is not covered. For specific coverage information or a copy of the most current *formulary*, please visit our website or call our Customer Service Department.

Prescription drugs and diabetic equipment or supplies are covered when dispensed using the following guidelines:

- the prescription must be *medically necessary*, consistent with the *physician's* diagnosis, ordered by a *physician* whose license allows him or her to order it, filled at a pharmacy whose license allows such a prescription to be filled, and filled according to state and federal laws;
- the prescription must consist of *legend drugs* that require a *physician's* prescription under law, or compound medications made up of at least one *legend drug* requiring a *physician's* prescription under law;
- the prescription must be dispensed at the proper place of service as determined by our Pharmacy and Therapeutics Committee. For example, certain prescription drugs may only be covered when obtained from a specialty pharmacy; and
- the prescription is limited to the quantities authorized by *your physician* not to exceed the quantity listed in the Summary of Pharmacy *Benefits*.

Prescription drugs are subject to the *benefit limits* and the amount you pay shown in the Summary of Pharmacy *Benefits*

**Prescription Drug Quantity Limits**

We limit the quantity of certain prescription drugs that you can get at one time for safety, cost-effectiveness and medical appropriateness reasons. Our clinical criteria for quantity limits are subject to our periodic review and modification.

Quantity limits may restrict:

- the amount of pills dispensed per thirty (30) day period;
- the number of prescriptions ordered in a specified time period; or
- the number of prescriptions ordered by a *provider*, or multiple *providers*.

Our *formulary* indicates which prescription drugs have a quantity limit.

**Types of Pharmacies**

Prescription drugs and diabetic equipment or supplies can be bought from the following types of pharmacies:

- Retail pharmacies. These dispense prescription drugs and diabetic equipment or supplies.
- Mail order pharmacies. These dispense maintenance and non-maintenance prescription drugs and diabetic equipment or supplies.
- Specialty pharmacies. These dispense *specialty prescription drugs*, defined as such on our *formulary*.

For information about our *network* retail, mail order, and specialty pharmacies, visit our website or call our Customer Service Department.

**Designated Prescription Drug Prescribers and Pharmacies**

We may limit your selection of a pharmacy to a single pharmacy location and/or a single prescribing *provider* or practice. Those *members* subject to this designation include, but are not limited to, *members* that have a history of:

- being prescribed prescription drugs by multiple *providers*;
- having prescriptions drugs filled at multiple pharmacies;
- being prescribed certain long acting opioids and other controlled substances, either in combination or separately, that suggests a need for monitoring due to:
  - quantities dispensed;
  - daily dosage range; or
  - the duration of therapy exceeds reasonable and established thresholds.

**The Amount You Pay for Prescription Drugs**

Our *formulary* includes a tiered *copayment* structure, which means the amount you pay for a prescription drug will vary by tier. See the Summary of Pharmacy *Benefits* for *y*our *copayment* structure, *benefit limits* and the amount you pay.

When you buy covered prescription drugs and diabetic equipment and supplies from a retail *network pharmacy*, you will be responsible for the *copayment* and *deductible* (if any) at the time of purchase. You will be responsible for paying the lower of *your copayment*, the retail cost of the drug, or the *pharmacy allowance*.

*Specialty prescription drugs* are generally obtained from a specialty pharmacy. If you buy a *specialty prescription drug* from a retail *network pharmacy*, you will be responsible for a significantly higher out of pocket expense than if you bought the specialty drug from a specialty pharmacy.

The amount you pay for the following prescription drugs is not subject to the standard tiered *copayment* structure:

- Contraceptive methods;
- Over-the-counter (OTC) preventive drugs;
- Nicotine replacement therapy (NRT) and smoking cessation prescription drugs;
- Infertility *specialty prescription drugs*; and
- Covered diabetic equipment or supplies bought at a *network pharmacy*.

See the Summary of Pharmacy *Benefits* for *benefit limits* and the amount you pay.

