UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| CHRISTINE K., individually and on behalf of G.R.K., and G.R.K.,<br>    Plaintiffs,<br><br>    v.<br><br>BLUE CROSS & BLUE SHIELD OF RHODE ISLAND, an independent licensee of the BLUE CROSS AND BLUE SHIELD ASSOCIATION, and the BLUE CROSS & BLUE SHIELD OF RHODE ISLAND HEALTHMATE COAST-TO-COAST BE WELL MEDICAL PPO PLAN,<br>    Defendants. | C.A. No. 1:25-cv-00352-MSM-PAS |

# MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

Before the Court is the Motion to Dismiss (ECF No. 22) of defendants Blue Cross & Blue Shield of Rhode Island ("BCBSRI") and the Blue Cross & Blue Shield of Rhode Island Healthmate Coast-To-Coast Be Well Medical PPO Plan ("the Plan") (together, "Blue Cross"). Plaintiff Christine K., acting individually and on behalf of her child G.R.K., sued Blue Cross to obtain reimbursement for G.R.K.'s stay at Aspiro Wilderness Adventure Therapy ("Aspiro"). (ECF No. 2.) Blue Cross moves to dismiss the plaintiffs' Complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court DENIES Blue Cross's Motion.

## I. BACKGROUND

The facts alleged are as follows. At all relevant times, Plaintiff Christine K. was a participant in the Plan and G.R.K. was a Plan beneficiary. (ECF No. 2 ¶ 5.) The Plan is an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA") and sponsored by Christine K.'s employer, Embrace Home Loans, Inc. *Id.* ¶¶ 4, 5. BCBSRI serves as the Plan's Claims Administrator. *Id.* ¶ 8.

G.R.K received three months of treatment at Aspiro for which the plaintiffs submitted claims to BCBSRI. *Id.* ¶¶ 13 & 25. BCBSRI denied coverage for these claims, which totaled $49,725, asserting that Aspiro is a therapeutic recreation or wilderness program not covered by the Plan. *Id.* ¶¶ 25–30; *see* ECF No. 23-2 at 2.[1] The plaintiffs appealed this decision within BCBSRI's internal processes, arguing that Aspiro should be considered a covered healthcare provider and that the Plan's exclusions did not apply to the kind of therapy it provided. (ECF Nos. 2 ¶¶ 31–38; 23-1.) BCBSRI denied the plaintiffs' appeal, explaining that the Plan specifically excluded "[r]ecreation therapy services and programs, including wilderness programs." (ECF Nos. 2 ¶ 48; 23-2 at 3–4.)

---

[1] The Court may properly consider this and related documents without converting Blue Cross's Motion into one for summary judgment. *See Freeman v. Town of Hudson*, 714 F.3d 29, 35–36 (1st Cir. 2013) (holding that documents whose authenticity is unchallenged, and documents sufficiently referred to in the complaint may be considered without converting a motion to dismiss into a motion for summary judgment).

The plaintiffs then began the present litigation. (ECF No. 2.) In their Complaint, the plaintiffs assert two related causes of action. *Id.* ¶¶ 57–76. First, under 29 U.S.C. § 1132(a)(1)(B), the plaintiffs seek recovery of benefits that they claim were wrongfully denied by Blue Cross, in violation of its duties under ERISA. *Id.* ¶¶ 57–63. Second, under 29 U.S.C. § 1132(a)(3), the plaintiffs allege that Blue Cross violated the Mental Health Parity and Addition Equity Act ("MHPAEA")—and, by extension, ERISA—by making an impermissible nonquantitative treatment limitation through its exclusion of programs like Aspiro. *Id.* ¶¶ 64–76.

## II.  STANDARD OF REVIEW

To survive a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must set forth a "plausible claim." That means the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged . . . The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 566 U.S. 662, 678 (2009). The reviewing court must assume the truth of all "well-pleaded facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Thomas v. Rhode Island,* 542 F.3d 944 (1st Cir. 2008).