This *plan* allows for medication synchronization in accordance with R.I. General Law §27-18-50.1. This means a prorated *copayment* may be applied to qualifying covered prescription drugs used for chronic long-term conditions, when prescribed for less than a thirty (30) day supply and dispensed by a *network pharmacy*.

**Prescription Drug Preauthorization**

Prescription drug *preauthorization* is the advance approval that must be obtained before we provide coverage for certain prescription drugs. Prescription drug *preauthorization* is not a guarantee of payment, as the process does not take *benefit limits* into account.

Services that require prescription drug *preauthorization* are marked with a (+) symbol in the Summary of Pharmacy *Benefits*.

### How to Obtain Prescription Drug Preauthorization

To obtain prescription drug *preauthorization*, the prescribing *provider* must submit a prescription drug *preauthorization* request form. These forms are available on our website or by calling the number listed for the "Pharmacist" on the back of *your* ID card.

Prescription drugs that require *preauthorization* will only be approved when our clinical guidelines are met. These guidelines are based upon clinically appropriate criteria that ensure that the prescription drug is appropriate and cost-effective for the illness, injury or condition for which it has been prescribed.

We will send you written notification of the prescription drug *preauthorization* determination within fourteen (14) calendar days of the receipt of the request.

### How to Request an Expedited Preauthorization Review

You may request an expedited review if the circumstances are an *emergency*. Due to the urgent nature of an expedited review, *your* prescribing *provider* must either call or fax the completed form and indicate the urgent nature of the request. When an expedited *preauthorization* review is received, we will respond to you with a determination within seventy-two (72) hours or less.

If we deny *your* request for *preauthorization*, you can submit a medical appeal. See Appeals in Section 5 for information on how to file a medical appeal.

**Formulary Exception Process**

When a prescription drug is not on our *formulary*, you can request that this *plan* cover the drug as an exception.

To request a *formulary* exception, complete a Coverage Exception form (located on our website), contact our Customer Service Department, or have *your* prescribing *provider* submit a request for you. We will respond to you with a determination within seventy-two (72) hours following receipt of the request. For standard exception reviews, if the exception is approved, we will cover the prescription drug for the duration of the prescription, including refills.

**How to Request an Expedited Formulary Exception Review**

You may request an expedited review if a delay could significantly increase the risk to your health or your ability to regain maximum function, or you are undergoing a current course of treatment with a drug not on our *formulary*. Please indicate "urgent" on the Coverage Exception form or inform Customer Service of the urgent nature of your request. We will respond to you with a determination within twenty-four (24) hours following receipt of the request. For expedited exception reviews, if the exception is approved, we will cover the prescription drug for the duration of the exigency.

For both standard and expedited exception reviews, if we grant your request for a *formulary* exception, the amount you pay will be the *copayment* at the highest *formulary* tier in your *plan*. Other applicable *benefit* requirements, such as step therapy, are not waived by this exception and must be reviewed separately.

If we deny your request for a *formulary* exception, we will notify you with information on how to appeal our decision, including external appeal information.

MHM02622 (v1.0)
Create Date: 3/22/2021
HMCC-100/60coin 2021 - IER/Ded:(H)$7,300/14,600net/$10,000/20,000non/AME:(H)$7,350/14,700/$20,000/40,000non/$150ER/$50urgi/$25/40/PTOT-Spch (no limits) $25/DME=0%/tele=$10/Hear Aids-1per ear-3yrs-no$limit/20chiro$25/AC

R4001257 (v1/21) - SPM/4 Tier/$10/30/60/60/(31-day t1,2&3)mail $25/75/150/(90-day)infert-20%/3cycs/retail SPP 50%-inf20%/oon=NC/ESN=Y

# Nondiscrimination and Language Assistance

Blue Cross & Blue Shield of Rhode Island (BCBSRI) complies with applicable Federal civil rights laws and does not discriminate or treat people differently on the basis of race, color, national origin, age, disability, or sex.