"[A] denial of benefits challenged under § 1132(a)(1)(B) must be reviewed under a *de novo* standard unless the benefit plan expressly gives the plan administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the plan's terms, in which cases a deferential standard of review is

3

appropriate." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 102 (1989). Neither party alleges the Plan gives BCBSRI discretionary authority to determine eligibility for benefits. As such, this Court reviews the plaintiffs' claims de novo.

### III. DISCUSSION

The parties' dispute centers in part around a handful of the Plan's provisions. The Plan provides the following:

> This *plan* covers services only if they meet all of the following requirements:
>
> - Listed as a *covered healthcare service* in this section. The fact that a *provider* has prescribed or recommended a service, or that it is the only available treatment for an illness or injury does not mean it is a *covered healthcare service* under this *plan*.
> - *Medically necessary*, consistent with our medical policies and related guidelines at the time the services are provided.
> - Not listed in Exclusions Section.
> - Received while a *member* is enrolled in the *plan*.
> - Consistent with applicable state or federal law.

(ECF No. 22-1 at 16) (italics in original). At issue in this case are the first and third bullets: whether Aspiro should be considered a "covered healthcare service" and whether it falls under one of the explicit exclusions contained in the "Exclusions Section."[2]

---

[2] Also at issue in this case is whether any alleged exclusion of Aspiro from the Plan's Coverage violates the MHPAEA, which requires certain plans "that choose to provide mental health benefits [to] do so in parity with medical and surgical benefits." *Coal. for Parity, Inc. v. Sebelius*, 709 F. Supp. 2d 10, 13 (D.D.C. 2010) (citing 29 U.S.C. § 1185a(a)(3)(A)(ii)). Challenges brought under the MHPAEA can, as here, be either "*facial* (as written in the language or the processes of the plan) or *as-applied* (in operation via application of the plan*).*" *Peter E. v. United HealthCare Services, Inc.*, No. 2:17-CV-00435-DN, 2019 WL 3253787, at *3 (D. Utah July 19, 2019) (emphasis in the original); *see also* 29 C.F.R. § 2590.712(c)(4)(i) (MHPAEA violations can arise from the terms of the plan "as written and in operation"). Because the Court

Thus, this case presents two initial questions: (1) whether the services provided by Aspiro were "covered healthcare services" under the Plan; and (2) whether, if covered, those services were nevertheless specifically excluded from coverage under the Plan. The Court addresses these questions as follows.

### A. Whether Aspiro is a Covered Healthcare Service

First, the plaintiffs argue that BCBSRI waived any argument that Aspiro is not a covered healthcare service because, according to the plaintiffs, BCBSRI never disputed this issue during the administrative process. (ECF No. 23 at 13.) Blue Cross disputes this argument on both factual and legal grounds: first, it asserts that their denial letter and appeal determination letter both stated that Aspiro's services are "excluded from coverage" and "not covered," thereby addressing this issue; second, Blue Cross contends that, as a matter of law, "plan administrators cannot waive plan coverage terms or create coverage that does not exist." (ECF No. 25 at 6–8.)

The Court agrees with Blue Cross's factual objection to the plaintiffs' waiver argument. Blue Cross sufficiently addressed whether Aspiro is a covered healthcare service during the administrative process by informing the plaintiffs that Aspiro's services were "not covered." *See* ECF No. 23-2 at 3, 4. While Blue Cross's letters to the plaintiffs suggest that the primary reason that Blue Cross declined coverage was because of the specific exclusion of recreational wilderness therapy programs, the

---

presently finds that the plaintiffs have plausibly claimed that Aspiro was a covered healthcare service that did not fall under a Plan exclusion, the Court does not reach the merits of the plaintiffs' MHPAEA claim at this time. *See Michael D.*, 369 F. Supp. 3d at 1174.

Court is not prepared to construe Blue Cross's omission of an explicit reference to the term "covered healthcare services" as a waiver of any objection on that ground.