BCBSRI provides free aids and services to people with disabilities and to people whose primary language is not English when such services are necessary to communicate effectively with us.

If you need these services, contact us at 800-639-2227.

If you believe that BCBSRI has failed to provide these services or discriminated in another way on the basis of race, color, national origin, age, disability, or sex, you can file a grievance with: Director of Grievance and Appeals Department, Blue Cross & Blue Shield of Rhode Island, 500 Exchange Street, Providence RI 02903, or by calling 401-459-5000 or 800-639-2227 (TTY/TDD: 888-252-5051). You can file a grievance in person, by phone or by mail, fax at 401-459-5005, or electronically through our member portal at bcbsri.com. You can also file a civil rights complaint with the U.S. Department of Health and Human Services, Office for Civil Rights, electronically through the Office for Civil Rights Complaint Portal, available at https://ocrportal.hhs.gov/ocr/portal/lobby.jsf, or by mail or phone at: U.S. Department of Health and Human Services 200 Independence Avenue, SW Room 509F, HHH Building Washington, D.C. 20201 800-368-1019, 800-537-7697 (TDD). Complaint forms are available at http://www.hhs.gov/ocr/office/file/index.html.

**English:** If you, or someone you're helping, has questions about Blue Cross & Blue Shield of Rhode Island, you have the right to get help and information in your language at no cost. To talk to an interpreter, call 1-800-639-2227.

**Spanish:** Si usted, o alguien a quien usted está ayudando, tiene preguntas acerca de Blue Cross & Blue Shield of Rhode Island, tiene derecho a obtener ayuda e información en su idioma sin costo alguno. Para hablar con un intérprete, llame al 1-800-639-2227.

**Portuguese:** Se você, ou alguém a quem você está ajudando, tem perguntas sobre o Blue Cross & Blue Shield of Rhode Island, você tem o direito de obter ajuda e informação em seu idioma e sem custos. Para falar com um intérprete, ligue para 1-800-639-2227.

**Chinese:** 如果您，或是您正在協助的對象，有關於插入項目的名稱 Blue Cross & Blue Shield of Rhode Island 方面 的問題，您有權利免費以您的母語得到幫助和訊息. 洽詢一位翻譯員，請撥電話在此插入數字 1-800-639-2227.

**French Creole:** Si oumenm oswa yon moun w ap ede gen kesyon konsènan Blue Cross & Blue Shield of Rhode Island, se dwa w pou resevwa asistans ak enfòmasyon nan lang ou pale a, san ou pa gen pou peye pou sa. Pou pale avèk yon entèprèt, rele nan 1-800-639-2227.

**Cambodian-Mon-Khmer:** ប្រសិនបើអ្នក ឬនរណាម្នាក់ដែលអ្នកកំពុងជំនួយ មានសំណួរអំពី Blue Cross & Blue Shield of Rhode Island ទេ, អ្នកមានសិទ្ធិទទួលជំនួយនិងព័ត៌មាន នៅក្នុងភាសា របស់អ្នក ដោយមិនអស់ប្រាក់ ។ ដើម្បីនិយាយជាមួយអ្នកបកប្រែ សូម 1-800-639-2227.

**French:** Si vous, ou quelqu'un que vous êtes en train d'aider, a des questions à propos de Blue Cross & Blue Shield of Rhode Island, vous avez le droit d'obtenir de l'aide et l'information dans votre langue à aucun coût. Pour parler à un interprète, appelez 1-800-639-2227.

**Italian:** Se tu o qualcuno che stai aiutando avete domande su Blue Cross & Blue Shield of Rhode Island, hai il diritto di ottenere aiuto e informazioni nella tua lingua gratuitamente. Per parlare con un interprete, puoi chiamare 1-800-639-2227.