The Court now proceeds to determine whether the plaintiffs have plausibly alleged that Aspiro's services were "covered healthcare services" under the Plan. The Plan lists four specific categories of relevant covered behavioral health services: (1) inpatient hospital care; (2) residential treatment; (3) intermediate care services; and (4) outpatient therapy. *Id.* at 18–19. The plaintiffs acknowledge that the descriptions of inpatient hospital care and residential treatment preclude Aspiro from falling under either category. (ECF No. 23 at 14.) The plaintiffs also make no argument that Aspiro is not outpatient therapy, which the Plan defines as therapy delivered "in a provider's office or a member's home." *See* ECF Nos. 22-1 at 18–19; 23 at 14–16.

Instead, the plaintiffs argue that Aspiro provided "intermediate care services" within the meaning of the Plan. (ECF No. 23 at 14–16.) The Plan provides the following definition:

> **Intermediate Care Services**
> This *plan* covers intermediate care services, which are facility-based programs that are
> - more intensive than traditional *outpatient* services;
> - less intensive than 24-hour *inpatient hospital* or *residential treatment facility* services; and
> - used as a step down from a higher level of care; or
> - used as a step-up from standard care level of care.
>
> Intermediate care services include the following:
>
> - **Partial Hospital Program (PHP)** . . . .
> - **Intensive Outpatient Program (IOP)** . . . .
> - **Home and Community Based Adult Intensive Service (AIS) and Child and Family Intensive Treatment (CFIT)** . . . .

6

(ECF No. 22-1 at 19) (emphasis in original).

According to the plaintiffs, Aspiro qualifies under this definition because its services "were more intensive than outpatient services, but less intensive than the acute services covered at a hospital or residential treatment center." (ECF No. 23 at 15.) For support, the plaintiffs cite *Michael D. v. Anthem Health Plans of Kentucky*, 369 F. Supp. 3d 1159, 1173 (D. Utah 2019), where the court found in a denial of benefits claim also involving Aspiro that "although Aspiro is not a true Residential Treatment Center, Aspiro provides an intermediate-level of care to treat mental health conditions." (ECF No. 23 at 15.)

Blue Cross, in turn, argues that Aspiro cannot have constituted an intermediate care service because it is not one of the enumerated programs listed in the second half of the definition. (ECF Nos. 22 at 9; 25 at 3–6.) The plaintiffs do not argue that Aspiro was a PHP, IOP, AIS, or CFIT. *See* ECF No. 23 at 15–16. According to Blue Cross, the word "include" in the provision "Intermediate care services include the following" indicates that the following programs are an exhaustive list of intermediate care services. (ECF No. 25 at 5–6.) As such, according to Blue Cross, Aspiro cannot qualify as an intermediate care service. *Id.*

Both parties present competing arguments as to what the proper interpretation of "include" is in this context. According to the plaintiffs, "[i]t is well settled under First Circuit and Rhode Island law that the word 'include' is a term of enlargement, not limitation." (ECF No. 23 at 16) (citing *Mundell v. Acadia Hosp. Corp.*, 92 F.4th 1, 9 (1st Cir. 2024) and *Rhode Island Hospital Tr. Company v.*

7

*Votolato*, 231 A.2d 491, 500 (R.I. 1967)). Blue Cross's argument in response is two-fold: first, Blue Cross argues that use of open-ended language elsewhere (e.g., "included, but not limited to") suggests that where that open-ended language is not used the word "include" should be read as limiting; and second, Blue Cross asserts that the precise definitions that follow each of the enumerated programs suggest that the Plan drafters did not intend "unlimited intermediate behavioral health coverage."