**Laotian:** ຖ້າທ່ານ, ຫຼືຄົນທີ່ທ່ານກຳລັງຊ່ວຍເຫຼືອ, ມີຄຳຖາມກ່ຽວກັບ Blue Cross & Blue Shield of Rhode Island, ທ່ານມີສິດທິຈະໄດ້ຮັບການຊ່ວຍເຫຼືອແລະຂໍ້ມູນຂ່າວສານທີ່ເປັນພາສາຂອງທ່ານບໍ່ມີຄ່າໃຊ້ຈ່າຍ. ການໂອ້ລົມກັບນາຍພາສາ, ໃຫ້ໂທຫາ 1-800-639-2227.

**Arabic:** إن كان لديك أو لدى شخص تساعده أسئلة بخصوص Blue Cross & Blue Shield of Rhode Island، فلديك الحق في الحصول على المساعدة والمعلومات الضرورية بلغتك من دون اية تكلفة. للتحدث مع مترجم اتصل بـ 2227-639-800-1.

**Russian:** Если у вас или лица, которому вы помогаете, имеются вопросы по поводу Blue Cross & Blue Shield of Rhode Island, то вы имеете право на бесплатное получение помощи и информации на вашем языке. Для разговора с переводчиком позвоните по телефону 1-800-639-2227.

**Vietnamese:** Nếu quý vị, hay người mà quý vị đang giúp đỡ, có câu hỏi về Blue Cross & Blue Shield of Rhode Island, quý vị sẽ có quyền được giúp và có thêm thông tin bằng ngôn ngữ của mình miễn phí. Để nói chuyện với một thông dịch viên, xin gọi 1-800-639-2227.

**Kru:** I bale we, tole mut u ye hola, a gwee mbarga inyu Blue Cross & Blue Shield of Rhode Island, U gwee Kunde I kosna mahola ni biniiguene I hop wong nni nsaa wogui wo. I Nyu ipot ni mut a nla koblene we hop, sebel 1-800-639-2227.

**Ibo:** Ọ bụrụ gị, ma o bụ onye I na eyere-aka, nwere ajụjụ gbasara Blue Cross & Blue Shield of Rhode Island, I nwere ohere iwenta nye maka o omụma na asụsụ gị na akwu gị ụgwọ. I chọrọ I kwụrụ onye-ntapịa okwu, kpọ 1-800-639-2227.

**Yoruba:** Bí ìwọ, tàbí ẹnikẹni tí o n ranlọwọ, bá ní ibeere nípa Blue Cross & Blue Shield of Rhode Island, o ní ẹtọ lati rí iranwọ àti ìfitóniléti gbà ní èdè rẹ láìsanwó. Láti bá ongbufọ kan sọrọ, pè sórí 1-800-639-2227.

**Polish:** Jeśli Ty lub osoba, której pomagasz ,macie pytania odnośnie Blue Cross & Blue Shield of Rhode Island, masz prawo do uzyskania bezpłatnej informacji i pomocy we własnym języku. Aby porozmawiać z tłumaczem, zadzwoń pod numer 1-800-639-2227.

**Korean:** 만약 귀하 또는 귀하가 돕고 있는 어떤 사람이 Blue Cross & Blue Shield of Rhode Island 에 관해서 질문이 있다면 귀하는 그러한 도움과 정보를 귀하의 언어로 비용 부담없이 얻을 수 있는 권리가 있습니다. 그렇게 통역사와 얘기하기 위해서는 1-800-639-2227 로 전화하십시오.

**Tagalog:** Kung ikaw, o ang iyong tinutulangan, ay may mga katanungan tungkol sa Blue Cross & Blue Shield of Rhode Island, may karapatan ka na makakuha ng tulong at impormasyon sa iyong wika ng walang gastos. Upang makausap ang isang tagasalin, tumawag sa 1-800-639-2227.

This notice is being provided to you in compliance with federal law.

Blue Cross & Blue Shield of Rhode Island is an independent licensee of the Blue Cross and Blue Shield Association.



500 Exchange Street • Providence, RI 02903-2699

Blue Cross & Blue Shield of Rhode Island is an independent licensee of the Blue Cross and Blue Shield Association.

MHM02622, R4001257 v1-21