"When interpreting the provisions of an ERISA benefit plan, [the First Circuit] use[s] federal substantive law including the common-sense canons of contract interpretation." *Rodriguez-Abreu v. Chase Manhattan Bank, N.A.*, 986 F.2d 580, 585 (1st Cir. 1993) (cleaned up). "Both trust and contract principles apply to interpreting ERISA plans." *Id.* (citing *Allen v. Adage, Inc.*, 967 F.2d 695, 698 (1st Cir. 1992)). Although federal case law governs in cases involving ERISA plan interpretation, the First Circuit has incorporated state law principles into its interpretative methods. *Id.*

This approach "embodies commonsense principles of contract interpretation such as giving effect to the language's plain, ordinary, and natural meaning." *Parmenter v. Prudential Ins. Co. of Am.,* 93 F.4th 13, 21 (1st Cir. 2024) (cleaned up). Words within the plan must be taken "within the context of the contract as a whole, rather than in isolation." *Barclays Bank PLC v. Poynter*, 710 F.3d 16, 21 (1st Cir. 2013). In the ERISA context, there is a "longstanding principle against reading plan terms to be superfluous." *Vendura v. Boxer*, 845 F.3d 477, 486 (1st Cir. 2017).

Further, under a de novo review, when the "linguistic probe hits a dead end because the terms of an ERISA-regulated insurance policy are ambiguous . . . [the Court] appl[ies] 'the doctrine of contra proferentem.'" *Ministeri v. Reliance Stand. Life Ins. Co.*, 42 F.4th 14, 22 (1st Cir. 2022). "That doctrine teaches that unclear 'term[s] must be construed in favor of' the insured." *Id.* at 23 (quoting *Martinez v. Sun Life Assurance Co. of Canada*, 948 F.3d 62, 69 (1st Cir. 2020). "With specific reference to the ERISA context, contract language is ambiguous only if the terms are inconsistent on their face or allow reasonable but differing interpretations of their meaning." *Id.* (cleaned up).

Based on the text of the Plan, including the context of "include" as used in the section at issue and elsewhere, the Court finds that the plaintiffs supply the correct interpretation. First, as a default rule, when "[a] definition is introduced with the verb 'includes' instead of 'means' . . . it makes clear that the examples enumerated in the text are intended to be illustrative." *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 162 (2012); *accord United States v. Daniells*, 79 F.4th 57, 69 (1st Cir. 2023). This use of "include" differs from other uses in the Plan containing the additional words "but not limited to," but the Court is not convinced that this distinction is consistent enough to overcome the non-limiting understanding of "include." *See, e.g.*, ECF No. 23 at 7 ("Many health problems can be prevented by making positive changes to your lifestyle, *including* exercising regularly, eating a healthy diet, and not smoking.") (emphasis added). And to the extent that a non-limiting interpretation of "include" here would seem to conflict with the precise

9

definitions of enumerated programs that follow, the Court notes that, on the other hand, interpreting intermediate care services as *only* including those programs would to some extent render the preceding four-point definition of intermediate care services superfluous.

Even were it not fully persuaded by the plaintiffs' reading of the word "include" in this provision, the Court finds that the word is at least ambiguous. In that case, the outcome would still favor the plaintiffs under the doctrine of contra proferentem. *See Ministeri*, 42 F.4th at 22. Interpreting "include" to be non-exhaustive in this case would surely not be a resort to "fanciful readings, chimerical interpretations, or 'torture[d] language' to find 'nuances the contracting parties neither intended nor imagines'" in a way that would preclude application of contra proferentem. *Id.* at 23 (quoting *Burnham v. Guardian Life Ins. Co. of Am.*, 873 F.2d 486, 489 (1st Cir. 1989).

As such, because Aspiro may be an intermediate care service within the meaning of the Plan, the Court finds that the plaintiffs have plausibly claimed it to have been a covered healthcare service.

### B. Whether Aspiro is Excluded From Coverage

The Exclusions Section contains certain categories of services that are excluded from coverage even when those services are prescribed or recommended by a participant's provider and would otherwise be covered. (ECF No. 22-1 at 37.) This section includes in its list of excluded therapies the following:

> Services provided in any covered *program* that are recreational therapy services, including wilderness *programs*, educational services, complimentary services, nonmedical self-care, self-help *programs*, or

10

> non-clinical services. Examples include, but are not limited to, Tai Chi, yoga, personal training, meditation.

*Id.* at 42 (emphasis in original). It is this list's enumeration of "recreational therapy services, including wilderness programs" that BCBSRI cited in its denial of the plaintiffs' benefits. (ECF No. 23-2 at 3–4.)

The plaintiffs argue that the term "wilderness programs" must be read in connection with "recreational therapy services," and that as such wilderness programs are only excluded from the Plan when they fall within the category of "recreational therapy." (ECF No. 23 at 18). The plaintiffs assert that recreational therapy "has a distinct meaning" and "is different in scope, different in licensing, and different in nature from the outdoor behavioral health treatment that G.R.K. received." *Id.* The plaintiffs cite evidence submitted during their administrative appeals process, including testimony from an expert that distinguishes between "outdoor behavioral health (OBH) services," which are "psychological, evidence-based, clinical approaches to treat mental health and substance abuse issues," and recreational therapy, which includes treatment services and recreation activities provided to individuals "using a variety of techniques including arts and crafts, animals, sports, games, dance and movement, drama, music, and community outings." *Id.* at 9–10 (citing ECF No. 23-1 at 42–43).

Blue Cross disputes the plaintiffs' reading of the Plan and their characterization of Aspiro. (ECF No. 22 at 10–12.) Blue Cross's strongest support for this position is the finding made by at least some other courts that Aspiro is a "wilderness program." *Id.*; *see Mary D. v. Anthem Blue Cross Blue Shield*, 778 F.

11

App'x 580, 584, n. 3 (10th Cir. 2019); *Peter M. v. Aetna Health & Life Ins. Co.*, 554 F. Supp. 3d 1216, 1225-26 (D. Utah 2021); *Peter E. v. United Healthcare Servs., Inc.*, No. 2:17-cv-00435, 2018 WL 6068107, at *1 (D. Utah Nov. 20, 2018); *but cf. Michael D. v. Anthem Health Plans of Kentucky, Inc.*, 369 F. Supp. 3d 1159, 1172–73 (D. Utah 2019) (finding under the more deferential "arbitrary and capricious" standard of review that the term "wilderness camp," as an exclusion applied to Aspiro, was ambiguous because the plan at issue did not define the phrase "wilderness camp"). Blue Cross also disputes the plaintiffs' distinction between outdoor behavioral health services and recreational therapy.  (ECF No. 22 at 12.)

Here, faced with competing interpretations of the services provided by Aspiro and persuasive but non-binding findings from courts outside the First Circuit, the Court is satisfied that the facts, when viewed in the light most favorable to the plaintiffs, do not support dismissal at this stage in the proceedings.  It would strain credulity to interpret the Plan to mean that the mere fact that therapy takes place in a wilderness setting automatically qualifies it as "recreational" and therefore excluded.  Therefore, whether Aspiro was a "wilderness program" that qualified as a "recreational therapy service" within the meaning of the Plan depends, at least in part, on the character of the services provided by Aspiro, a factual question not yet amenable to resolution.  The examples of recreational therapy services provided by Blue Cross—"Thai Chi, yoga, personal training, meditation"—are, while non-exhaustive, clearly distinguishable enough from the services the plaintiffs allege were

12

provided by Aspiro such that the Court is not prepared to rule that, as a matter of law, Aspiro falls within the same category.

In short, while Blue Cross may well be correct in asserting—as have at least some other courts faced with similar claims—that Aspiro was indeed a recreational therapy service, the Court is not prepared to make this determination based solely on the pleadings.

## IV.  CONCLUSION

For the foregoing reasons, the Court DENIES Blue Cross's Motion to Dismiss (ECF No. 22) in its entirety.

IT IS SO ORDERED.

_____
Mary S. McElroy
United States District Judge

October 14, 2025

13